BRYAN CAVE LLP, 00145700
Lawrence G. Scarborough, 006965
George C. Chen, 019704
Two N. Central Avenue, Suite 2200
Phoenix, AZ 85004-4406
Telephone: (602) 364-7000
Facsimile: (602) 364-7070
Email: lgscarborough@bryancave.com
Email: george.chen@bryancave.com

Attorneys for Defendant
Midwest Industrial Supply, Inc.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Soilworks, LLC, an Arizona corporation,<br><br>Plaintiff,<br><br>v.<br><br>Midwest Industrial Supply, Inc., an Ohio corporation authorized to do business in Arizona,<br><br>Defendant. | No. 2:06-CV-02141-DGC<br><br>**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED** |

Defendant Midwest Industrial Supply, Inc. ("Midwest"), through its undersigned counsel, respectfully submits this motion and supporting memorandum, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Counts I, II and III of Plaintiff Soilworks' ("Soilworks") complaint ("Complaint"). Specifically, Counts I and III should be dismissed for failure to state a claim upon which relief can be granted, and Claim II should be dismissed for lack of subject matter jurisdiction.

In view of the dismissal of Counts I through III, Defendant further moves the Court to refrain from exercising supplemental jurisdiction over the remaining state law claims (Counts IV and VI)[1] and correspondingly dismiss the action in its entirety.

I. **INTRODUCTION**

Soilworks' claim under Count I of the Complaint, which is premised on the allegation that "Midwest's conduct constitutes false designation of origin and association in violation of the Lanham Act, 15 U.S.C. § 1125(a)" should be dismissed. Soilworks has failed to make any allegation in the Complaint which would support this cause of action – a cause of action that requires proof of Midwest's use of a trademark that is similar or the same as Soilworks' mark to create a likelihood of consumer confusion.

Count III of the Complaint is for "misappropriation of goodwill." This count should be dismissed as there is no Arizona common law cause of action for goodwill misappropriation. "Goodwill" sounds in trademark infringement or disparagement, which, if so, falls within Count I and should be dismissed for the reasons set forth in Count I.

Soilworks' Count II, an action for declaratory judgment of non-infringement and invalidity, should also be dismissed.[2] Soilworks cannot have an objectively reasonable apprehension of being sued by Midwest for patent infringement, and no "controversy" exists as described by Soilworks in its Complaint. Rather, Soilworks is using the pretext of a declaratory judgment action against Midwest to try and support its other Counts.

---

[1] The Complaint does not include a Count V.
[2] To the extent that Count II also includes a declaratory judgment count for unenforceability, that portion of Count II should also be dismissed for the same reasons.

560310                               2

A party seeking a declaration of non-infringement and invalidity must demonstrate: (1) a sufficient immediacy in its claim to warrant a court's rendering what would otherwise be an impermissible advisory opinion, and (2) a reasonable apprehension that it will face an infringement suit if it commences or continues the activity in question. No immediacy in Soilworks' claim exists. In addition, Soilworks has failed to plead any facts in the Complaint supporting its allegation that a reasonable apprehension of suit exists and, in fact, has notably left out all pertinent discussions between the parties that demonstrate the lack of an objectively reasonable apprehension. Accordingly, Count II should be dismissed for lack of subject matter jurisdiction.

Because Soilworks' Federal Lanham Act and Declaratory Judgment claims should be dismissed, this Court should also dismiss the remaining supplemental state law claims.

## II. STATEMENT OF FACTS

### A. The Parties

Midwest is a leading provider of dust control, erosion control, soil stabilization and anti-icing/de-icing products. Midwest, for over thirty (30) years, has manufactured, researched, distributed, and otherwise met its customer's needs with respect to the aforementioned products. Midwest recently was awarded U.S. Patent No. 7,074,266 entitled Method of Chemical Soil Stabilization and Dust Control and U.S. Patent No. 7,081,270 entitled Method of Chemical Soil Stabilization and Dust Control (collectively, hereinafter referred to as "Midwest Patents").

Soilworks is a relatively new competitor to Midwest. By its own admission, Soilworks is not a manufacturer of products, but merely, a sourcer, distributor, and marketer of competitive products. (Complaint at ¶7.)

### B. Dust Control Products

Midwest invented a dust control product covered by the Midwest Patents. Midwest's brand name for one of its dust control products is Envirokleen®.

Durasoil is the name for Soilworks' formulation of a dust control product that competes with Midwest's Envirokleen® product. The Durasoil product is, on information and belief, the subject of Count II in Plaintiff's Declaratory Judgment Action.

### C. Communications Between Soilworks and Midwest Regarding the Midwest Patents.

On June 8, 2006, counsel for Midwest wrote to counsel for Soilworks[3] inviting Soilworks to discuss issues relating to two (2) patent applications. (June 8, 2006 letter from John M. Skeriotis to Douglas H. Allsworth ("Initial Midwest Letter"), attached herein as Exhibit 1.)

First, Midwest wanted to inform Soilworks that it was awarded a Notice of Allowance by the United States Patent and Trademark Office for two (2) pending U.S. patent applications. Second, Midwest wanted to discuss with Soilworks whether Soilworks' Durasoil product infringes the soon-to-be-issued Midwest Patents.

The letter did not threaten suit, either explicitly or implicitly. In fact, Midwest emphasized that its desire was to discuss and resolve all issues *amicably*. Midwest wrote:

> We are hopeful we can resolve the issues regarding your client's sales of Durasoil in view of our two pending patent applications. ***While no legal actions are contemplated by Midwest at this time***, we ask you to kindly review the claims in the Applications, which are enclosed herewith, as a

---

[3] "Counsel for Midwest" and "Counsel for Soilworks" hereinafter referred to by the parties' names themselves, "Midwest" and "Soilworks", respectively, rather than "counsel for" because the parties act through their respective counsel.

> first step toward entering into a good-faith resolution of the outstanding issues.
>
> I look forward to discussing these issues with you in the near future, and coming to an ***amicable resolution***. As always, please feel free to call me if you would like to discuss this matter further. (Id.) (emphasis added).

Thus, the Initial Midwest Letter explicitly stated that Midwest would not undertake any legal actions. In fact, the preceding paragraphs of the Initial Midwest Letter stated that Midwest did not have enough information regarding the Durasoil product to determine whether the Durasoil product infringed any of the Midwest Patents.

> From reviewing the available public information, which includes your MSDS sheet, we feel that at least some of the claims in the two patent applications cited above could potentially affect your client's ability to make, use and sell Durasoil in the future. (Id.)

On July 18, 2006, after more than thirty (30) days had elapsed from the Initial Midwest Letter, John P. Passarelli, counsel for Soilworks, summarily responded by indicating that the Durasoil product does not infringe the Midwest Patents. (July 18, 2006 letter from John P. Passarelli to John M. Skeriotis ("Soilworks Letter"), attached herein as Exhibit 2, ("I am aware of no factual or legal basis which would support your position that our client is infringing upon any of your client's proprietary rights or that our client's product and service offerings in any way fall within the scope of the purported claims.") Soilworks went on to request additional information as to Midwest's position regarding Midwest's investigation of infringement. (Id.) That was the last communication from Soilworks prior to the filing of the Complaint.

On August 8, 2006, Midwest responded to Soilworks. (August 8, 2006 letter from John M. Skeriotis to John P. Passarelli ("Final Midwest Letter"), attached herein as

Exhibit 3.) Midwest reiterated the contents of the Initial Midwest Letter, namely, that it relied upon publicly available information for its suspicions of infringement. Midwest pointed out that Soilworks' clear avoidance of the reasons for non-infringement led Midwest to believe that, in fact, there was infringement. Midwest requested Soilworks' position of non-infringement of the Midwest patents.

> If Durasoil does not infringe the claims of Midwest's newly issued patents, and, parenthetically, based on the trade secret and proprietary knowledge that Soilworks holds, Soilworks is in the best position currently to make that determination, then I ask again that you contact me in that regard. (Id.)

Instead of continuing discussions regarding the reasons for non-infringement, Soilworks filed this action. Midwest did not believe that negotiations or the request for information had ceased. In fact, Midwest could not, and cannot, sue Soilworks for patent infringement because it does not have enough information about the Durasoil product.

Soilworks' declaratory judgment also seeks a declaration of invalidity, but Midwest and Soilworks have not even discussed the issue of invalidity of the Midwest Patents.

### III. ARGUMENT

#### A. Soilworks' Count II for Declaratory Judgment Must be Dismissed for Lack of Subject Matter Jurisdiction.

The Declaratory Judgment Act permits a court to declare the rights in other legal relations of an interested party seeking such declaration only in "a case of actual controversy." 28 U.S.C. § 2201. "The requirements for a justiciable case or controversy are no less strict in a declaratory judgment proceeding than in any other type of suit. Alabama State Fed. of Labor v. McAdory, 325 U.S. 450, 461 (1945) (citations omitted). Thus, a declaratory judgment procedure "may not be made the medium for securing an

Advisory Opinion in a controversy which has not arisen. Coffman v. Breeze Corp., Inc., 323 U.S. 316, 324 (1945) (citations omitted). Rather, the issue must be "actual and adversary." Id. (citations omitted).

In patent cases, Federal Circuit law governs the question of whether there is an actual controversy. Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F. 2d 953, 955 n.3 (Fed. Cir. 1987). In general, the presence of an "actual controversy" depends on "whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. EMC Corp. v. Norand Corp., 89 F.3d 807, 810 (Fed. Cir. 1996) (quotations omitted).

There is a two-part test for the existence of an actual controversy: "first, the plaintiff must produce or be prepared to produce an allegedly infringing product. Second, the patentee's conduct must have created an objectively reasonable apprehension on the part of the plaintiff that the patentee will initiate suit if the activity in question continues." Id. at 811. To satisfy the reasonable apprehension element, "the defendant in such an action must have engaged in conduct that created on the part of the declaratory judgment plaintiff a reasonable apprehension that it will face an infringement suit if it commences or continues the activity in question." Jurvis B. Webb Co. v. Southern Sys., Inc., 742 F.2d 1388, 1398 (Fed. Cir. 1984) (citations omitted). The "reasonable apprehension" prong requires the court to examine the conduct of both the plaintiff and the defendant. Lang v. Pacific Marine & Supply Co., Ltd., 895 F.2d 761, 764 (Fed. Cir. 1990). The test is objective; purely subjective impressions of the Plaintiff are insufficient

to satisfy the requirement. Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 883 (Fed. Cir. 1985).

Moreover, a declaratory judgment action for infringement or non-infringement will stand only if the allegations support a finding of "immediate and real controversy." Lang, 895 F.2d at 764. Without sufficient immediacy and reality, a declaratory judgment action fails to meet the actual controversy requirement of the Declaratory Judgment Act. Telectronics Pacing Sys., Inc. v. Ventritex, Inc., 982 F.2d 1520, 1527 (Fed. Cir. 1992).

### 1. Soilworks Has Failed To Allege An Immediate And Real Controversy.

A Declaratory Judgment Action for patent infringement must be supported by a sufficient allegation of immediacy and reality. Lang, 895 F.2d at 764. To determine whether the controversy is "sufficiently real and substantial," a court "looks to the accused infringer's conduct." (Id.) There is no sufficiently immediate controversy where the parties are continuing to acquire information or conduct negotiations.

The Initial Midwest Letter was insufficient to create an immediate and real, i.e., actual controversy. The letter was the first communication between the parties regarding the activities at issue. It sought to open negotiations for a resolution without litigation and, most importantly, it sought to acquire information from Soilworks as to the ingredients of its Durasoil product. Soilworks' publicly available information about its Durasoil product lists its ingredients as "trade secret" and "proprietary".

| Section 2 Ingredients | | |
|---|---|---|
| # / Chemical Name | % | CAS Number and Chemical Name |
| 1. Complex mixture of severely | Trade | Non-hazardous |

| hydrotreated, branched alkanes and alkylated saturated ring compounds | secret | |
|---|---|---|
| 2. Proprietary ingredients | Trade secret | Non-hazardous |

(Excerpt of Material Safety Data Sheet ("MSDS") from the Durasoil Website, http://www.durasoil.com/MSDS.htm, attached herein as Exhibit 4, at p. 2.)

Thus, Midwest was not, and is not, in a position to determine infringement given the alleged "trade secret" and "proprietary" ingredient information. Midwest sought, and continues to seek, additional information regarding the ingredients of the Durasoil product.

In fact, Midwest could hardly have been more explicit when it stated that "no legal actions are contemplated by Midwest at this time." (Initial Midwest Letter, at p. 2.) "When there are proposed or ongoing license negotiations, a litigation controversy normally does not arise until the negotiations have broken down." <u>Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha</u>, 57 F.3d 1051, 1053-54 (Fed. Cir. 1995). The letter offered "an amicable resolution" and was explicitly stated to be "a first step toward entering into a good-faith resolution of the outstanding issues." (Initial Midwest Letter, at p. 2.) This letter was an offer to negotiate. Significantly, Soilworks did not *substantively* respond to this offer before filing suit.

Instead, in its July 18, 2006 letter, Soilworks summarily stated that it did not infringe. (Soilworks Letter, "I am aware of no factual or legal basis which would support your position that [Soilworks] is infringing…".) In fact, Soilworks requested additional information *from Midwest* regarding the analysis of infringement undertaken by Midwest. (Soilworks Letter, "I assume you have conducted the required investigation and prepared

an applicable claims chart. I would be happy to review the foregoing and take that into consideration in advising our client with respect to this matter.")

The final communication between the parties prior to the filing of the instant action is also insufficient to create an actual controversy. The Final Midwest Letter merely reiterates Midwest's position and reiterates the need for additional information from Soilworks such that Midwest can review whether the Durasoil product infringes any of the Midwest Patents. The letter invited Soilworks' position regarding non-infringement and explicitly stated that "Soilworks is in the best position currently to make [a determination of non-infringement]" and requested that Soilworks contact Midwest. (Final Midwest Letter, at p. 1.) Thus, not only is there no immediacy or reasonable apprehension of suit, but Midwest acknowledged that it did not have enough information to determine infringement of the Midwest Patents.

Throughout the parties' written discussions, Soilworks' infringement of any of the Midwest Patents is "too remote and unduly speculative" to support a finding of sufficient immediacy. Swedlow, Inc. v. Rohm & Haas Co., 455 F. 2d 884, 886 (9th Cir. 1972). Thus, a declaration by this Court of Soilworks' rights at this stage would be an impermissible advisory opinion. Bristol Myers Squibb Co. v. IVAX Corp., 77 F.Supp.2d 606, 619 (D.N.J. 2000). Therefore, no immediate and real controversy exists because Midwest does not have the necessary information regarding the Durasoil product. Soilworks' allegedly infringing activities are too remote to meet the immediate and real controversy test, and Soilworks has failed to demonstrate an objective basis for its alleged reasonable apprehension of suit.

### 2. Soilworks Has Alleged No Facts To Support Its Claim Of Reasonable Apprehension, And The Evidence Demonstrates That Soilworks Can Have No Reasonable Apprehension Of Suit.

Reasonable apprehension must be proven by objective evidence of the conduct of the defendant-patentee: "A purely subjective apprehension of an infringement suit is insufficient to satisfy the actual controversy requirement. Indium Corp., 781 F. 2d at 883. For an actual controversy to exist, "more is required than the existence of an adversely held patent." BP Chemicals Ltd v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993). "The declaratory judgment plaintiff carries the burden of proving the existence of facts underlying his allegations of the existence of an actual controversy." Indium Corp., 781 F.2d at 883 (citation omitted). Soilworks has alleged no facts supporting its alleged reasonable apprehension of suit by Midwest, other than that Midwest has obtained a United States patent and has otherwise allegedly misrepresented the scope of its patent rights. (Complaint at ¶ 12.)

Midwest has never sued Soilworks. Where a patentee has never sued or threatened to sue the supposed infringer for infringement of the patents at issue, the Federal Circuit has held that no reasonable apprehension exists. Id.

Soilworks' conclusory allegation "that there has been and is now an actual controversy between Soilworks and Midwest as to the validity and scope of U.S. Patent No. 7,081,270" (Complaint at ¶ 23), is unsupported by any factual allegation. See Mallinckrodt Medical, Inc. v. Sonus Pharmaceuticals, Inc., 989 F.Supp. 265, 269-70 (D.D.C. 1998) (dismissing claims for lack of subject matter jurisdiction after finding no actual case or controversy where party failed to allege threats or other activity which

could potentially create reasonable apprehension of suit.) In fact, the objective evidence demonstrates that Soilworks cannot have an objectively reasonable apprehension of suit for infringement of any Midwest patent. The explicit statements by Midwest indicating that "no legal actions are contemplated" cannot be more clear. Most notably, is the absence of the communications between the two parties from Soilworks' Complaint. Indeed, there has never been any communication whatsoever regarding "the validity and scope of U.S. Patent No. 7,081,270."

Indeed, the Federal Circuit confirms in several cases that assertions of potential infringement do not necessarily create a reasonable apprehension of suit. They constitute the mere "jawboning" that occurs in every negotiation. See Shell, 970 F. 2d at 889; West Interactive Corp. v. First Data Resources, Inc., 972 F. 2d 1295, 1298 (Fed. Cir. 1992) (statements between competitors "more akin to jawboning…than to threatening litigation… ."); CAE Screen Plates, Inc. v. Beloit Corp., 957 F.Supp. 784, 791 (E.D. Va. 1997) (Finding the exchanges between the parties "merely constituted 'jawboning.'").

Moreover, a reasonable apprehension of suit does not arise from the fact that a party does not affirmatively forswear some day filing a lawsuit, or even engages in "bellicose saber rattling." As the Federal Circuit stated in EMC Corp. v. Norand Corp., 89 F.3d 807 (Fed. Cir. 1996),

> To be sure, any time parties are in negotiation over patent rights, the possibility of a lawsuit looms in the background. No patent owner with any sense would open negotiations by assuring his opposite party that he does not intend to enforce his patent rights under any circumstance. The threat of enforcement – either directly by the patentee or indirectly by a third party to whom the patent he licenses or sells the patent – is the entire source of the patentee's bargaining power…. The test for finding a "controversy" for jurisdictional purposes is a pragmatic one and cannot turn on the way

the parties use polite terms in dealing with one another or engage in more bellicose saber rattling. (EMC Corp., 89 F.3d at 811.)

Therefore, no reasonable apprehension of suit by Midwest exists, and this count should be dismissed.

**B.  Soilworks' Count I for False Designation of Origin and Association Must be Dismissed for Failure to State a Claim.**

Rule 8 of Federal Rules of Civil Procedure states that "A pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." A pleading must give fair notice and state the elements of the claim plainly and succinctly. Jones v. Community Redevelopment Agency, 733 F.2d 646, 649 (9th Cir.1984).

The essence of Count I of the Complaint is set forth in Paragraph 18, wherein, summarizing Soilworks' allegations of Midwest's conduct, Soilworks states:

"Midwest's conduct constitutes false designation of origin and association in violation of the Lanham Act, 15 U.S.C. §1125(a)." (Complaint at ¶18.)

Soilworks has failed, however, to plead the *prima facie* elements of a claim for false designation of origin and association. Even liberally construed, Soilworks' Complaint fails to allege a set of facts that would give rise to a valid claim for false designation of origin, and therefore, the count must be dismissed.

Section 1125(a) of the Lanham Act provides a cause of action against anyone who: 1) uses in commerce, 2) any false designation of origin which would 3) likely cause confusion with another's goods or services. *See* 15 U.S.C. § 1125(a); *see also* Fuddruckers v. Doc's B.R. Others, Inc., 826 F.2d 837, 842-46 (9th Cir. 1987). To maintain a false designation of origin claim under 15 U.S.C. § 1125(a), "a plaintiff must

prove the defendant's use of the same or similar mark would create a likelihood of consumer confusion." Murray v. Cable Nat. Broadcasting Co., 86 F.3d 858, 860 (9th Cir. 1996). "A likelihood of confusion exists when a consumer viewing a service mark is likely to purchase the services under a mistaken belief that the services are, or associated with, the services of another provider." Id. at 861, citing Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir. 1987).

Though Soilworks alleges that "Midwest is disseminating information and documentary materials in a manner that is likely to cause confusion, mistake and deception among customers of Soilworks' products *regarding Soilworks' conduct and products*," (Complaint at ¶16.) (emphasis added) Soilworks does not allege that Midwest's conduct "is likely to cause confusion, or to cause mistake, or to deceive *as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person*[.]" (Emphasis added.) 15 U.S.C.A. § 1125(a)(1)(A). In other words, Soilworks has not alleged facts showing that Midwest's statements tended to create confusion as to the affiliation or association of the two companies or as to the origin, sponsorship, or approval of its products. Moreover, Soilworks has not identified any trademark that is being used by Midwest to the confusion of Soilworks' customers or Soilworks' detriment.

The allegations set forth in support of Count I of the Complaint do not afford Midwest with adequate notice of the substance of Soilworks' claim for false designation

of origin and false association. Moreover, under no construction of the facts alleged can Soilworks prove such a claim. Therefore, Count I must be dismissed.

### C. There is No Recognizable Cause of Action for Count III.

Soilworks' Count III is entitled "Misappropriation of Goodwill". There is no Arizona law recognizing Count III. Any and all federal cases discussing the concept of goodwill generally discuss the concept in connection with trademark infringement and Lanham Act claims. See, *e.g.,* Playboy Enterprises, Inc. v. Netscape Communications Corp., 354 F.3d 1020, 1025 (9th Cir. 2004). In Count III, Soilworks has not alleged a violation of the Lanham Act or Arizona common law. If Soilworks is alleging violation of the Lanham Act, it must indicate such and allege facts to support such a claim. This Count should be dismissed because there is no Arizona law recognizing Count III, and Soilworks has not alleged facts to support any violation of the Lanham Act.

### D. The Court Should Not Exercise its Discretionary Jurisdiction Over Soilworks' Counts IV and VI of the Complaint.

Even if an actual controversy existed, which it does not, the Court should decline to exercise jurisdiction. "Even if there is an actual controversy, the District Court is not required to exercise declaratory judgment jurisdiction but has discretion to decline that jurisdiction." Id., at 810 (citing Public Serv. Comm'n v. Wycoff, Co., 344 U.S. 237, 241 (1952).) The Declaratory Judgment Act provides an accused infringer with the right to seek relief where the patentee has "refused to grasp the nettle and sue," leaving the accused infringer with an "*in terrorem*" choice between the incurance of a growing potential liability for patent infringement and abandonment of [its] enterprises." Arrowhead Industrial Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 734 (Fed. Cir. 1998).

At the time it filed suit, Soilworks was not faced with any such dilemma because: (1) the Initial and Final Midwest Letters were the first and second communications from Midwest, and (2) the letters included an outstanding offer not only to negotiate but for further information. There is no evidence whatsoever that Soilworks in any way delayed or intended to file suit if an amicable resolution could not be achieved. Exercising jurisdiction over declaratory-relief actions under such circumstances will create a strong disincentive for patentees to communicate with potential infringers before filing suit, for fear of being sued first and thus forced to litigate in a Defendant's forum of choice.

E. **The Court Should Not Exercise its Supplemental Jurisdiction Over Soilworks' State Law Claims Following Dismissal of Soilworks' Federal Causes of Action.**

As demonstrated above, both of Soilworks' federal claims are subject to dismissal and should be dismissed for inherent flaws. As this Court should grant the motion to dismiss Soilworks' federal claims, this Court should refrain from exercising supplemental jurisdiction over what will remain as only state law claims. The Court's exercise of supplemental jurisdiction over state law claims, following dismissal of claims over which it had original jurisdiction, is within the Court's discretion. 28 U.S.C.A. § 1367 (c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if -- ... (3) the district court has dismissed all claims over which it has original jurisdiction ....)[4] "[I]n the usual case in which all federal-law claims are

---

[4] Midwest acknowledges that whether a federal district court may retain jurisdiction over pendent state law claims depends upon the basis for the dismissal of the federal claims. When a federal claim is dismissed for lack of subject matter jurisdiction, the court has no authority to adjudicate supplemental state law claims because there was never a valid claim within the court's original jurisdiction to which the state claims could

eliminated before trial, the balance of factors ... will point toward[s] declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n. 7 (1988); see also Acri v. Varian Associates, Inc., 114 F.3d 999, 1000 (9th Cir.1997).

It is apparent that, on dismissal of the federal claims, the state law claims will predominate this action as Soilworks has alleged no other basis for federal jurisdiction.

## IV.     CONCLUSION

For the foregoing reasons, Defendant Midwest Industrial Supply, Inc.'s Motion to Dismiss should be granted.

Respectfully submitted this 12th day of October 2006.

>By /s/ George C. Chen
> Lawrence G. Scarborough
> George C. Chen
> Bryan Cave LLP
> Two N. Central Avenue, Suite 2200
> Phoenix, AZ 85004-4406
>
> Attorneys for Defendant
> Midwest Industrial Supply, Inc.

---

be supplemental. Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 802, 805-806 (9th Cir.2001); see, also, Scott v. Pasadena Unified School Dist., 306 F.3d 646, 664 (9th Cir.2002). If, however, "a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims." Arbaugh v. Y&H Corp., 126 S.Ct. 1235, 1244-1245 (2006). Midwest has sought dismissal of Soilworks' federal claims under both instances. Therefore, the Court's dismissal of the remaining state law claim remains discretionary.

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2006, the foregoing Motion to Dismiss Plaintiff's Complaint was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*Denise M. Aleman*
Denise M. Aleman