1  E. SCOTT DOSEK #012114
   JOHN PASSARELLI (*Pro Hac Vice*)
2  KUTAK ROCK LLP
   Suite 300
3  8601 North Scottsdale Road
   Scottsdale, AZ 85253-2742
4  (480) 429-5000
   Facsimile: (480) 429-5001
5
   *Attorneys for Plaintiff*
6  *SOILWORKS, LLC, an Arizona corporation*

7

8                  **UNITED STATES DISTRICT COURT**

9              **IN AND FOR THE DISTRICT OF ARIZONA**

10

11  SOILWORKS, LLC, an Arizona corporation,     NO.: 2:06-CV-02141-DGC

12              Plaintiff,                       **PLAINTIFF'S MEMORANDUM OF LAW
                                                 IN OPPOSITION TO DEFENDANT'S**
13  v.                                           **MOTION TO DISMISS**

14  MIDWEST INDUSTRIAL SUPPLY, INC., an
    Ohio corporation authorized to do business in
15  Arizona,

16              Defendant.

17

18  **I.      INTRODUCTION**

19          This is an action for damages, injunction and for declaratory relief brought by

20  Soilworks, LLC ("Soilworks") against Midwest Industrial Supply, Inc. ("Midwest").

21  Soilworks brought this action because, among other things, an actual controversy exists

22  between Soilworks and Midwest regarding Soilworks' alleged infringement of U.S. Patent

23  Nos. 7,074,266 and 7,081,270 (the "Patents").

24          The totality of Midwest's conduct has created a reasonable apprehension of suit on

25  the part Soilworks by the two letters sent by Midwest's outside counsel ("outside counsel")

26  to Soilworks' counsel, a threatening letter from Midwest's President directed to a customer

27  of Soilworks, Midwest's misrepresentations and claims of infringement in its marketing

28  materials presented to the relevant trade, Soilworks customer's request to be held harmless,

4817-4741-9393.1

Dockets.Justia.com

1 and Midwest's explicit and/or, at a minimum, implicit, threats of infringement. Furthermore,
2 Midwest has made false representations of fact in its commercial advertising,
3 misappropriated Soilworks' valuable goodwill, tortiously interfered with Soilworks' business
4 relationships and expected customer relationships, and caused severe and irreparable harm
5 that cannot be adequately remedied solely by monetary damages.

6     Despite this course of events, Midwest's Brief in Support of Defendant's Motion to
7 Dismiss ("Defendant's Brief") urges this court that there can be no objectively reasonable
8 apprehension on the part of Soilworks that it will face an infringement suit, and as a result,
9 Soilworks' Complaint should be dismissed. Midwest mistakenly relies upon inapplicable
10 Federal Circuit law–and then misapplies the inapplicable law–to erroneously contend there is
11 neither a reasonable apprehension nor conduct by Soilworks sufficiently immediate and real
12 to create an actual controversy. Midwest is in error. For the reasons stated herein,
13 Midwest's Motion to Dismiss Plaintiff's Complaint ("Motion") should be denied.

14     Midwest also moves to dismiss Counts I and III pursuant to Rule 12(b)(6) on the basis
15 that the Complaint does not state a claim upon which relief can be granted. Midwest's
16 12(b)(6) motion should also be denied. Federal Rules of Civil Procedure 12(b)(6), which
17 must be read in conjunction with the notice pleading requirements of the Federal Rules, only
18 prohibits actions that are "fatally flawed." Soilworks' Complaint is not fatally flawed and, in
19 fact, exceeds the liberal pleading standard under 12(b)(6). Soilworks has pled the prima
20 facie elements for a false advertising claim under Lanham Act 43(a). Furthermore,
21 Misappropriation of Goodwill is a valid cause of action under Lanham Act 43(a). If
22 Soilworks' Lanham Act Claim for false advertising was deficient, which it is not, the
23 appropriate remedy would be to order leave for Plaintiff to file an Amended Complaint.

24     Midwest argues the Court should refrain from exercising supplemental jurisdiction
25 over the remaining Counts because Counts I through III should be dismissed. It should not.
26 Midwest's Motion should be denied.

27 **II.    STATEMENT OF THE FACTS**

28     Soilworks distributes environmentally-safe dust and erosion control agents throughout

1   the United States. (Defendant's Brief at 3-4) Similarly, Midwest provides dust control,
2   erosion control and soil stabilization products through the United States. (Defendant's Brief
3   at 3) Soilworks distributes a dust control product named Durasoil. (Defendant's Brief at 4)
4   Midwest distributes dust control products named Envirokleen, EK35, Arena RX and
5   Diamond Dr. for which it has recently received patents. (Defendant's Brief at 4) It is
6   undisputed that Soilworks and Midwest are competitors. (Defendant's Brief at 3)

7   On June 8, 2006, Midwest's outside counsel sent a letter to counsel for Soilworks
8   (June 8th Letter) asserting, among other things, that Midwest "fe[lt] that at least some of the
9   claims in [our] two patent applications cited above could potentially affect your client's
10  ability to make, use and sell Durasoil in the future . . . While no legal actions are
11  contemplated by Midwest at this time, we ask you to kindly review the claims in the
12  Applications, which are enclosed herewith . . ." (Defendant's Exhibit 1). Midwest's outside
13  counsel made no offer to negotiate a license with Soilworks. (Id.)

14  On July 18, 2006, Soilworks' counsel responded to Midwest outside counsel's June
15  8th Letter (July 18th Letter). In its July 18th Letter, Soilworks acknowledged receipt of the
16  June 8th Letter and that it had reviewed the letter and the attached "Application."
17  (Defendant's Exhibit 2). Soilworks' counsel advised Midwest's outside counsel that "patent
18  owners are required to conduct investigations and to map them to each element of an
19  asserted patent claim." (Id.) Soilworks' counsel requested a copy of the appropriate claims
20  chart from Midwest's outside counsel. (Id.)

21  On August 8, 2006, Midwest's outside counsel sent a letter to Soilworks' counsel
22  ("August 8[th] Letter) lamenting that he had "received nothing for over a month, and, when I
23  did receive a response, it was entirely non-substantive." (Defendant's Exhibit 3) Midwest's
24  outside counsel also notified Soilworks that Midwest's Patents issued and both were attached
25  for Soilworks' review. (Id.) Midwest's outside counsel again referenced its "investigation"
26  of Soilworks' Durasoil product. (Id.) Midwest's outside counsel stated that Soilworks'
27  "silence in responding provides us **assurances of our review, that your client infringes. If**
28  **Durasoil does not infringe the claims of Midwest's newly issued patents . . . then I ask**

that you contact me in that regard." (Id.) (Emphasis added). Again, Midwest's outside counsel made no offer to negotiate a license. (Id.) Nor did Midwest's outside counsel comply with Soilworks' request for the required claims chart. (Id.)

On July 27, 2006, Midwest sent a letter to Soilworks' client, Polar Supply Company, Inc. ("Polar Supply") ("July 27th Letter" attached hereto as Plaintiff's Ex. 1). Midwest CCd its outside counsel on the letter. (Id.) Midwest informed Polar Supply that "[t]he granting of the U.S. patent now allows Midwest to pursue those who make, use, **sell, offer for sale**, and / or import knock-off or imitators of EKs5 or Envirokleen." (Id.) (Emphasis in original). Then, outside counsel specifically referred to Soilworks' allegedly infringing conduct:

> We have appraised (sic) Soilworks LLC, 681 N Monterey Street, Gilbert, AZ 85233 of this patent and to date have not received a substantive response. As you may or may not be aware, U.S. patent law requires that a response be received by the patent owner **when someone has been accused of infringement**.

(Id.) Midwest attached its Patents to the July 27th Letter stating "[i]t is our full expectation that this and several more patents will enable us to protect our intellectual property in the marketplace." (Id.)

On that same day, July 27, 2006, Polar Supply forwarded the July 27th Letter to Soilworks. ("Polar Supply Forwarded E-mail" attached hereto as Plaintiff's Ex. 2) Four days later, on July 31, 2006, Polar Supply sent an e-mail to Soilworks ("Hold Harmless Request" attached hereto as Plaintiff's Ex. 3). The Hold Harmless Request advised Soilworks that Polar Supply had been:

> contacted directly by Mr. Bob Vitale of Midwest Industrial. Polar Supply Ownership and management has requested that Midwest Industrial notify Polar Supply if they believe Polar Supply is violating the Patent in question, and if so how do they believe we are violating the patent. Midwest has responded that [its outside counsel] will be addressing our questions.

(Id.) As a result of this, Polar Supply "obviously consulted . . . counsel" and was "advised to request a **hold harmless from Soilworks, LLC for any and all litigation** and/or liability

1  which could result from Polar Supply Co., continuing to marketing (sic) and sell Soilworks

2  products, **pending a resolution of the claimed patent violation**." (Id.) (Emphasis added).

3      In addition to contacting a Soilworks' customer and alleging patent infringement,

4  Midwest made general claims to the trade of Soilworks' infringement. ("Marketing

5  Materials" attached hereto as Plaintiff's Ex. 4) In its Marketing materials, Midwest provided

6  product literature entitled "Compare Midwest and Envirokleen to the Competition." (Id.)

7  Again, Midwest specifically addressed Soilworks as an imitator of its products. "**Soilworks,**

8  **LLC is an imitator** of synthetic organic dust suppressant technology." (Id.)  In its

9  promotional materials, Midwest further states that competitors, like Soilworks, are either not

10  supplying synthetic organic dust control product or they are infringing:

> Others claiming to offer products similar to EnviroKleen [and] EK35 are either not supplying Synthetic Organic Dust Control or are infringing on Midwest Industrial Supply's patents. The granting of the U.S. Patent now allows Midwest to pursue those who make, use, sell, offer for sale and/or import knock-off or imitators infringing Midwest's technology.

15  (Id.)

16      Since Midwest already stated that Soilworks "is an imitator of synthetic organic dust

17  suppressant technology" Soilworks' only logical and objective conclusion, in light of

18  Midwest's conduct, was that Midwest believed Soilworks (and Polar Supply) infringed

19  Midwest's Patents.  In light of all of this, Soilworks filed suit for declaratory relief and other

20  causes of action on September 7, 2006.

22  **III.    ARGUMENT**

23      **A. Midwest's Motion To Dismiss Count II for Lack of Subject Matter Jurisdiction Must Be Denied.**

24      The Declaratory Judgment Act (the "Act") provides, in relevant part:  "In a case of

25  actual controversy within its jurisdiction . . . any court of the United States, upon the filing of

26  an appropriate pleading, may declare the rights of . . . any interested party seeking such

27  declaration."  28 U.S.C. § 2201(a).  The Act protects threatened parties, such as Soilworks,

from the uncertainty and anxiety resulting from the looming threat of a patent infringement lawsuit and the incurrence of potential liability. *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993); *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987). "[M]otivation for enacting the Act, as we have stated in the past: [A] patent owner . . . attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity." *Electronics For Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1346 (Fed. Cir. 2005); *see also Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed. Cir. 1988). In the context of the Declaratory Judgment Act, the proper inquiry is **not** "whether a party is 'certain' that its legal position is . . . sound[.] When a party is threatened . . . there are other uncertainties including whether one will have to incur the expense and inconvenience of litigation, and how it will affect the threatened party's customers . . . [and concerns about] [r]eservation of funds." *Electronics For Imaging, Inc.*, 394 F.3d at 1346.

## 1. Soilworks Has Pled an Actual Case or Controversy

To demonstrate the existence of an actual case or controversy, a plaintiff must establish by a preponderance of the evidence that (1) the plaintiff produced or was prepared to produce a device that allegedly infringed;[1] and (2) the plaintiff possessed a "reasonable apprehension" the defendant will sue for patent infringement. *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed. Cir. 1992); *see also Jervis B. Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388, 1398-1399 (Fed. Cir. 1984).

The determination of a "reasonable apprehension" involves an objective test that focuses on the totality of defendant's conduct and attempts to ascertain whether the defendant has shown "an intent to enforce its patent." *Shell Oil Co.*, 970 F.2d at 888. "An examination of the totality of the circumstances must be made to determine whether there is a controversy." *Vanguard Research, Inc. v. Peat, Inc.*, 304 F.3d 1249, 1254 (Fed. Cir.

---

[1] Midwest implicitly concedes, because it does not contend otherwise, that Soilworks has satisfied the first prong of the two-part test for "actual controversy" (i.e., that Soilworks can produce or be prepared to produce an allegedly infringing patent). So Plaintiff need show only an "objectively reasonable apprehension" that Midwest will initiate suit.

2002); *citing C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 880 (Fed. Cir. 1983).

"If the defendant has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy . . . and one need say no more." *Arrowhead*, 846 F.2d at 736. While explicit threats of suit and express allegations of infringement are dispositive evidence of a reasonable apprehension, they are not required. "In light of the subtleties in lawyer language . . . the courts have not required an express infringement charge." *Id.* Instead, "reasonable apprehension may be induced by subtler conduct" through an examination of the totality of the circumstances. *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed. Cir. 1996). A defendant's repeated statements it does not intend to sue a putative infringer does not control whether a case or controversy exists. *Vanguard Research, Inc.*, 304 F.3d at 1255.

The June 8th Letter and the August 8th Letter sent by Midwest's outside counsel to Soilworks are, on their own, sufficient evidence of reasonable apprehension. The June 8th Letter stated, among other things, that Midwest felt "some of the claims in the two patent applications cited above could potentially affect [Soilworks'] ability to make, use and sell Durasoil in the future." (June 8th Letter). Midwest's outside counsel requested that Soilworks' counsel "review the claims in the Applications, which are enclosed herewith . . ." *Id.*

In the August 8th Letter, Midwest's outside counsel laments having "received nothing for over a month." The letter goes on to state, among other things, the following:

> By our review, the claims of the **enclosed patents** are not complicated and, if your client has conducted any sort of investigation . . . and **determined them not to come within the scope of the claims**, then I simply ask that you let me know the grounds for that position so that we can set this matter aside.

(Emphasis added). Midwest's outside counsel then makes the following express allegation of infringement:

> Your silence in responding provides us assurances of **our review, that [Soilworks] infringes.** If Durasoil does not infringe the claims of Midwest's newly issued patents . . . then I ask again that you contact me in that regard.

(Emphasis added).

Midwest has expressly charged Plaintiff's sale of Durasoil as an infringement of its Patents. There is an actual controversy. Plaintiff need say no more. Assuming without conceding the Court does not find this to be an express allegation of infringement, then, at a minimum, it is strong evidence of a "reasonable apprehension." The totality of the circumstances inescapably directs a finding of a reasonable apprehension and, therefore, an actual controversy.

Midwest's threat of infringement towards Soilworks' customers supports a finding of a reasonable apprehension. Courts will find a reasonable apprehension when "customers face an infringement suit or the threat of one . . ." *Arrowhead*, 846 F.2d at 736 ("The letter to [Arrowhead's client], citing Arrowhead and only Arrowhead, and saying Arrowhead is not licensed produced an apprehension of litigation . . ."); *see also Intellectual Property Development, Inc. v. TCI Cablevision of California*, 248 F.3d 1333, 1342 (Fed. Cir. 2001) ("We recognize that 'apprehension' also may apply to a declaratory plaintiff's customers as discussed in *Arrowhead* . . ."); *Vanguard Research, Inc.*, 304 F.3d at 1255 ("By . . . informing Vanguard's clients that Vanguard is using the PEAT technology without a license, PEAT has shown 'a willingness to protect that technology'"); *Rhodes Parmacal, Co., Inc. v. Dolcin Corp.*, 91 F. Supp. 87, 88-89 (S.D.N.Y. 1950) ("It is evident there is a substantial controversy [because] Defendant has by insinuations and innuendo threatened plaintiff and its customers with patent infringement suits"); *Girdler Corp. v. E.I. Du Pont De Nemours & Co.*, 56 F. Supp. 871, 875 (D. Del. 1944) ("Where the patent owner makes his position clear with respect to a . . . customer, the result is that the declaratory judgment plaintiff . . . finds his business threatened . . . and the other result is the customer's fear of suit . . . When this happens a real controversy exists . . .").

Midwest's July 27th Letter to Polar Supply Company, Inc. ("Polar Supply"), a customer of Soilworks, expressly states its intention to "pursue those who make, use, **sell, offer for sale** and/or import knock-off or imitators or EK35 or Envirokleen" (emphasis in original). The letter explicitly singled out Soilworks' conduct and is further evidence of

Midwest's accusation of infringement:

> We have appraised (sic) Soilworks . . . of [the 266 Patent] and to date we have not received a substantive response. As you may or may not be aware, U.S. Patent law requires that a response be received by the patent owner **when someone has been accused of infringement.**

(emphasis added).[2]

The July 27th Letter was immediately forwarded to and reviewed by Soilworks on July 27, 2006. (Falkenberg declaration at ¶ 4). Midwest threatened Soilworks' customer that it would "pursue" those who sell the Durasoil product. Midwest has made its position clear with respect to a Soilworks' customer. Soilworks immediately become aware of both Midwest's threat against Polar Supply and its "accus[ation] of infringement" against Soilworks. The result is that Soilworks finds its business threatened, and the other result is the customer's fear of suit. When this happens, a real controversy exists. A substantial controversy exists because Midwest has expressly, or at a minimum, by insinuations and innuendo, threatened plaintiff and its customers with patent infringement suits. A real controversy exists. Defendant's Motion should be denied.

In addition to the express and implied threats of litigation directed at Soilworks and threats of "pursu[ing]" Soilworks' customers for their infringement, Courts recognize other defendant conduct, present here, that demonstrates the existence of a reasonable apprehension. For example, the issuance of two letters to Soilworks by Midwest's outside counsel, rather than company executives, is considered evidence of a reasonable apprehension. *See Sirius Satellite Research Inc. v. Acacia Research Corp.*, 2006 WL 238999 at *5 (S.D.N.Y. 2006); *Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 2002 WL 31426308, at *4 (S.D.N.Y. 2002) (finding reasonable apprehension where all correspondence came from patentee's outside counsel); *Consac Indus., Inc. v. Nutramax*

---

[2] Midwest's statement that U.S. patent law requires that a response be received by the patent owner when someone has been accused of infringement is found nowhere in U.S. patent law. To the contrary, Federal Circuit law requires that a patent owner map each claim to the element of an asserted claim before it notifies an alleged infringer of its concerns. *View Engineering, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981 (Fed. Cir. 2000). Midwest failed to provide such map to Soilworks or its customers despite the fact the July 18th Letter from Plaintiff's counsel requested just that.

*Labs, Inc.*, No. 97, Civ. 1155, 1998 WL 229255 at \*4 (E.D.N.Y. Mar. 31, 1998).

Evidence of a defendant's threat towards a customer "which produces an apprehension serious enough to cause a demand for indemnification" from the plaintiff is also probative of a reasonable apprehension. *See Arrowhead*, 846 F.2d at 737. The exact same facts are present here. Polar Supply's concern and apprehension was so great that it consulted counsel who advised Polar Supply to seek a hold harmless agreement with Soilworks. (July 31 E-mail). Polar Supply acted on that advice and requested that Soilworks sign a hold harmless agreement shielding Polar Supply from suit by Midwest.

Giving notice to the trade that a patentee will enforce its patents is evidence of a reasonable apprehension. *Treemond Co. v. Schering Corp.*, 122 F.2d 702, 704 (Fed. Cir. 1941); *see also C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 881 at FN 6 (Fed. Cir. 1983). Midwest has provided general notice to the trade, through its promotional materials, which state the following:

> Others claiming to offer products similar to EnviroKleen, are either not supplying Synthetic Organic Dust Control or are infringing on Midwest Industrial Supply's patents. The granting of the U.S. Patent now allows **Midwest to pursue those who make, use, sell, offer for sale and/or import knock-off or imitators infringing Midwest's technology.**

(Emphasis added) Midwest announced to the relevant trade that it will "pursue those who make, use, sell, offer for sale, and/or import knock-off or imitators infringing Midwest's technology." Furthermore, Midwest specifically addressed Soilworks as an imitator of its products in its promotional materials. "**Soilworks, LLC is an imitator** of synthetic organic dust suppressant technology." Since Midwest stated that Soilworks "is an imitator of synthetic organic dust suppressant technology" Soilworks' only logical and objective conclusion, in light of Midwest's conduct, was that Midwest believed Soilworks (and Polar Supply) infringed Midwest's Patents.

The totality of the circumstances warrants a finding of a reasonable apprehension by Soilworks. The undisputed facts show that (1) Soilworks sold a product, Durasoil, that allegedly infringed Midwest's patents; and (2) Soilworks possessed a reasonable

apprehension Midwest would sue for patent infringement. Midwest's Motion should be denied.

### 2. Midwest's Motion Should Be Denied Because Its Brief Ignores, Misapplies and Even Seeks To Create Its Own Federal Circuit Law To Erroneously Conclude No Actual Controversy Exists

Midwest's Brief in Support of its Motion to Dismiss Plaintiff's Complaint ("Defendant's Brief") ignores well-settled Federal Circuit law to argue that "no immediate controversy exists because **Midwest** does not have the necessary information regarding the Durasoil product." (Defendant's Brief 10). Midwest is wrong. The proper inquiry is **not** "whether a party is 'certain' that its legal position and . . . theories are sound." *Electronics For Imaging, Inc.*, 394 F.3d at 1346. The proper inquiry is whether the totality of the circumstances warrants a finding of a reasonable apprehension by Soilworks that it will be sued. Midwest's lack of "necessary information" is irrelevant to a determination of whether its conduct created a reasonable apprehension in Soilworks that Midwest would sue for infringement. Defendant's Motion should be denied.

Midwest contends, with sole reliance upon the "immediate and real" test in *Lang v. Pacific Marine Supply Co., Ltd.*, 895 F.2d 761 (Fed. Cir. 1990), and *Swedlow, Inc. v. Rohm & Haas Co.*, 455 F.2d 884 (9th Cir. 1972), Soilworks' conduct is too remote and unduly speculative to meet the test for an immediate and real controversy. (Brief at 10). Midwest is confused. Soilworks' sale of the allegedly infringing product in the same market place as Midwest could not be any more real and immediate.

Midwest's confusion likely grows out of its mistaken reliance on and application of *Lang* and *Swedlow*. *Lang* and *Swedlow* are inapposite to this case. In both *Lang* and *Swedlow*, the **patentee** sought a declaratory judgment that an alleged **infringer** will, in the future, infringe its patents. *Lang*, 895 F.2d. at 763, and *Swedlow*, 455 F.2d at 885. Thus, under that unique set of facts, the Court examined whether the "acts of alleged infringer indicate a refusal to change the course of its actions in the face of acts by the patentee sufficient to create a reasonable apprehension that a suit will be forthcoming." *Lang*, 895 F.2d. at 764.

1    In *Lang*, the alleged infringing conduct would not commence "until at least 9 months

2    after the complaint was filed." *Lang*, 895 F.2d. at 764. In *Swedlow*, the alleged future

3    infringer moved to dismiss on the basis that its plant had "progressed only to the stage where

4    the floor and shell of the building are in place." *Swedlow*, 455 F.2d at 886.

5        Both courts found the alleged future infringer's conduct had not commenced and was

6    too remote and far into the future for an immediate and real controversy to exist. *Lang*, 895

7    F.2d. at 764 and *Swedlow*, 455 F.2d at 886. The facts of this case are entirely different. The

8    law of *Shell Oil Co.*, *Jervis B. Webb Co.* and *Arrowhead* should prevail. Defendant's

9    analysis is flawed.

10       Here, this Court must examine whether the evidence shows Soilworks sold or was

11   prepared to sell a product that allegedly infringed Midwest's patents; and whether Soilworks

12   possessed a "reasonable apprehension" Midwest would sue for patent infringement. Thus it

13   is Midwest's conduct, as the patentee, not Soilworks', as the alleged infringer, which

14   determines whether a "reasonable apprehension" exists and, therefore, whether or not an

15   "actual controversy" exists. *West Interactive Corp. v. First Data Resources, Inc.*, 972 F.2d

16   1295, 1297 (Fed. Cir. 1992); *see also EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed.

17   Cir. 1996); *see also Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed. Cir. 1992). It is

18   undisputed that Soilworks engages in the allegedly infringing sale of Durasoil. (Defendant's

19   Brief at 4). Soilworks' conduct could not be any more immediate and real.[3] Defendant's

20   Motion should be denied.

21       Midwest's erroneous analysis is not limited to its misapplication of *Lang* and

22   *Swedlow*. For example, in arguing Soilworks cannot have a "reasonable apprehension of

23   suit," Midwest cites *Idium Corp. of America v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed.

24   Cir. 1985) for the untenable proposition that "[w]here a patentee has never sued or

25   threatened to sue the supposed infringer for infringement of the patents at issue, the Federal

26   Circuit has held no reasonable apprehension exists." (Defendant's Brief at 11). Midwest's

27   _____

[3] Even if this Court were to ignore prevailing law and (properly) apply *Lang*, Soilworks' conduct, as outlined above and

28   as described by Midwest, is what "led Midwest to believe that, in fact, there was infringement." (Brief at 6) (see also August 8, 2006 Letter and July 27, 2006 Letter to Polar Supply).

contention defies logic, settled Federal Circuit law and the expressed intent of the Declaratory Judgment Act. The purpose of the Act is clear–to allow for resolution of an actual controversy with a threatening patentee **without waiting to be sued**. This argument should be ignored.

Midwest contends that no actual controversy exists because "assertions of potential infringement do not necessarily create a reasonable apprehension of suit." (Defendant's Brief at 12). Midwest ignores the facts of this case and the well-settled law of the Federal Circuit. Federal Circuit law consistently states this proposition applies only to parties engaged, or offered to engage in, license negotiations. Indeed, all the case law relied on by Midwest for the above proposition involve two parties in express and extensive negotiations for a license of the patent at issue. *See Shell Oil Co.*, 970 F.2d at 886-887 (after three meetings, "numerous telephone conversations" and several letters exchanged, all of this with the express purpose of negotiating a license from Amoco, Shell filed a declaratory judgment action); *see also West Interactive Corp.*, 972 F.2d at 1296-1298 (court granted motion to dismiss based on the fact that despite license negotiations between First Data and a third party, there was no allegation that First Data "had any communication whatsoever with West"); *CAE Screenplates, Inc. v. Beloit Corp.*, 957 F. Supp. 784, 790 (plaintiff, instead of defendant, initiated discussions "for a non-exclusive, royalty-free license and/or worldwide immunity from suit" wherein the court found "the written exchanges amount to licensing negotiations"); *EMC Corp.*, 89 F.3d at 809 (Norand sent multiple letters to EMC inviting negotiations for a license; multiple meetings were held "where parties discussed the potential sale or license of the patents").

Midwest has presented no evidence of license negotiations or an offer to negotiate a license. Yet, throughout its Brief, it states its letters were "an offer to negotiate." Midwest has not shown, because it cannot show, any evidence of licensing negotiations sufficient to rebut the fact that its accusation of infringement to Soilworks and its customer created a reasonable apprehension. The totality of the circumstances clearly demonstrate that Soilworks possessed a reasonable apprehension of suit. Midwest's Motion should be denied.

**3.** **Midwest's Motion To Dismiss Count I of Soilworks' Complaint Should Be Denied Because Soilworks Pled a Violation of Lanham Act 43(a)**

Midwest also seeks dismissal of Count I of Soilworks' Complaint for false advertising under Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a). Midwest argues that Count I should be dismissed because Soilworks fails to state a claim. Midwest is wrong.

Midwest avers "the essence of Count I" is that "Midwest's conduct constitutes false designation of origin and association in violation of the Lanham Act . . ." (Defendant's Brief at 13). Midwest ignores the clear allegations stated in Soilworks' Complaint.

To establish a claim under the Lanham Act for false advertising, a plaintiff must allege the following:

> 1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) Plaintiff has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the good will which its products enjoy with the buying public, etc.

*Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service Inc.*, 911 F.2d 242, 244 (9th Cir. 1990). A court can dismiss a Lanham Act 43(a) claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, (1984). Soilworks' Complaint exceeds the liberal pleading standards.

Soilworks alleged false and/or misleading statements as to both Midwest's product and Soilworks' Durasoil product. "Midwest has disseminated marketing communications . . . that are false, misleading and intended to misrepresent characteristics of Midwest's products and its proprietary position with regard to those products." (Soilworks' Complaint ¶ 14). "Midwest is disseminating information and documentary materials in a manner that is likely to cause confusion, mistake and deception among customers of Soilworks' products regarding Soilworks' conduct and products." *Id.* at ¶ 16. *See also* Soilworks' Complaint ¶ 8.

Soilworks alleged that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience. "Midwest has disseminated information and documentation to Soilworks' distributors, customers and end users which is inaccurate [and] misleading . . ." (Soilworks' Complaint ¶ 9). *See also* Soilworks' Complaint ¶¶ 12, 13, 14, 16 and 17.

Soilworks alleged that Midwest's deception is material in that it is likely to influence purchasing decisions. Midwest alleged that Midwest's conduct "mislead[s] and divert[s] customers of Soilworks . . ." (Soilworks' Complaint ¶ 16). "The conduct of Midwest wrongfully diverts the potential market and customer loyalty to which Soilworks is entitled." (Soilworks' Complaint ¶ 10).

Soilworks alleged that its products travel in interstate commerce. "Soilworks distributes environmentally-safe soil stabilizers, dust control agents and erosion control agents throughout the United States." (Soilworks' Complaint ¶ 7).

Soilworks alleged it has been or is likely to be injured as the result of Midwest's conduct, either by direct diversion of sales from itself to Midwest or by lessening the goodwill which Soilworks' products enjoy with the buying public. "The conduct of Midwest wrongfully diverts the potential market and customer loyalty to which Soilworks is entitled." (Soilworks' Complaint ¶ 10). "Midwest has disseminated marketing communications . . . that are false, misleading and intended to tarnish and diminish the substantial goodwill Soilworks has cultivated with respect to its company, products and Soilworks proprietary rights associated therewith." (Soilworks' Complaint ¶ 13).

Soilworks properly pled Count I for "False Representation Under Lanham Act, § 43(a)." However, Midwest plucks out one paragraph as dispositive of the "essence" of Soilworks' Count I claim. Midwest asks this Court to narrow its sights on this one sentence and construe Count I as a claim for false designation. A complaint must be "[r]ead in its entirety, not by plucking phrases out of context." *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1230 (9th Cir. 1990). Soilworks has adequately pled a Lanham 43(a) violation. Midwest's Motion to Dismiss Count I should be denied.

**4. Midwest's Motion to Dismiss Count III of Soilworks' Complaint Should Be Denied Because Soilworks Pled a Valid Misappropriation of Goodwill of Lanham Act 43(a)**

Misappropriation of goodwill is a valid cause of action under 43(a) of the Lanham Act. *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1145 (9th Cir. 1999). *See also* Lanham Act 43(a) 15 U.S.C. § 1125(a). Midwest states that "[i]f Soilworks is alleging violation of the Lanham Act, it must indicate such and allege facts to support a claim." (Defendant's Brief at 15). As proven in Section 3 of this Brief, Soilworks has alleged facts to support its Lanham Act causes of action.

**5. Midwest's Request That This Court Not Exercise Its Discretionary Jurisdiction Over Counts IV and VI Should Be Denied Because an Actual Controversy Exists**

Midwest contends "[t]here is no evidence whatsoever that Soilworks in any way delayed or intended to file suit . . ." (Defendant's Brief at 16). Midwest's contention is without merit. Soilworks has presented ample evidence to demonstrate an actual controversy exists. Midwest's Motion should be denied.

**6. This Court Should Deny Midwest's Request That This Court Not Exercise Its Supplemental Jurisdiction Over Soilworks' State Law Claims**

Midwest argues this Court should decline to exercise its Supplemental jurisdiction because Soilworks' federal causes of action should be dismissed. Midwest is wrong. Soilworks has successfully shown an actual controversy exists and that it has stated each element of the prima facie case for false advertising. This court has federal jurisdiction over both these claims, and, as a result, supplemental jurisdiction over Soilworks' state law claims. Midwest's Motion should be denied.

## IV. CONCLUSION

The totality of Midwest's conduct and statements towards Soilworks, its customer, and the relevant trade have created a reasonable apprehension on the part of Soilworks that it will be sued for the alleged infringement of Defendant's Patents. Soilworks is actively engaged in the allegedly infringing conduct. Midwest and Soilworks are competitors.

Midwest has sought to unfairly improve its position in the market place at the expense of Soilworks' goodwill and business relationships.  For the reasons stated herein, Soilworks has pled valid causes of action under Section 43(a) of the Lanham Act.  This Court should exercise its discretionary jurisdiction over Counts I, II and III and its supplemental jurisdiction over Counts IV and VI.  Soilworks respectfully requests that this Court deny Defendant's Motion to Dismiss.

Dated this 15th day of November, 2006.

Kutak Rock LLP

By _____
E. Scott Dosek
John P. Passarelli (*Pro Hac Vice*)
Suite 300
8601 North Scottsdale Road
Scottsdale, AZ  85253-2742

*Attorneys for Plaintiff*

**Original** electronically filed on this 15th day of November, 2006 with:

United States District Court
State of Arizona

With **copy** electronically transmitted on same date to:

Hon. David G. Campbell
Campbell_chambers@azd.uscourts.gov

With **copy** electronically served on same date to:

George C. Chen, Esq.
Bryan Cave LLP
george.chen@bryancave.com

_____

**Exhibit 1**

July 27, 2006

Mr. David Shooner, Sales Manager
Polar Supply Company, Inc
300 E. 54th Street
Anchorage, Ak 99518-1230

Dear Mr. Shooner,

This letter is meant to apprise you of a recent development at Midwest Industrial Supply, Inc. Midwest invented the category of synthetic organic dust control agents, more commonly known as EK35® and EnviroKleen®. Recently, the United States Patent and Trademark Office awarded Midwest United States Patent No. 7,074,266.

There are a number of imitators that claim to be synthetic organic dust control agents; however, none of those competitors can have the formulation or method as that of EK35® or EnviroKleen®. The granting of the U.S. Patent now allows Midwest to pursue those who make, use, *sell, offer for sale* and / or import knock-off or imitators of EK35® or EnviroKleen®.

We have appraised Soilworks LLC, 681 N Monterey Street, Gilbert Az 85233 of this patent and to date we have not received a substantive response. As you may or may not be aware, U.S. Patent law requires that a response be received by the patent owner when someone has been accused of infringement.

Attached please find U.S. Patent No. 7,074,266. It is our full expectation that this and several more patents will enable us to protect our intellectual property in the marketplace.

If you have any questions, please feel free to telephone me regarding the above.

Sincerely,

Midwest Industrial Supply, Inc.

Robert Vitale
President

Cc: John Skeriotis

**Exhibit 2**

**From:** shickman@polarsupply.com [mailto:shickman@polarsupply.com]
**Sent:** Thursday, July 27, 2006 10:01 AM
**To:** Dorian Falkenberg
**Subject:** FW: Patent Notice

-----Original Message-----
From: Dave Shooner
Sent: Thursday, July 27, 2006 8:41 AM
To: Steve Hickman
Subject: FW: Patent Notice

-----Original Message-----
From: Bob Vitale [mailto:bob.vitale@midwestind.com]
Sent: Thursday, July 27, 2006 7:36 AM
To: Dave Shooner
Cc: Skeriotis. John M.
Subject: Patent Notice

Dave

Please see the attached.

Bob Vitale

10/23/2006

# Exhibit 3

**From:** sgordner@polarsupply.com [mailto:sgordner@polarsupply.com]
**Sent:** Monday, July 31, 2006 6:33 PM
**To:** Chad Falkenberg; Dorian Falkenberg
**Cc:** shickman@polarsupply.com
**Subject:** Patent Issue


Chad and Dorian,

Polar Supply has received the response from your counsel, John Passarelli, regarding the supposed patent violation of which we were notified by Midwest Industrial.

Please be advised that Polar Supply Ownership has also been contacted directly by Mr. Bob Vitale of Midwest Industrial. Polar Supply Ownership and management has requested that Midwest Industrial notify Polar Supply if they believe Polar Supply is violating the patent in question, and if so how do they believe we are violating that patent. Midwest has responded that Mr. Skariotis will be addressing our questions.

Polar Supply has obviously consulted our counsel and we have been advised to request a hold harmless from Soilworks, LLC for any and all litigation and/or liability which could result from Polar Supply Co., Inc. continuing to marketing and sell Soilworks products, pending a resolution of the claimed patent violation.

Please advise.


Steve Gordner
Polar Supply Co., Inc.
Main 563-5000
Direct 646-4715



10/23/2006

# Exhibit 4



MIDWEST

All Industries / All Products/Service

## Product Information



EnviroKleen
PATENT-PENDING

### We're the Company That Invented Synthetic Organic Dust Suppressants...

Responding to the need for more environmentally sound chemical dust suppressants, Midwest Industrial Supply, Inc. invented EnviroKleen® in 2001. EnviroKleen® is the safest, purest and highest performing chemical dust suppressant on the market.

TO LEARN MORE ABOUT ENVIROKLEEN®, CLICK ON THE LINKS BELOW:

• EnviroKleen® Brochure - The World Leader in Environmentally Sound Dust Control Solutions

### EnviroKleen® is the Safest Chemical Dust Suppressant in the World...

EnviroKleen®, manufactured using a patent-pending process, is crystal clear, odorless and non-toxic to humans, animals, marine and plant life.

TO SEE SPECIFIC ENVIROKLEEN® DATA ON ENVIROKLEEN®, CLICK ON THE LINKS BELOW:

• Material Safety Data Sheets (MSDS)
• EnviroKleen® Toxicity Characterization Leaching Procedure, Potential Ecotoxicity, Toxicity Daphnia Magna, Microtox®, Rainbow Trout Acute Toxicity and Static Sheen Results
• US EPA ETV Environmental Data (Acute & Chronic Aquatic Toxicity: VOC, Semi-Volatiles, Metals, TCLP, PAH Tests)

### EnviroKleen® has been Independently Tested and Verified...

The performance of EnviroKleen®, unlike most other chemical dust suppressants, has been verified by the US Environmental Protection Agency's Environmental Technology Verification Program (USEPA ETV). This verification confirms, with high quality data, that EnviroKleen®

provides excellent performance, is safe for you and the environment, and protects you from deceptive or false claims by other manufacturers.

TO LEARN MORE ABOUT ENVIROKLEEN® TESTS AND VERIFICATION RESULTS, CLICK ON THE LINKS BELOW:

• US EPA ETV Verified EnviroKleen® Controlled Total Particulate, PM10 & PM2.5 with Control Efficiencies of up to 100% in ETV Testing
• EnviroKleen Ranked #1 in US Army Corps of Engineers Helipad Dust Control Test
• Dust Completely Eliminated on United Nations Helipad
• EnviroKleen® Confirmed by Boeing as a Dust Suppressant for Aircraft Surfaces
• New Patent-Pending Product Technology Testing at Ft. Leonard Wood Military Base
• EnviroKleen® Meets Air Pollution Emissions Regulations for the Arizona Department of Emergency and Military Affairs

ENVIROKLEEN® CAN BE IMITATED BUT CANNOT BE DUPLICATED
Click Here for a Comprehensive Explanation

over

MIDWEST

Home | Customer Service | Industries | Products | Problems/Needs | Services | Site Map
Copyright 2004 Midwest Industrial Supply, Inc. All Rights reserved.
Website design & development by MKG.

# COMPARE MIDWEST AND ENVIROKLEEN TO THE COMPETITION

| | Midwest Industrial Supply, Inc. and EnviroKleen | Soilworks, LLC and Durasoil |
|---|---|---|
| **1 HERITAGE** | | ✓ Soilworks, LLC is a new entrant, formed in 2003 |
| **2 INNOVATION** | | ✓ Soilworks, LLC is an imitator of synthetic organic dust suppressant technology. |
| **3 PRODUCT PERFORMANCE** | | ✓ No current test or performance data*.<br>✓ No US EPA ETV verification testing*. |
| **4 CUSTOMER SUPPORT** | | ✓ Limited service available*. |

*According to Soilworks, LLC current web