BRYAN CAVE LLP, 00145700
Lawrence G. Scarborough, 006965
George C. Chen, 019704
Two N. Central Avenue, Suite 2200
Phoenix, AZ 85004-4406
Telephone: (602) 364-7000
Facsimile: (602) 364-7070
Email: lgscarborough@bryancave.com
Email: george.chen@bryancave.com

Attorneys for Defendant
Midwest Industrial Supply, Inc.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Soilworks, LLC, an Arizona corporation,<br><br>    Plaintiff,<br><br>v.<br><br>Midwest Industrial Supply, Inc., an Ohio corporation authorized to do business in Arizona,<br><br>    Defendant. | No. 2:06-CV-02141-DGC<br><br>**REPLY OF MIDWEST INDUSTRIAL SUPPLY, INC. TO SOILWORK, LLC'S OPPOSITION TO MOTION TO DISMISS** |

## I.  INTRODUCTION

Soilworks, LLC ("Soilworks") filed its Complaint with this Court on September 7, 2006, alleging federal claims under Lanham Act § 43(a) and the Declaratory Judgment Act. On October 12, 2006, Midwest Industrial Supply, Inc. ("Midwest") moved this Court to dismiss the Complaint because Soilworks did not allege any set of facts for which relief could be granted under the Lanham Act and did not allege any controversy for which subject matter jurisdiction could be established under the Declaratory Judgment Act. Soilworks responded on November 15, 2006, to which Midwest submits this reply.

564663

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

As established in Midwest's initial memorandum and this reply, Soilworks' Lanham Act and purported "misappropriation of goodwill" claims fail to state a claim for relief, and its declaratory judgment claim fails to invoke the Court's subject matter jurisdiction. Accordingly, the Complaint should be dismissed in its entirety.

## II. **DISCUSSION**

### A. **Soilworks has Failed to Meet its Burden of Establishing an Actual Controversy under the Declaratory Judgment Act.**

Midwest's motion to dismiss Count II of the Complaint should be granted because Soilworks has not satisfied its burden of proving by a preponderance of the evidence that Midwest has taken any actions that created an objectively reasonable apprehension by Soilworks that it faced an imminent patent infringement suit by Midwest. *See Teva Pharms. v. Pfizer, Inc.*, 395 F.3d 1324, 1333 (Fed. Cir. 2005) (justiciability of a declaratory judgment claim concerning patent invalidity or non-infringement requires a reasonable apprehension on behalf of the declaratory plaintiff that it will face an imminent infringement suit). In its memorandum in opposition, Soilworks does not dispute that the Complaint lacks any factual allegations to support its conclusory statement that an actual controversy exists as to the validity and scope of Midwest's U.S. Patent No. 7,081,270. (Complaint ¶23; Df. Memo. at 11-12).[1] Instead, Soilworks relies on an exchange of

---

[1] *See Mallinckrodt v. Sonus Pharm., Inc.*, 989 F. Supp. 265, 269-70 (D.D.C. 1998) (dismissing claims where plaintiff failed to allege threats or other activities that could potentially create reasonable apprehension of suit); *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1211 n.2 (7th Cir. 1980) ("It is relevant that nowhere in its complaint did it allege that it had a reasonable apprehension; it merely alleged certain facts and then concluded, '(t)herefore, there is a justiciable controversy.'"); *Pittway Corp. v. BRK Shareholders' Committee*, 444 F. Supp. 1210, 1214 n.6 (D.C. Ill. 1978) (same).

letters between the parties' outside counsel, as well as one letter sent by Midwest to a potential customer and one document in Midwest's marketing materials, to assert that the "totality of Midwest's conduct created a reasonable apprehension of suit." (Pl. Opp. at 1). The conduct by Midwest of which Soilworks complains, however, does not demonstrate that Soilworks had any objectively reasonable apprehension that it was at risk of an imminent legal action by Midwest, and consequently, there is no actual controversy.

First, contrary to Soilworks' assertions, the two letters sent by Midwest's counsel to Soilworks on June 8, 2006 (the "Initial Midwest Letter") and August 8, 2006 (the "Final Midwest Letter"), respectively, do not contain either express or implicit threats of infringement. (Pl. Opp. at 7-8.) Well-settled authority establishes that statements such as those employed by Midwest to articulate a patentee's belief or suspicions that a competitor's products are potentially infringing do not amount to an express charge of infringement. *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisia*, 57 F.3d 1051, 1053 (Fed. Cir. 1995) (language in a letter stating that the declaratory judgment plaintiff's product or service is "covered by" or "falls within" defendant's patent does not amount to an express charge of infringement); *see also Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 889 (Fed. Cir. 1992). Letters such as Midwest's that "merely express a belief that [the plaintiff] might be infringing and invite discussions between the companies and their patent experts to resolve the matter" plainly do not constitute an express charge of patent infringement. *Sirius Satellite Research Inc. v. Acacia Research Corp.*, No. 05-Civ-7495, 2006 WL 238999, *4 (S.D.N.Y. Jan. 30, 2006); *see also Holley Performance Products, Inc. v. Barry Grant, Inc.*, No. 04-C-05758, 2004 WL 3119017, *4 (N.D. Ill. 2004) (letters

that invite plaintiff to conduct its own comparison and analysis and communicate its conclusion to the defendant do not create an imminent threat of litigation). Moreover, even if Midwest had taken an affirmative position regarding the validity of its patent or Soilworks' potential infringement in the context of requesting information and inviting Soilworks to engage in negotiations, such conduct could not have created an objectively reasonable apprehension of imminent litigation by Soilworks.[2]

As discussed in Midwest's initial memorandum, the Initial Midwest Letter and Final Midwest Letter unambiguously informed Soilworks that Midwest had initiated communications with Soilworks not as a forewarning of litigation, but to serve two purposes that are commercially reasonable in the patent marketplace: (1) to acquire information in order to determine whether Soilworks' Durasoil product was potentially within the scope of Midwest's then-pending patent claims; and (2) to open amicable business discussions with Soilworks to resolve any potential issues. (Df. Memo. at 8-10.) "The owner of a patent should have the privilege of making a fair investigation as to the possible infringement of his patent without calling down on his head the undertaking of a defense of an expensive and burdensome declaratory judgment suit alleging invalidity and patent non-infringement." *American Needle & Novelty Co. v. Schuessler Knitting Mills,*

---

[2] Soilworks acknowledges that a patentee may make accusations of infringement or other "jawboning" in negotiations without subjecting itself to a declaratory judgment action, but then takes the untenable position that this proposition is strictly limited in context to license negotiations. (Pl. Opp. at 13-14.) Contrary to Soilworks' generalizations, however, Federal Circuit case law does not "consistently state[] this proposition applies only to parties engaged, or offered to engage in, licensing negotiations." (Pl. Opp. at 13.). Indeed, such a limitation would be nonsensical in situations, such as the present case, where a patentee opens discussions with a potential infringer but cannot yet extend a license offer because it has been unable to inspect the suspected infringing product.

*Inc.*, 379 F.2d 376, 379 (7th Cir. 1967) (holding that a patentee's requests for information on which to make a determination as to possible infringement did not create a reasonable apprehension of an infringement suit).[3] While the Final Midwest Letter communicated the seriousness of Midwest's concerns, both letters make fundamentally apparent to any reasonable reader that Midwest's goal was to establish an ongoing dialogue with Soilworks and to obtain information, rather than to threaten a lawsuit against Soilworks.

Second, Soilworks' reliance on statements made by Midwest in one letter to a potential customer and in one marketing brochure likewise do not evidence that Soilworks had an objectively reasonable apprehension that it faced an imminently forthcoming infringement action by Midwest. While Soilworks places principal reliance on Midwest's references to "*imitators*" or "*imitations*" of a certain type of *technology* in which it specializes, such statements are plainly not synonymous with, or tantamount to, allegations of *infringement* of a particular *patent*, even without resort to consideration of the significantly different legal definitions and connotations that each term carries.[4] (Pl. Opp. at 8-11.) Moreover, unlike the cases relied upon by Soilworks in its opposition

---

[3] S*ee also Wright Medical Technology, Inc. v. Osteomscs Corp*., 914 F. Supp. 1524, 1531 (W.D. Tenn. 1995) (noting the inconsistency between a supposed "threat" to sue, and the patentee's request to inspect the allegedly infringing product to determine whether the patent is implicated); *Chubb Integrated Systems Ltd. v. Nat'l Bank of Washington*, No. 82-3478, 1983 WL 548, *4-5 (D.D.C. 1983) (patentee's continued requests for technical information that would shed light on the validity of its patents and expressions of interest in negotiations indicated that it did not intend to litigate the validity of its patents).

[4] *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, 11th ed. (2003) (defining "imitate" as "to follow as a pattern, model or example . . . to appear to be like" versus defining "infringe" as "to encroach upon in a way that violates law or the rights of another <a patent>").

564663       5

memorandum, Midwest's statements cited by Soilworks regarding potential imitators in the marketplace do not rise to the level of a threat (express or implied) against either Soilworks or its customers.[5] The fact that one customer of Soilworks (Polar Supply Company) determined that prudent business practices counseled in favor of requesting Soilworks to provide a hold harmless agreement, which is not an uncommon request in competitive markets involving emerging technologies, does not somehow transform Midwest's communications with the customer into threatening behavior. Finally, even assuming that Soilworks subjectively feared from Midwest's statements in the marketplace that it might someday be sued for patent infringement, that fear would have been reasonably dispelled by the last communication that Soilworks subsequently received directly from Midwest (the Final Midwest Letter) in which Midwest made clear that its intentions were to maintain a dialogue between the parties and obtain information.

Third, despite its attempts to now assail the contents of these communications, Soilworks does nothing to dispel the conclusion that the totality of the circumstances indicate that Soilworks: (1) *knew* that Midwest lacked vital information regarding its Durasoil product that Midwest needed to confirm any suspicions of potential infringement; (2) *knew* that it was in the sole possession of that information; and (3) *knew*

---

[5] *See, e.g., Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731 (Fed. Cir. 2005) (patentee cautioned customer that it considered plaintiff's use of its product to be "direct patent infringement" and warned that such infringement could involve the customer, as well as made implicit threats of litigation directly to plaintiff and requested that plaintiff be found an infringer in separate litigation); *Vanguard Research, Inc. v. Peat, Inc.*, 304 F.3d 1249, 1250 (Fed. Cir. 2002) (patentee repeatedly implied to plaintiff's customers that plaintiff's use of its product was without permission, as well as directly warned plaintiff that the use of its product was unlicensed and had previously brought suit against plaintiff on related grounds involving the same technology).

564663 6

that Midwest's lack of the information prevented Midwest from imminently filing a suit for patent infringement consistent with the basic threshold requirements of Rule 11.[6] Soilworks does not deny that the publicly available information about its Durasoil product lists its ingredients as "trade secret" and "proprietary" and therefore the actual ingredients—which, consistent with its Rule 11 obligations, Midwest was required to investigate prior to filing a patent infringement action against Soilworks—were exclusively held by Soilworks. (Df. Memo. at 8-9.)

Accordingly, Midwest requested such product information from Soilworks and acknowledged in the Final Midwest Letter that Soilworks was in the "best position" to make an informed determination as to whether its product infringed based on the trade secret and proprietary knowledge that it exclusively held. (Df. Memo. at Ex. 3.) Given Soilworks' actual, objective knowledge that Midwest could not (and did not intend to) bring an action against Soilworks in the immediate future, Soilworks could not have been in any reasonable fear of an imminently looming suit by Midwest at the time that it filed the Complaint. *See, e.g., Wright Medical Technology, Inc.*, 914 F. Supp. at 1531 (plaintiff's claim of reasonable apprehension was "fatally inconsisten[t]" with the evidence that the plaintiff knew that the patentee lacked vital information necessary to bring its infringement claim and therefore could not be leveling a charge of infringement).

Finally, Soilworks' inability to come forth with sufficient evidence of any objectively reasonable fear of an imminent infringement action is further underscored by

---

[6] *See, e.g., Q-Pharma, Inc. v. Andrew Jergens Co.,* 360 F.3d 1295, 1300-01 (Fed. Cir. 2004) (a patent infringement suit cannot be brought in compliance with Rule 11 absent a pre-filing determination of what specific claims may be asserted against the products to be accused of infringement and how those claims will likely be construed by the court).

its attempt to disregard *Lang v. Pacific Marine Supply Co., Ltd*, 895 F.2d 761 (Fed. Cir. 1990) and *Swedlow, Inc. v. Rohm & Haas Co.*, 495 F.2d 884 (9th Cir. 1972) as limited to the "unique set of facts" presented in those cases and therefore inapposite. (Pl. Opp. at 11-13.) Both *Lang* and *Swedlow*, however, do not single out or distinguish the factual situations addressed therein as "unique"; instead, each case utilizes the "actual controversy" standard that applies to all declaratory judgment actions for patent infringement. *See Lang*, 895 F.2d at 764; *Swedlow*, 495 F.2d at 888.

As explained in Midwest's initial memorandum, these cases illustrate that the actual controversy standard requires that the conflict between the parties be "sufficiently real and imminent" and cannot be premised on alleged conduct that is "too remote and unduly speculative." (Df. Memo. at 8, 10.) Indeed, consistent with *Lang* and *Swedlow*, both this Court and the Federal Circuit have expressly held that a declaratory plaintiff must have not only a reasonable apprehension of an infringement suit, but fear of an "*imminent* suit." *Teva Pharms.*, 395 F.3d at 1333 (emphasis in original); *True Center Gate Leasing, Inc. v. Sonoran Gate, LLC*, 402 F. Supp.2d 1093, 1097 (D. Ariz. 2005) (citing *Teva Pharms.*, 395 F.3d at 1333). Meeting this standard requires a showing that "there is a substantial controversy" between parties having adverse legal interests of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Teva Pharms*, 395 F.3d at 1333. In this case, Soilworks has not demonstrated that it embraced any reasonable apprehension of an imminent suit and, accordingly, has not established that any immediate and real controversy exists between the parties.

**B. Soilworks has Failed to Plead a Violation of Lanham Act § 43(a).**

In its memorandum in opposition, Soilworks does not attempt to contest Midwest's proper conclusion that Soilworks has failed to plead the *prima facie* elements of a claim for false designation of origin or association under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). (Pl. Opp. at 14-15.) Instead, Soilworks now asserts that its Lanham Act claim against Midwest is premised on alleged false advertising in interstate commerce under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). (Pl. Opp. at 14-15.)

Soilworks' apparently bases this argument on the gravamen of its Complaint that Midwest has made false or misleading statements or representations in the marketplace concerning the validity and scope of its patent and the potential infringement of the patent by others. (Pl. Opp. at 14-15; Complaint at ¶¶8, 12, 13.) However, Soilworks conveniently neglects to address the fundamental element of such a Lanham Act false advertising claim that the Complaint plainly lacks: any alleged bad faith on the part of Midwest. "[B]efore a patentee may be held liable under § 43(a) for marketplace activity in support of its patent, and thus be deprived of the right to make statements about potential infringement of its patent, the marketplace activity must have been undertaken in bad faith." *See Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999) (establishing bad faith as an additional element of Section 43(a) false advertising claims premised on a patentee's statements regarding patent validity and infringement).

Soilworks' Lanham Act count contains no allegation that the allegedly false and deceptive representations and statements made by Midwest in the marketplace concerning

564663  9

the scope and validity of its patent or potential infringement thereof were undertaken in bad faith. (Complaint at ¶¶7-19.) Soilworks' failure to plead this essential element of its purported false advertising claim mandates it dismissal under Rule 12(b)(6). S*ee, e.g., Noble Fiber Technologies, LLC v. Argentum Medical, LLC*, No. 3:05-cv-01855, 2006 WL 1793219, *5 (M.D. Pa. June 27, 2006) (dismissing false advertising claims as "conclusory and insufficient to alleged bad faith with the particularity necessary under Rule 9(b)"); *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, No. 05-C-2153, 2006 WL 2982140, *2 (N.D. Ill. Oct 17, 2006) ("Claims that allege false representation or false advertising under the Lanham Act are subject to the heightened pleading requirements of Fed. R. Civ. R. 9(b).").

### C. Soilworks has No Viable Cause of Action for "Misappropriation of Goodwill."

Soilworks concedes in its memorandum in opposition that Arizona law does not recognize a common law claim for "misappropriation of goodwill," and argues that such a cause of action can be maintained under Section 43(a) of the Lanham Act. (Pl. Opp. at 16.) The Court needs to look no further than this admission, as Soilworks has not pled a cognizable claim under Section 43(a). Moreover, even assuming that Soilworks' Lanham Act claim was valid (which it is not), Soilworks has failed to cite any authority for pleading "misappropriation of goodwill" as a separate cause of action. *See Rainbow Play Sys., Inc. v. GroundScape Tech., LLC.*, 364 F. Supp.2d 1026, 1039 (D. Minn. 2005) ("Misappropriation of goodwill is element of trademark, trade dress, or unfair/deceptive trade practices claims; it is not claim in and of itself. . . . [Plaintiff] does not provide, and

this Court has not found, any authority in support of pleading 'misappropriation of goodwill' as a separate claim.").[7]

### D. Soilworks has Provided the Court with No Authority or Grounds for Exercising Discretionary Jurisdiction Over its Declaratory Relief Claim or its Pendent State Law Claims.

Soilworks provides no substantive responses to either of Midwest's two remaining arguments, which counsel against this Court's exercise of jurisdiction over Soilworks' request for declaratory relief (Count II) and its pendant state law claims (Counts IV and VI). (Df. Memo. at 15-17.) In response to the legal and factual authority that Midwest provided in its initial memorandum to support the Court's declination of its discretionary jurisdiction over Soilworks' request for declaratory relief, *even assuming the existence of a controversy between the parties*, Soilworks merely reiterates its oft-repeated, conclusory declaration that such a controversy exists. (Pl. Opp. at 16.) Similarly, in responding to Midwest's well-founded reasons for this Court's dismissal of Soilworks' state law claims following dismissal of its federal claims, Soilworks again only restates its blanket claim that federal jurisdiction exists. (Pl. Opp. at 16.) Because Soilworks has offered no grounds for the Court's exercise of its discretionary jurisdiction over either its declaratory relief or state law claims, the Court should dismiss the Complaint in its entirety.

### III. <u>CONCLUSION</u>

For all of reasons stated herein and in Midwest's initial memorandum, this Court should grant Midwest's motion to dismiss Soilworks' Complaint.

---

[7] Contrary to Plaintiff's citation to *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1145 (9th Cir. 1999), that case does not address, much less provide authority regarding, the validity of pleading misappropriation of goodwill as a Section 43(a) false advertising claim. (Pl. Opp. at 16.)

564663 11

DATED this 4th day of December 2006.

By /s/ George C. Chen
Lawrence G. Scarborough
George C. Chen
Bryan Cave LLP
Two N. Central Avenue, Suite 2200
Phoenix, AZ 85004-4406

Attorneys for Defendant
Midwest Industrial Supply, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2006, the foregoing Reply of Midwest Industrial Supply, Inc. to Soilworks' Opposition to Motion to Dismiss was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Denise M. Aleman
Denise M. Aleman