E. SCOTT DOSEK #012114
JOHN P. PASSARELLI #16018 (NE)
KUTAK ROCK LLP
Suite 300
8601 North Scottsdale Road
Scottsdale, AZ 85253-2742
(480) 429-5000
Facsimile: (480) 429-5001

*Attorneys for Plaintiff*
*SOILWORKS, LLC, an Arizona corporation*

# UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SOILWORKS, LLC, an Arizona corporation,<br><br>Plaintiff / Counterdefendant / Counterclaimant,<br><br>v.<br><br>MIDWEST INDUSTRIAL SUPPLY, INC., an Ohio corporation authorized to do business in Arizona,<br><br>Defendant / Counterclaimant / Counterdefendant. | NO.: 2:06-CV-2141-DGC<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>(ORAL ARGUMENT REQUESTED) |

## I. Introduction

Soilworks, LLC ("Soilworks") requests entry of Summary Judgment. Soilworks is entitled to judgment as a matter of law on Midwest Industrial Supply, Inc.'s ("Midwest") Counts I, II, III, IV and V in its Counterclaim (the "Midwest Claims"). At best, much of Midwest's evidence amounts to mere allegations. Indeed, Midwest has failed to set forth specific facts to establish the required prima facie cases for the Midwest Claims. No genuine issues of any material fact remain for trial. Summary Judgment on the Midwest Claims in favor of Soilworks is appropriate.

## II. Statement of Undisputed Facts

### A. Activities Prior to Soilworks Filing of its Declaratory Judgment Action

Soilworks distributes (among other products) a dust control product named Durasoil. **[SOF ¶ 1].** Midwest distributes dust control products as well, some of which embody two

4830-0586-0610.2

United States Patents, Nos. 7,081,270 (the "'270 Patent") and 7,074,266 (the "'266 Patent") (collectively, hereinafter referred to as the "Midwest Patents"). **[SOF ¶ 2].** It is undisputed that Soilworks and Midwest are competitors. **[SOF ¶ 3].**

On June 8, 2006, prior to the date of issuance of the Midwest Patents, Midwest's outside counsel sent a letter to counsel for Soilworks (June 8th Letter) asserting, among other things, that Midwest "fe[lt] that at least some of the claims in [our] two patent applications cited above could potentially affect your client's ability to make, use and sell Durasoil in the future . . . While no legal actions are contemplated by Midwest at this time, we ask you to kindly review the claims in the Applications, which are enclosed herewith . . ." **[SOF ¶ 4].** For the next several months, the parties' counsel exchanged letters. During this time, the Midwest Patents issued, on July 11, 2006 and July 25, 2006, respectively.

Midwest admits that it had not performed any tests to determine whether the Durasoil product infringed the Midwest Patents prior to its June 8th Letter. **[SOF ¶ 5].** To the extent Midwest did perform any tests on the Durasoil product when it entered the market, Midwest drew no conclusions from those tests. **[SOF ¶ 6].**

On July 27, 2006, just two days after the latter issuance of the Midwest Patents, Midwest sent a letter to Soilworks' client, and distributor Polar Supply Company, Inc. ("Polar Supply") ("July 27th Letter"). **[SOF ¶ 7].** Again, at the time it sent the July 27th Letter, Midwest had not performed any infringement analysis which compared Durasoil to the Midwest Patents, and drew no conclusions from its general analysis of the product. **[SOF ¶ 8].** Midwest informed Polar Supply that "[t]he granting of the U.S. patent now allows Midwest to pursue those who make, use, **sell, offer for sale**, and / or import knock-off or imitators of EK35 or Envirokleen." (Id.) (Emphasis in original). **[SOF ¶ 9].** Then, Midwest specifically referred to Soilworks' allegedly infringing conduct:

> We have appraised (sic) Soilworks LLC, 681 N Monterey Street, Gilbert, AZ 85233 of this patent and to date have not received a substantive response. As you may or may not be aware, U.S. patent law requires that a response be received by the patent owner **when someone has been accused of infringement**.[SOF ¶ 10].

So, prior to performing any infringement analysis on Durasoil, Midwest directly threatened a Soilworks' customer and Soilworks with claims of infringement.

In addition to these direct threats, Midwest made general claims to the trade of Soilworks' infringement. ("Marketing Materials") **[SOF ¶ 11].** In its Marketing Materials, Midwest provided product literature entitled "Compare Midwest and Envirokleen to the Competition." (Id.) **[SOF ¶ 12].** Again, Midwest specifically addressed Soilworks as an imitator of its products. "**Soilworks, LLC is an imitator** of synthetic organic dust suppressant technology." (Id.) **[SOF ¶ 13].** In its promotional materials, Midwest further states that competitors, like Soilworks, are either not supplying synthetic organic dust control product or they are infringing:

> Others claiming to offer products similar to EnviroKleen [and] EK35 are either not supplying Synthetic Organic Dust Control or are infringing on Midwest Industrial Supply's patents. The granting of the U.S. Patent now allows Midwest to pursue those who make, use, sell, offer for sale and/or import knock-off or imitators infringing Midwest's technology. (Id.) **[SOF ¶ 14].**

Soilworks filed suit for declaratory and other relief on September 7, 2006.

**B.    The Products at Issue**

   **1.    Durasoil**

Soilworks manufactures Durasoil at its facility in Gilbert, Arizona, blending and mixing ingredients to meet the specific needs of its customers. **[SOF ¶ 15].** As a result, the Durasoil product can contain varying levels of viscosities and mixture ratios. **[SOF ¶ 16].** The Material Safety Data Sheet ("MSDS") for Durasoil describes the ingredients as a "complex mixture of severely hydrotreated, branched alkanes and alkylated saturated ring compounds" and "proprietary ingredients." **[SOF ¶ 17].** The proprietary ingredients include any one or combination of the following: (i) white mineral oil; (ii) hydrotreated light paraffinic petroleum distillates, and/or (iii) hydrotreated middle petroleum distillates. **[SOF ¶ 18].** (i.e. September 18, 2007 "CONFIDENTIAL" ingredients).

   **2.    Midwest Patents**

Midwest is the owner of two United States Patents, Nos. 7,081,270 (the "'270 Patent") and 7,074,266 (the "'266 Patent") (collectively, hereinafter referred to as the "Midwest Patents"). **[SOF ¶ 19].** Essentially, the '266 Patent references a compound and the '270 Patent references a method or process for application of the compound described in the '266 Patent. **[SOF ¶ 20].** Pursuant to their claims, both Midwest Patents must consist of or refer to essentially of the following substances: (a) a binder consisting essentially of a carboxylic acid, an ester, or a thermoplastic polyolefin; and, (b) a synthetic isoalkane. **[SOF ¶ 21].** In Count III of its Counterclaim, Midwest seeks Declaratory Judgment that the Midwest Patents are valid and infringed by Soilworks' Durasoil product. **[SOF ¶ 22].**

### 3. **The Midwest Marks**

In its pleadings, Midwest identifies the "marks" at issue in this case. Those "marks" are: Soil-Sement®, Envirokleen®, EK35®, Road Oyl®, Road ProNT®, Haul Road Dust Control®, Dustfyghter®, and Diamond Dr®, Arena Rx®, Base-Bldr®, and ROAD-BLDR®. **[SOF ¶ 23].** In addition to its claim of patent infringement of the Midwest Patents, Midwest asserts that Soilworks has infringed upon the Midwest Marks by (i) "embark[ing] on a scheme to trade upon and injure the substantial goodwill and reputation" of Midwest and (ii) us[ing] Midwest's Marks in commerce to divert sales and goodwill from Midwest." **[SOF ¶ 24].** Midwest offers no evidence to support any claims arising from or related to the Midwest Marks but for Midwest's allegations that its mark Soil-Sement has been infringed.

### 4. **Alleged False Statements**

Instead, as best can be gleaned from the record, Midwest's Lanham Act claims arise from the following five (5) statements:

- Soilworks, LLC is the innovator and manufacturer of Soiltac soil stabilizer and dust control agent;
- Soilworks, LLC is the innovator and manufacturer of Gorilla-Snot soil stabilizer and dust control agent;
- Soilworks, LLC is the innovator and manufacturer of Durasoil dust control agent;
- Durasoil is an "ultra-pure, synthetic organic fluid formulated to meet the highest standards of environmental efficacy
- Durasoil is "Oil-Sheen Free (No Rainbow Effect)"

(collectively, the "Alleged False Statements") **[SOF ¶ 25].**

## III. ARGUMENT

### A. Summary Judgment Standard

A motion for summary judgment may be granted when the evidence shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "To defeat the motion, the non-moving party must show that there are genuine factual issues 'that properly can be resolved only be a finder of fact because they may reasonably be resolved in favor of either party.'" *Pestube Systems, Inc. v. HomeTeam Pest Defense, LLC*, 2007 WL 973964 at, *5 (D. Ariz. March 30, 2007) *citing to Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." *Id*. See also 56(e); *see also Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). While the evidence must be viewed in the light most favorable to the nonmoving party. *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001), if the evidence "'is merely colorable or is not significantly probative, summary judgment may be granted.'" *SecureMed Corp. v. Standard Sec. Life. Ins. Co. of New York*, 2006 WL 288388 (D. Ariz. Feb. 7, 2006).

### B. Midwest's Count I Federal Trademark Infringement Claim Must Fail Because Soilworks Does Not Use the Midwest Marks and There is No Likelihood of Confusion

There is no dispute that (i) Soilworks has not used the Midwest Marks in commerce and (ii) no likelihood of confusion exists as to the Midwest Marks.

To prevail on a trademark infringement claim, one must show that: (i) it has a valid, protectable trademark, and (ii) that the defendant's **use** of the mark is likely to cause confusion. *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047, 1053 (9th Cir. 1999) (emphasis added). The critical determination is "'whether an alleged trademark infringer's **use** of a mark creates a likelihood that the consuming public will be confused as to who makes what product.'" *Brother Records, Inc. v. Jardine*, 318 F.3d 900,

908 (9th Cir. 2003) (emphasis added) (*quoting Thane Int'l Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901(9th Cir. 2002).

"Likelihood of confusion exists when consumers viewing the mark would probably assume that the goods it represents are associated with the source of a different product identified by a similar mark." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 608 (9th Cir. 2005).

Evidence of a "use in commerce" is the *sine quo non* of any trademark infringement claim. Trademark "infringement claims are subject to a commercial use requirement." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005). Indeed, "[t]he Supreme Court has made it clear that trademark infringement law **prevents only unauthorized uses** of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers." *Id.* at 676 (emphasis added) (*citing Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924).

Without use in commerce, there can be no infringement. Midwest has failed to produce any evidence that Soilworks has used in commerce any of the Midwest Marks. **[SOF ¶ 26].** In fact, it concedes that none of the Midwest Marks have been or are being infringed. **[SOF ¶ 27].** The lack of evidence of use in commerce (not even considering Midwest's concession that no infringement has occurred), standing alone, is sufficient to warrant summary judgment in favor of Soilworks on Midwest's Count I trademark infringement claim.

Assuming, Midwest could produce evidence of use in commerce, it has not presented admissible evidence of a likelihood of confusion. Indeed, it admits no confusion exists. **[SOF ¶ 28].** A plaintiff must present at least one of the following three forms of evidence to demonstrate a likelihood of confusion: (i) survey evidence; (ii) evidence of actual confusion; and (iii) an argument based on an inference arising from a judicial comparison of the conflicting marks themselves and the context of their **use in the marketplace**. *See Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1404 (9th Cir. 1997) (emphasis added).

Midwest has presented no survey evidence, nor evidence of actual confusion. No

comparison of the allegedly conflicting marks is necessary because of a lack of evidence of use in commerce. Summary Judgment in favor of Soilworks on Count I's Trademark Infringement claim is appropriate.

### C. Midwest's Count I for False Advertising, False Designation of Origin and Unfair Competition Must Fail Because Midwest Cannot Meet Essential Elements for Each Claim and There is no Issue of Material Fact.

#### 1. False Advertising

Midwest asserts the Alleged False Statements constitute false advertising, unfair competition and false designation of origin under the Lanham Act and unfair competition under Arizona common law. Midwest's evidence, or the lack of it, does **not** meet the prima facie case for any of its claims of false advertising, false designation of origin and unfair competition (federal and state).

The Lanham Act § 43(a), provides, in pertinent part, the following regarding False Advertising claims:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any ... false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)

To establish a prima facie case of false advertising under § 43(a) of the Lanham Act, a plaintiff is required to establish each of the following elements:

(1) a false or misleading statement of fact about a product;
(2) such statement either deceived, or had the capacity to deceive, a substantial segment of potential customers;
(3) the deception is material, in that it is likely to influence the consumer's purchasing decision;
(4) the product is in interstate commerce
(5) the plaintiff has been or is likely to be injured as a result of the statement at issue either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product.

*See Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008).

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true, but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (*citing Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993)). Statements alleged to be literally false can be characterized as: (i) testor study validated or (ii) baldly asserted. *Id.* "[W]hen the claim is baldly asserted, with no assertion of test or study validation, its literal falsity may be proven by **proof that the favorable fact baldly asserted is false**." *Id.* (emphasis added). When evaluating whether an advertising claim is literally false, "'the claim must be analyzed in its full context.'" *Id.* In the instant case, Midwest has made no allegations that Soilworks has made any "testor study validated" claims. Therefore, the Alleged False Statements arise under the second category of allegedly false statements.

"In a suit for damages under Section 43(a) . . . actual evidence of some injury resulting from the deception is an essential element." *Harper House, Inc. v. Thomas Nelson, Inc.* 889 F.2d 197, 210 (9th Cir. 1989) *cited with approval in Societe Civile Succession Richard Guiono v. Beseder Inc.*, 2007 WL 3238703 at *4 (D. Ariz. Oct. 31, 2007); *see also Air Turbine Technology, Inc. v. Atlas Copco AB*, 410 F.3d 701, 709 (Fed. Cir. 2005) ("[F]alse advertising under the Lanham Act requires, among other things, a showing of both an injury and a causal link between the injury and the allegedly false advertising").

"'In a suit for money damages where a defendant misrepresented its own product but did not specifically target a competing product, plaintiff may be only one of many competitors, and **without proof of causation and specific injury** each competitor might receive a windfall unrelated to its own damage.'" *Societe Civile Succession Richard Guiono v. Beseder Inc.*, 2007 WL 3238703 at *5 (D. Ariz. Oct. 31, 2007) (emphasis added) *citing Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1335-36 (8th Cir. 1997). In the instant case, Midwest has made no allegation that Soilworks has made false or misleading statements regarding any *Midwest* product. Instead, Midwest alleges, but does not support with evidence, that Soilworks' statements about its own products constitute false advertising.

      **a.**    **The "Alleged False Statements" are not Literally False or Misleading**

4830-0586-0610.2

8

Midwest has failed to provide any proof that the Alleged False Statements are literally false. On this lack of evidence alone, Midwest fails to meet an essential element for the survival of its false advertising claim. Summary Judgment on Midwest's false advertising claim should be granted in Soilworks' favor.

Central to Midwest's false advertising claim is Soilworks statement that it is a "manufacturer" of the Durasoil, Soiltac and Gorilla-Snot products. **[SOF ¶ 29].** Midwest's false advertising claim must fail because (1) Midwest has failed to provide any proof that Soilworks' statement that it is a "manufacturer" is literally false and (2) by Midwest's own definition, Soilworks *is* a manufacturer of Durasoil, Surtac, Soiltac and Gorilla-Snot.

Midwest's claim of falsity is based upon Midwest's conclusory statement that because of Midwest's "location and knowledge of [Soilworks] by [Midwest's] representatives" Soilworks manufactures "no product whatsoever." **[SOF ¶ 30].** Such an averment is not probative to demonstrate the Alleged False Statements are false or likely to mislead.

In fact, the record demonstrates that Soilworks is, indeed a manufacturer of Durasoil:

> Q. Is Soilworks a manufacturer of Durasoil?
> A. I believe us to be.
> Q. And we have gone over that, you believe you are a manufacturer because at times you blend Durasoil, correct?
> A. I think that's the primary reason. **[SOF ¶ 31].**

Midwest has presented no evidence of the relevant marketplace's understanding of the terms which form the basis for Midwest's false advertising claim, and thereby cannot prove that such marketplace has been misled. Furthermore, by Midwest's own definition of "manufacture", Soilworks manufactures Durasoil, Surtac, Soiltac and Gorilla-Snot. Midwest agrees that when a company blends, forms or creates a formula and mixes the components together, it is a "manufacturer." **[SOF ¶ 32].** Indeed, Midwest believes the term "blender" and "manufacturer" can be used interchangeably. **[SOF ¶ 33].**

In addition, Midwest states that when a company provides a product specification to a supplier and the supplier meets the product specification, the company that provides that specification should also be considered a manufacturer. **[SOF ¶ 34].** In essence, Midwest considers a company to be a "manufacturer" so long as the company is not purchasing an

"off-the-shelf product . . . that is now just being re-labeled." *Id.* **[SOF ¶ 35].**

Soilworks mixes and blends the Durasoil, Surtac, Soiltac and Gorilla-Snot products. **[SOF ¶ 36].** Also, Soilworks provides product specifications for the Soiltac, Durasoil and Gorilla-Snot products to its suppliers, who meet those product specifications. **[SOF ¶ 37].** By Midwest's own definition, Soilworks is a manufacturer.

### c.  Midwest has Failed to Present Any Evidence the Alleged False Statements Either Deceived, or Had the Capacity to Deceive, a Substantial Segment of Potential Customers

Midwest cannot meet the second element of its false advertising claim because it has failed to present any evidence that the Alleged False Statements either deceived, or had the capacity to deceive any customer, let alone a substantial segment of potential customers. In this instance, Midwest admits no deception has occurred.

> **Q**. In those cases, it's clear the customer's not deceived into believing they're buying product from Midwest?
>
> MR. SKERIOTIS: Objection.
>
> THE WITNESS: No.
>
> **Q**. You're not saying that customers are buying product from Soilworks thinking they're buying products from Midwest?
>
> MR. SKERIOTIS: Objection.
>
> THE WITNESS: I'm not saying that. **[SOF ¶ 38].**

Furthermore, Midwest has presented no evidence demonstrating the relevant marketplace's understanding of these terms. Without such evidence or any evidence of deception or the capacity to deceive, Midwest's claim of false advertising must fail.

### d.  Midwest has failed to present any evidence demonstrating that the claimed deception is material, in that it is likely to influence the consumer's purchasing decision

Midwest has presented no evidence that the claimed deception is material in that it is likely to influence purchasing decisions. Indeed, Midwest can present no proof of causation and specific injury related to the Alleged False Statements as required to prevail in its false advertising claim. Instead, Midwest makes only conclusory and unsupported allegations that it has lost business from the Alaska Department of Transportation, the US Military, and a

"project in Hawaii" as a result of "Soilworks' conduct." **[SOF ¶ 39].**

In addition, Midwest alleges that Petro-Canada terminated a supply agreement with Midwest based upon Petro-Canada's "general displeasure" with the "volume of product that [Midwest] has bought from them." **[SOF ¶ 40].** However, Petro-Canada continues to be a "large supplier" of products to Midwest. **[SOF ¶ 41].** Midwest attributes the termination of this agreement with Petro-Canada to Soilworks' conduct without identifying the conduct or any proof of facts that would demonstrate the required causation between the Alleged False Statements and the specific injury. In addition, Midwest has provided no evidence that Petro-Canada terminated its agreement with Midwest after Soilworks' and its Durasoil product entered the marketplace. Furthermore, based upon the record, there is no evidence of "specific injury" other than the allegations of lost business and Petro-Canada's termination of its supply agreement, despite the fact that Petro-Canada continues to be a "large supplier" of products to Midwest. No reasonable jury could find that Soilworks' alleged conduct resulted in Petro-Canada's termination of its supply agreement with Midwest.

Midwest admits that Petro-Canada terminated its supply agreement with Midwest because Midwest "ha[s]n't purchased the volumes that [it] had projected." **[SOF ¶ 42].** Midwest claims this is the result of Soilworks' conduct "if they infringe the patent or if they are falsely advertising and diverting and/or winning business that they otherwise would not be able to get, then that has caused us harm." **[SOF ¶ 43].** However, such pure speculation ("if") does not raise a triable issue of material fact.

Summary Judgment in favor of Soilworks is appropriate.

### 2. False Designation of Origin, Unfair Competition and Unjust Enrichment

Midwest's Lanham Act claims for false designation of origin and unfair competition must fail because no likelihood of confusion exists. In order for Midwest to succeed on each of its other federal, state, and common-law based claims, it must establish a likelihood of confusion. *See Walter v. Mattel, Inc.,* 210 F.3d 1108, 1111 (9th Cir. 2000) ("The test for false designation under the Lanham Act, as well as the common-law and statutory unfair competition claims, is whether there was a 'likelihood of confusion.'").

"A claim for relief arises under § 1125(a) if defendant affixes to its goods any false

description or representation, including a false designation of origin, in a manner likely to cause confusion or to deceive consumers into thinking that **plaintiff is the source of defendant's** goods." *American Sleek Craft, Inc. v. Nescher*, 131 B.R. 991, 996 (D. Ariz. 1991) *citing to Decorative Aides Corp. v. Staple Sewing Aides Corp.*, 497 F.Supp. 154, 159 (S.D.N.Y. 1980), *aff'd*, 657 F.2d 262 (2d Cir. 1981) (citations omitted). "Similarly, an unfair competition claim 'rests in a showing that the defendant is passing off his goods or services as those of the plaintiff by virtue of a substantial similarity between the two, resulting in confusion on the part of potential customers.'" *Id.* Midwest has not presented any evidence of a likelihood of confusion. Furthermore, Midwest makes no claim of ownership to the terms "oil-sheen free" and "ultra-pure." **[SOF ¶ 44].**

"Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." *Trustmark Ins. Co. v. Bank One*, Ariz., 48 P.3d 485, 491 (Ariz. App. Ct. 2002). "To prevail on an unjust enrichment claim, a plaintiff must show: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) the absence of justification for the enrichment and the impoverishment, and (5) the absence of a legal remedy." *Lemon v. Harlem Globetrotters Intern., Inc.*, 437 F.Supp.2d 1089, 1107 (D. Ariz. 2006).

Midwest's unjust enrichment claim relies upon the same set of allegations as its unfair competition and false designation of origin claims. Midwest cannot meet the prima facie case for an unjust enrichment claim because it fails to meet all five elements. Indeed, Midwest has not produced any evidence that would even suggest an enrichment, and impoverishment, a connection between the enrichment and impoverishment, an absence of justification for such enrichment and impoverishment and the absence of a legal remedy. Summary judgment is appropriate on Midwest's unjust enrichment claim.

**C. Assuming Midwest Can Prove its False Advertising Claim, it is *Not* Entitled to Money Damages Because it Has Failed to Provide Any Indication of Actual Injury Related to the False Advertising.**

**1. Lanham Act Requires "Specific and Detailed" Proof of Injury for Damages Award.**

Midwest has failed to provide "specific and detailed" proof of any injury related to its

false advertising claim as required under 43(a) the Lanham Act and Ninth Circuit Case law. As a result, it cannot be entitled to damages. This case does not involve any allegations of comparative advertising.

"The injury in cases involving non-comparative statements 'accrue[] equally to all competitors.... Thus [courts] require[] some indication of actual injury and causation to satisfy Lanham Act standing requirements and to ensure a plaintiff's injury was not speculative.'" *CKE Restaurant v. Jack in the Box, Inc.*, 494 F. Supp. 2d 1139, 1146 (C.D. Cal. 2007) (*quoting McNeilab, Inc. v. American Home Products Corp.*, 848 F.2d 34, 38 (2d Cir. 1988)). Further, 15 U.S.C. § 1117(a) provides that a monetary award "shall constitute compensation and not a penalty." *Id.*

"Accordingly, based on [Soilworks' allegedly] actionable non-comparative advertising that is the subject of [Midwest's] counterclaim, [Midwest] was required to present evidence . . . that demonstrated that [it] had been personally injured by [Soilworks'] non-comparative statements in order to support a compensatory or actual damages award." *Societe Civile*, 2007 WL 3238703, at *5 Midwest has failed to present any such evidence and is, therefore, not entitled to damages.

**D. Soilworks Does Not Infringe Any Claims of the '266 Patent Because Soilworks' Durasoil Product Does Not Meet Critical Requirements of Claims 1-15 in Several Respects.**

**1. Summary Judgment in Patent Cases is appropriate where the Moving Party is Entitled to Judgment as a Matter of Law.**

In a patent case, as in any other type of litigation, summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *and see, e.g. Jamesbury Corp. v. Litton Indus. Prods., Inc.*, 839 F.2d 1544, 1548 (Fed. Cir. 1988), *cert. denied*, 488 U.S. 828 (1988). While the Court may look at the evidence in the light most favorable to the non-movant, the Court must view such evidence realistically. After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the moving party would, at trial, be entitled to judgment as a matter of law. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986);

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159 (1970). Here, no reasonable fact finder could return a verdict for Midwest inasmuch as critical limitations of Midwest Patents' claims are absent from Soilworks' Durasoil product.

**2. The Midwest Patents are Not Infringed Because Essential Elements of the Claims are Absent from Soilworks' Durasoil Product**.

Regardless of whether patent infringement is alleged to be direct or indirect,[1] one must first determine the scope of the claims of the patent and then decide whether the properly construed claims encompass the accused structure. *Kahn v. Gen. Motors corp.*, 135 F.3d 1472, 1476 (Fed. Cir. 1998). Infringement exists only if all of the claim limitations are present in the accused product, either literally or by a substantial equivalent. *Young Dental Mfg. Co. v. Q3 Special Prods., Inc.*, 112 F.3d 1137, 1141 (Fed. Cir. 1997). Moreover, there can be no indirect infringement unless there exists an underlying direct infringement. *See C. R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc.*, 911 F.2d 670, 673 (Fed. Cir. 1990).

Accordingly, the Court should first determine the proper construction of claims of the Midwest Patents and then apply those claims as so construed to the accused Durasoil product. Any time an independent claim is found not to be infringed, any claims dependent on that independent claim must likewise be found to not be infringed. *See Becton Dickinson & Co. v. C. R. Bard, Inc.*, 922 F.2d 792, 798 (Fed. Cir. 1990); *see also Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989). This is because the dependent claims, by definition, also include all of the limitations of the independent claims from which they depend.

### a. Claim Construction

Claim construction is an issue of law for this Court to decide, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Ordinarily, claims should be given their ordinary and customary meaning, as

---

[1] Patent infringement can be either direct or indirect. Direct infringement occurs when a party (or parties working together) makes, uses, offers to sell, sells, or imports (into the U.S.) a patented invention. 35 U.S.C. § 271(a). Indirect infringement can occur where there is an underlying direct infringement which the indirect infringer either induces ("inducing infringement") or to which the indirect infringer contributes ("contributor infringement").

understood by one of ordinary skill in the art. *Phillips v. AWH Corp*, 415 F.3d 1303, 1312 (Fed. Cir. 2005), (en banc) ("We have frequently stated that the words of a claim 'are generally given their ordinary and customary meaning.'") *Vitronics Corp. v. Conceptronics, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *see also Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1299 (Fed. Cir. 1999); *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998). The Federal Circuit has made clear, moreover, that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application. *See Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004) ("A court construing a patent claim seeks to accord a claim the meaning it would have to a person of ordinary skill in the art at the time of the invention."); *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004) ('customary meaning' refers to the 'customary meaning in [the] art field'); *Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327, 1338 (Fed. Cir. 2003) (claim terms "are examined through the viewing glass of a person skilled in the art"); *see also PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1363 (Fed. Cir. 2005) (meaning of claim "must be interpreted as of [the] effective filing date" of the patent application); *Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1353 (Fed. Cir. 2000) (same). Hence, the terms of a claim should be given their ordinary meaning, unless it appears from the patent that the inventor used them differently. *Gentex Corp. v. Donnelly Corp.*, 69 F.3d 527, 530 (Fed. Cir. 1995).

Multiple limitations of the Midwest Patents' respective claim 1 are absent from Soilworks' Durasoil product. "Literal infringement requires that every limitation of the patent claim be found in the accused device." *Tate Access Floors, Inc. v. Maxcess Technologies, Inc.*, 222 F.3d 958, 964 (Fed. Cir. 2000) (*quoting General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997)). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharmaceutical Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). Hence, where, as

here, multiple limitations are missing from the accused product, there can be no infringement.

> **b. Soilworks Does Not Infringe the Claims of the Midwest Patents Either Literally or Under the Doctrine of Equivalents**.

Critical limitations in each and every one of the claims of the 'Midwest Patents are missing from the accused Durasoil product. Consequently, because "'[l]iteral infringement requires that every limitation of the patent claim be found in the accused device[,]'" *Tate Access Floors, Inc.*, 222 F.3d at 964, and "[i]f any claim limitation is absent from the accused device, there is no literal infringement as a matter of law[,]" *Bayer AG*, 212 F.3d at 1247, Soilworks cannot be found to literally infringe any of claims of the Midwest Patents.

The Midwest Patents' Claims require the presence of organic acids (i.e. carboxylic and fatty acids). **[SOF ¶ 45].** The paraffinic components of the Durasoil product are non-acidic, that is, it does not contain an organic acid. **[SOF ¶ 46].** The Midwest Patents' Claims require the presence of an emulsifier. **[SOF ¶ 47].** Soilworks' Durasoil product does not contain an emulsifier. **[SOF ¶ 48].** The Midwest Patents' claims require the presence of a synthetic iso-alkane. **[SOF ¶ 49].** Durasoil does not contain any synthetic iso-alkanes. **[SOF ¶ 50].** The Midwest Patents' Claims require the presence of a polyolefin to be used as a binder. **[SOF ¶ 51].** The Durasoil product does not utilize any polymeric materials or a binder. **[SOF ¶ 52].** As a matter of law, Durasoil does not infringe the Midwest Patents.

Further, Soilworks cannot be found to infringe under the doctrine of equivalents. The so-called doctrine of equivalents protects patentees against infringers that make only insubstantial changes to a patented invention.[2] Indeed, the test for equivalency is one of "insubstantial differences." *Abbott Labs. v. Novopharm Ltd.*, 323 F.3d 1324, 1329 (Fed. Cir.

---

[2] In this regard, the Federal Circuit has stated:

> "[T]he doctrine of equivalents cannot be employed in a manner that wholly vitiates a claim limitation. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29-30, (1997); *Athletic Alternatives*, 73 F.3d at 1582, ("specific exclusion" principle if "a corollary to the 'all limitations' rule"). Thus, if a patent states that the claimed device must be "non-metallic," the patentee cannot assert the patent against a metallic device on the ground that a metallic device is equivalent to a non-metallic device.

*SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337, 1346-47 (Fed. Cir. 2001).

2003). Nevertheless, for an accused product to infringe under the doctrine of equivalents, it must still contain "each limitation of the claim or its equivalent", *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1358-9 (Fed. Cir. 2002) (citing *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 40 (1999)), with the equivalency determination being performed on a "limitation-by-limitation basis." *Allen Engineering Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1345 (Fed. Cir. 2002). In no event will the application of the doctrine of equivalents, even as to an individual element, be allowed such broad play as to effectively eliminate an element in its entirety. *Warner Jenkinson*, 520 U.S. at 29; *see also PC Connector Solutions LLC v. Smartdisk Corp.*, 406 F.3d 1359, 1364-65 (Fed. Cir. 2005).

Soilworks' Durasoil product does not contain any substances substantially similar to a synthetic isoalkane, a binder, carboxylic acid or a thermoplastic polyolefin as taught in the claims of the Midwest Patents. **[SOF ¶ 53].** Importantly, critical limitations in each of the claims are missing from the Durasoil product. Hence, Soilworks does not infringe any of claims under the doctrine of equivalents.

### c. **Soilworks Does Not Indirectly Infringe any Claims of the 'Midwest Patents Because There is No Direct Infringement Thereof.**

Because there is no direct infringement, either literally or under the doctrine of equivalents, there can be no indirect infringement. *C. R. Bard, Inc., supra*, 911 F.2d at 673. There are two types of indirect infringement: inducement and contributory infringement. No indirect infringement can exist without an underlying direct infringement. Inasmuch as Soilworks does not directly infringe the claims Midwest Patents, Soilworks cannot infringe the Midwest Patents indirectly, either through contributory infringement or through inducing infringement.

## IV. CONCLUSION

For the reasons stated above, Soilworks respectfully request that this Court grant its Motion for Summary Judgment.

| | |
|---|---|
| 1 | Dated this 9th day of May, 2008. |
| 2 | KUTAK ROCK LLP |
| 3 | |
| 4 | By  /E. Scott Dosek |
| 5 | E. Scott Dosek<br>John P. Passarelli *(Pro Hac Vice)* |
| 6 | Suite 300<br>8601 North Scottsdale road |
| 7 | Scottsdale, AZ  85253-2742 |
| 8 | *Attorneys for Plaintiff* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2008, the foregoing Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment by Soilworks, LLC was filed electronically. Notice of this filing will be sent to all parties by operations of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s  
Amy S. Fletcher