1  Craig A. Marvinney, 0004951 (OH)
2  John M. Skeriotis, 0069263 (OH)
   Jill A. Bautista, 0075560 (OH)
3  BROUSE MCDOWELL
   388 S. Main Street, Suite 500
4  Akron, Ohio 44311-4407
5  Telephone: 330-535-5711
   Facsimile: 330-253-8601
6  Email: cmarvinney@brouse.com,
7          jskeriotis@brouse.com,
           jbautista@brouse.com
8  *Admitted pro hac vice*

9  Donald L. Myles, Jr., 007464 (AZ)
10 JONES, SKELTON & HOCHULI, P.L.C.
   2901 N. Central Ave., Suite 800
11 Phoenix, Arizona 85012
   Telephone: 602-263-1700
12 Facsimile: 602-263-1784
13 Email: dmyles@jshfirm.com

14 *Attorneys for Defendant/Counterclaimant*
   *Midwest Industrial Supply, Inc.*
15
16                    **UNITED STATES DISTRICT COURT**

17              **IN AND FOR THE DISTRICT OF ARIZONA**

18

19 SOILWORKS, LLC, an Arizona            NO.: 2:06-CV-2141-DGC
   corporation,
20
        Plaintiff / Counterdefendant /
21      Counterclaimant,

22 v.

23 MIDWEST INDUSTRIAL SUPPLY, INC.,      **MIDWEST INDUSTRIAL SUPPLY,**
   an Ohio corporation authorized to do  **INC.'S LOCAL RULE 56.1**
24 business in Arizona,                   **STATEMENT OF MATERIAL FACTS**

25      Defendant / Counterclaimant /
        Counterdefendant.
26

27

28

Pursuant to Local Rule 56.1 of the United States District Court for the District of Arizona, Midwest Industrial Supply, Inc. ("Midwest") submits the following statement of material facts and exhibits hereto in support of its Motion for Partial Summary Judgment:

***The Parties:***

### ***Midwest and Its Products, Trademarks, and Patents:***

1.    Midwest is an Ohio corporation that maintains its principal place of business in Canton, Ohio.  (Midwest's Counterclaim, ECF #16, at ¶1; Soilworks' Answer to Midwest's Counterclaim, ECF #22, at ¶1.)

2.    Robert Vitale is the Chief Executive Officer of Midwest and has been an owner and principal for Midwest since 1975.  (Transcript of Feb. 19, 2008 Deposition of Robert Vitale, "Vitale Depo. I," attached hereto as **Exhibit A**, at p. 16, line 5 – p. 17, line 5.)

3.    Midwest has developed a substantial reputation and good will as a leading provider of dust control, erosion control, soil stabilization, and anti-icing/de-icing products. (Declaration of Robert Vitale, "Vitale Decl.," attached hereto as **Exhibit C**, at ¶¶3-4.)

4.    For more than thirty (30) years, Midwest has researched, manufactured, distributed, and sold these products to customers in various industries throughout the United States and the world.  (Vitale Decl. at ¶¶3-4; Vitale Depo. I at p. 83, lines 16-20.)

5.    Midwest has received U.S. Patent No. 7,074,266 ("'266 Patent") and U.S. Patent No. 7,081,270 ("'270 Patent") for its innovative soil stabilization and dust control technology.  (Vitale Decl. at ¶5 and Attachments 1 and 2 thereto.)

6.    Midwest owns federally registered trademarks for Soil-Sement®, EnviroKleen®, EK35®, Road Oyl®, Road Pro NT®, Haul Road Dust Control®, Dustfyghter®,

and Diamond Dr®, Arena Rx®, Base-Bldr®, ROAD-BLDR® and Synthetic Organic Dust Control® in connection with its products. (Vitale Decl. at ¶6.)

7.    On August 10, 1982, Midwest received a registration on the Principal Register (Reg. No. 1,204,198) for the trademark Soil-Sement® for "chemical adhesive used in cementing surface dust particles together and then cementing the bound surface layer to the road bed subbase[.]" (Vitale Decl. at ¶7 and Attachment 3 thereto.)

8.    On February 9, 1999, Midwest received a registration on the Principal Register (Reg. No. 2,222,732) for the trademark Soil-Sement® for "chemical adhesive used in cementing surface dust and surface particles together and then cementing the bound surface layer to a subbase, including roadbase earth-work, bareground environments, clear cut or excavated areas, and subbase which is subject to wind, water, and vehicle erosion[.]" (Vitale Decl. at ¶8 and Attachment 4 thereto.)

9.    Midwest's Soil-Sement® trademark has been in continuous use for more than five consecutive years by Midwest subsequent to the date of its registrations. (Vitale Decl. at ¶9.)

10.    On October 23, 2007, Midwest received a registration on the Principal Register (Reg. No. 3,318,243) for the trademark Synthetic Organic Dust Control® for "dust suppressant in the nature of aliphatic and cyclic organic dust suppressing compositions for use in controlling dust on roadways, shoulders, trails, helipads, stockpiles, heavy traffic roads, baseball diamonds, and horse-tracks[.]" (Vitale Decl. at ¶10 and Attachment 5 thereto.)

11.    Midwest began using its Synthetic Organic Dust Control® mark in commerce since at least as early as July 1998 and had used the mark exclusively until Soilworks began using it no earlier than 2003.  (Vitale Decl. at ¶11; Transcript of Deposition of Chad Falkenberg, "C. Falkenberg Depo.," attached hereto as **Exhibit D**, at p. 30, lines 13-25; 314, lines 11-19; p. 315, line 11 – p. 316, line 11.)

12.    Midwest has extensively marketed its soil stabilization and dust control products using the mark "Synthetic Organic Dust Control" in its product literature, online, on the Internet, and at trade shows.  (Vitale Decl. at ¶12; C. Falkenberg Depo. at p. 319, line 20 – p. 320, line 4.)

13.    Midwest has invested considerable resources in developing goodwill in its Synthetic Organic Dust Control® trademark and in promoting its products throughout the United States.  (Vitale Decl. at ¶13.)

14.    As a result, an appreciable number of consumers have come to associate the Synthetic Organic Dust Control® mark with Midwest.  (Vitale Decl. at ¶13.)

***Soilworks and Its Products and Trademarks:***

15.    Soilworks, LLC ("Soilworks") is an Arizona limited liability company that maintains its principal place of business in Gilbert, Arizona.  (Soilworks' Answer at ¶1.)

16.    Soilworks was formed in 2003 and has three (3) members and officers: Chad Falkenberg, Dorian Falkenberg, and Masterson Properties, L.L.C.  (Transcript of Deposition of Dorian Falkenberg, "D. Falkenberg Depo.," attached hereto as **Exhibit F**, at p. 11, lines 3-15; p. 28, 3-8; C. Falkenberg Depo. at p. 30, lines 13-25.)

4

17.    Masterson Properties, L.L.C. is a financial investor in the company.  (D. Falkenberg Depo. at p. 11, lines 3-15, p. 28, 3-8.)

18.    Chad Falkenberg is the President of Soilworks, and Dorian Falkenberg is the Vice President of Soilworks.  (D. Falkenberg Depo. at p. 11, lines 8-11; C. Falkenberg Depo. at p. 30, lines 20-25.)

19.    Soilworks sells chemical products for soil stabilization, dust control, and erosion control.  (D. Falkenberg Depo. at p. 10, lines 11-18; C. Falkenberg Depo. at p. 42, lines 2-6.)    These chemical products are Soiltac®, Powdered Soiltac, Gorilla-Snot, Durasoil®, and Surtac.  (D. Falkenberg Depo. at p. 28, lines 19-23; C. Falkenberg Depo. at p. 42, lines 7-11.)

20.    Chad and Dorian Falkenberg have been identified by Soilworks as the persons at Soilworks having knowledge concerning the overall operations of Soilworks' products, the composition of Soilworks' products, the manner in which Soilworks' products are manufactured, marketed, sold, and distributed, their competitive environment among Soilworks, Midwest and their competitors, and the facts alleged in Soilworks' Complaint, Reply, and Counterclaim.    (Soilworks' Rule 26 Initial Disclosures, attached hereto as **Exhibit F**; Soilworks' Answers to Midwest's First Set of Interrogatories, attached hereto as **Exhibit G**, No. 2.)

21.    Dorian Falkenberg was unable to identify any persons at Soilworks that would be knowledgeable regarding these matters.  (D. Falkenberg at p. 98, lines 3-15.)

22.    Chad Falkenberg confirmed during his deposition that he was the appropriate corporate representative to provide testimony on behalf of Soilworks, including testimony

regarding all information and underlying facts or forming the bases for the allegations set forth in Soilworks' Complaint and Soilworks' Answer and Affirmative Defenses to Midwest's Counterclaims. (C. Falkenberg Depo. at pp. 5-9.)

23.     Both Chad and Dorian Falkenberg stated that Chad Falkenberg plays the primary role with respect to Soilworks' marketing, advertising, sales, and its products' manufacture, application, and ingredients. (D. Falkenberg Depo. at pp. 45-48; C. Falkenberg Depo. at p. 59, line 15 – p. 60, line 12.)

***Validity of Midwest's Patents:***

24.     In response to Soilworks' assertion that Midwest's '266 Patent and '270 Patent were invalid based on prior art, Midwest requested that Soilworks identify the prior art in (a) Midwest's First Set of Interrogatories, attached hereto as **Exhibit H**, No. 7; (b) Midwest's First Request for Production of Documents and Things, attached hereto as **Exhibit I**, Nos. 12, 13, and 19; (c) Midwest's Second Request for Production of Documents and Things, attached hereto as **Exhibit J**; and (d) its correspondence with Soilworks' counsel. (Declaration of John Skeriotis, "Skeriotis Decl." attached hereto as **Exhibit K**, at ¶3 and Attachment A thereto.)

25.     Soilworks refused to respond to these discovery requests until Midwest produced a claim chart. (Soilworks' Answers to Midwest's First Set of Interrogatories, No. 7; Soilworks' Responses to First Request for Production of Documents and Things, attached hereto as **Exhibit L**, Nos. 12, 13, and 19; Soilworks' Responses to Midwest's Second Request for Production of Documents and Things, attached hereto as **Exhibit M**, Nos. 12, 13, and 19.)

26. To date, and despite Midwest's production of a claims chart, Soilworks has failed to produce any documents or information regarding prior art that was not considered by the U.S. Patent and Trademark Office ("USPTO") and has otherwise failed to provide any other reason why the '266 Patent and '270 Patent are invalid. (Skeriotis Decl. at ¶3.)

27. During Mr. Falkenberg's deposition, Midwest again asked for the prior art which allegedly invalidated the '266 Patent and/or the '270 Patent. (C. Falkenberg Depo. at p. 18, lines 5 – p. 19, line 19.) Mr. Falkenberg stated he had no information concerning prior art at that time and he acknowledged that Soilworks had produced no documents regarding prior art during discovery. (C. Falkenberg Depo. at p. 18, line 5 – p. 19, line 19; p. 80, line 3 – p. 81, line 17.)

### *Soilworks' Infringement of Midwest's Trademarks and False Advertising:*

28. Midwest and Soilworks compete with one another in the fields of dust control and soil stabilization products. (Vitale Depo. at p. 83, line 21 – p. 84 line 5.)

29. More specifically, Midwest's EK35® and EnviroKleen®, Diamond Dr®, and Arena Rx® products compete with Soilworks' Durasoil® product, while Midwest's Soil-Sement® product competes with Soilworks' Soiltac® product. (Vitale Decl. at ¶15; C. Falkenberg Depo. at p. 139, lines 15-23; p. 272, lines 18-23; p. 326, lines 3-6; D. Falkenberg Depo. at p. 154, lines 4-14.)

### Trademark Infringement:

30.     Soilworks markets Durasoil® and Soiltac® on the Internet, among other marketing channels.  (D. Falkenberg Depo. at p. 176, lines 1-12; C. Falkenberg Depo. at p. 318, line 22 – p. 319, line 5; p. 324, Ex. 52; pp. 337-338, Ex. 53.)

31.     Midwest markets its soil stabilization and dust control products, including EK35®, EnviroKleen®, Soil-Sement®, Diamond Dr®, and Arena Rx® in product literature, on the Internet, and at tradeshows.  (Vitale Decl. at ¶14; C. Falkenberg Depo. at p. 319, line 20 – p. 320, line 4.)

32.     Soilworks continues to use the mark "Synthetic Organic Dust Control," including on its website in advertising and promoting its competing Durasoil® product.  (D. Falkenberg Depo. at p. 174, lines 4-9, Ex. 13; C. Falkenberg Depo., at p. 309, line 17 – p. 312, line 16, Ex. 49; p. 315, line 24 – p. 316, line 11.)

33.     In fact, Soilworks changed its website so that it would contain the mark "Synthetic Organic Dust Control" as a searchable term.  (C. Falkenberg Depo. at p. 309, line 17 – p. 312, line 16, Exs. 48-49.)

34.     Mr. Falkenberg cannot remember how he came up with the words "Synthetic Organic Dust Control" for Durasoil® and is unaware of any other entity that uses the term in association with a dust suppressant.  (C. Falkenberg Depo. at p. 315, lines 14-20.)

35.     Mr. Falkenberg further acknowledged that Soilworks' price list contains a list of more than 200 descriptive "keywords" designed to help potential customers find "a product that will fit their needs."  (C. Falkenberg Depo., at p. 292, line 24 – p. 295, line 11,

Ex. 44.) This list does not contain the mark "Synthetic Organic Dust Control" or the words "synthetic" or "organic" to describe its products. (C. Falkenberg Depo., Ex. 44.)

36. Soilworks has used and continues to use the term "Synthetic Organic Dust Control" in its advertising to trade on Midwest's goodwill. ( *Id.*)

37. Soilworks' use of the mark "Synthetic Organic Dust Control" is identical to Midwest's use of its registered trademark for this term. (D. Falkenberg Depo. at p. 173, lines 17-21, Ex. 13; C. Falkenberg Depo., at p. 315, line 4 – p. 316, line 11.)

38. Without permission from Midwest, Soilworks paid the search engine Google to use as a "keyword" within Google Midwest's Soil-Sement® trademark. (Vitale Decl. at ¶16; C. Falkenberg Depo. at p. 324, line 1 – p. 326, line 15, Ex. 52; p. 337, line 18 – p. 338, line 17, Ex. 53.) As result, when a search for "soil sement" is performed on Google, "Soiltac® Soil Stabilizer" and Durasoil appear as a "Sponsored Link." (C. Falkenberg Depo. at p. 324, line 1 – p. 326, line 15, Ex. 52; p. 337, line 18 – p. 338, line 17, Ex. 53.)

39. According to Mr. Falkenberg, Soilworks purchased Midwest's Soil-Sement® trademark as a "keyword" so that someone searching for Soil-Sement® on the internet would also find Soilworks' Soiltac® product, which is desirable because they "compete in similar industries." (C. Falkenberg Depo. at p. 325, line 1 – p. 326, line 15.)

40. Soilworks also uses the phrase "sement soil" as well as the words "soil" and "sement" in close proximity to one another as metatags on its website, advertising its product Soiltac, which directly competes with Midwest's Soil-Sement®, www.soiltac.com. (C. Falkenberg Depo. at p. 339, line 17 – p. 346, line 15, Exs. 54-55.)

41.     Additionally, Soilworks uses the words "soil" and "sement" in close proximity as metatags for its other website, www.soilworks.com.  (C. Falkenberg Depo. at p. 346, line 17 – p. 349, line 3; Exs. 56-57.)

42.     Mr. Falkenberg understood that the reason for having metatags was to allow them to be searched on internet search engines and then appear in a search result.  (C. Falkenberg Depo. at p. 349, line 4 – p. 350, line 2; Exs. 56-57.)

43.     Midwest has never consented to Soilworks' use of any of its trademarks, including its Soil-Sement® or Synthetic Organic Dust Control® trademarks. (Vitale Decl. at ¶16.)

***False Advertising:***

44.     On its website and in other marketing materials, Soilworks advertises its Durasoil product as being "synthetic."  (D. Falkenberg Depo. at p. 174, lines 4-9; C. Falkenberg Depo., at p. 292, line 24 – p. 293, line 7; p. 297, lines 12-19; p. 300, line 22 – 302, line 7; 309, line 17  - p. 312, line 16; Ex. 44 at pp. 8, 45, 48, and 49.)

45.     REDACTED[+]

46.     REDACTED[+]

47.     REDACTED[+]

48.     REDACTED[+]

---

[+] Due to Soilworks' attorneys' designation of the subject matters discussed therein as "HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY" pursuant to the Stipulated Protective Order that has been entered by the Court in this case, Midwest's Statements of Material Fact Nos. 44-47, 57 and 60 and the portions of the deposition transcript of Chad Falkenberg cited therein have been filed separately with the Court under seal, accompanied by Midwest's motion, *instanter*, for leave to file the materials under seal.

49.     In her deposition, Dorian Falkenberg said that she did not know whether there were existing documents that supported Soilworks' claim that Durasoil was "synthetic." (D. Falkenberg Depo. at p. 113, line 23 – p. 114, line 6.) She also explained that she did not come up with the wording "synthetic organic" and does not know who did. (D. Falkenberg Depo. at p. 149, line 20 – p. 150, line 3.)

50.     In its 2006 Durasoil product presentation brochure, Soilworks claims that its Durasoil product is "Oil-Sheen Free (no rainbow effect)." (C. Falkenberg Depo. at p. 263, lines 11-18; Ex. 42 at p. 6; Transcript of Deposition of Steven Hickman, "S. Hickman Depo.," attached hereto as **Exhibit N**, at p. 79, line 1 – p. 80, line 16.)

51.     "Oil-sheen free," with respect to a dust control and soil stabilization product, is generally understood as meaning that the product has passed the Static Sheen Test of the United States Environmental Protection Agency ("U.S. EPA"). (Vitale Decl. at ¶17; Transcript of February 18, 2008 Deposition of Robert Vitale, "Vitale Depo. II," attached hereto as **Exhibit B**, at p. 75, line 24 – p. 76, line 11.) The Static Sheen Test involves a standardized test methodology that is used in order to determine whether a substance causes the presence of a film, sheen, or discoloration on the surface of a receiving water. (*See* 40 CFR 435, Appendix 1.)

52.     In his deposition, Chad Falkenberg testified that Soilworks did not perform any testing to determine whether Durasoil is, in fact, "oil-sheen free." (C. Falkenberg Depo. at p. 268, line 11 – p. 269, line 1.)

53.     In her deposition, Dorian Falkenberg stated that she did not know what was meant by the term "oil-sheen free" and she did not know whether there had been any tests to support that Durasoil is "oil-sheen free." (D. Falkenberg Depo. at p. 168, lines 10-18.)

54.     Based on the materials that Soilworks listed on its Material Safety Data Sheet ("MSDS") for Durasoil, and Midwest's prior testing of similar materials in relation to its own products, Midwest believes that Durasoil is not "oil-sheen free" under the Static Sheen Test. (Vitale Depo. II at p. 76, line 24 – p. 78, line 22; Vitale Decl. at ¶18.)

55.     The characteristics of "synthetic" and "oil-sheen free" are often considered important by customers and users when selecting a dust control or soil stabilization product. (Vitale Decl. at ¶20.)

56.     For example, requests for bids for public projects often include express specifications that dust control and soil stabilization products must be synthetic and/or oil-sheen free products. (Vitale Decl. at ¶¶19-23). This includes requests for bids for public projects for which both Midwest and Soilworks' distributors have submitted bids (or portions thereof) and competed with one another to supply the requested synthetic and/or oil-sheen free product. (Vitale Decl. at ¶¶21-23 and Attachments 6, 7 and 8 thereto).

57.     In "Section 2 – Ingredients" of Soilworks' MSDS for Durasoil, Soilworks stated that Durasoil consisted of, *inter alia*, "Proprietary ingredients[.]" (C. Falkenberg Depo., Ex. 12.)

58.     REDACTED[+]

59.     In her deposition, Dorian Falkenberg stated that she was familiar with the MSDS for Durasoil®, but she did not know whether there are any proprietary ingredients in

12

Durasoil or whether there were any documents that would support that certain ingredients within Durasoil were proprietary. (D. Falkenberg Depo. at p. 114, line 19 – p. 115, line 16.)

60. On Soilworks' website for Durasoil®, last modified on October 18, 2004, Soilworks refers to Durasoil® as an "Ultra-Pure Synthetic Organic Fluid" and an "Ultra-Pure Dust Control Agent." It also states: "Soilworks™, LLC is the innovator and manufacturer of Durasoil™ dust control agent. Durasoil is a revolutionary state-of-the-art innovation[.]" (C. Falkenberg Depo. at p. 300, line 22 – p. 301, line 25, Ex. 45.)

61. REDACTED [+]

***Soilworks' Relationship with the Polar Supply Company and the Polar Supply Letters:***

62. Polar Supply Company, located in Anchorage, Alaska, is a distributor of Soilworks' products, including Durasoil® and Soiltac®. (D. Falkenberg Depo. at p. 53, line 24 - p. 54, line 16; C. Falkenberg Depo. at p. 35, lines 9 – 24; Hickman Depo., at p. 27, line 16 – p. 31, line 14. )

63. Polar Supply Company was acquired by Spenard Builders Supply, Inc. in April 2007 and is now operated as a division of Spenard Builders Supply, Inc. (Hickman Depo. at p. 23, line 12 - p. 25, line 5; p. 26, lines 14-18.)

64. According to Steve Gordner of Polar Supply Company, who assisted in putting together the agreement between Polar Supply Company and Soilworks, there are no "hard and fast" expectations about this arrangement. (Transcript of Deposition of Steve Gordner, "Gordner Depo.," attached hereto as **Exhibit O** at p. 17, lines 1 – 7.)

65.     Soilworks' intention is that distributors like Polar Supply Company will actively promote and market Soilworks' products and increase Soilworks' brand name awareness. (C. Falkenberg Depo. at p. 36, line 15 – p. 38, line 5.)

66.     In 2006, Midwest became aware that Durasoil® potentially infringed some of the claims in its two then-pending patent applications, which subsequently resulted in the issuance of the '266 Patent and '270 Patent. (Vitale Decl. at ¶24.)

67.     Midwest and its intellectual property attorney (John Skeriotis of Brouse McDowell LPA) reviewed the publicly available information for Soilworks' Durasoil® product, including Soilworks' MSDS. (Vitale Depo. I at p. 88, line 8 – p. 89, line 6; Vitale Decl. at ¶24.) From this information, Midwest believed that Soilworks' Durasoil® product might infringe some of the claims in its pending patent applications. (Vitale Depo. I at p. 88, line 4-13; Vitale Decl. at ¶24.)

68.     On June 8, 2006, John Skeriotis sent a letter to Douglas Allsworth of Kutak Rock (an attorney for Soilworks with respect to intellectual property matters) notifying him of Midwest's two pending patent applications and notifying him that Midwest believed that, based on its review of the publicly available information, that the claims in the applications could potentially affect Soilworks' ability to make, use, and sell Durasoil® in the future. (Skeriotis Decl. at ¶4 and Attachment B thereto.)

69.     On July 18, 2006, John Passarelli of Kutak Rock responded to the June 8, 2006 letter of Mr. Skeriotis. (Skeriotis Dec. at ¶5 and Attachment C thereto.) Mr. Passarelli's letter summarily stated that he was aware of no basis for Midwest's belief that Soilworks' was infringing Midwest's proprietary rights, but the letter provided no substantive response

to Midwest's concerns regarding the impact of Midwest's patent applications on Soilworks' product line.  (Skeriotis Decl. at ¶5 and Attachment C thereto.)

70.     In July 2006, Midwest became aware that the Polar Supply Company was attempting to submit a bid that included Durasoil® in response to a Notice of Intent to Award a Contract issued on July 10, 2006 by the Alaskan Department of Transportation ("ADOT") that expressly included a specification for Midwest's EK35® product.  (Vitale Depo. I at p. 40, line 8 – 43, line 15; Vitale Decl. at ¶25.)

71.     Midwest sent letters on July 27, 2006 to Polar Supply Company's President (Donald Dunavant and Sales Manager (Dave Schooner) (the "Polar Supply Letters").)  The Polar Supply Letters:  (a) notified Polar Supply Company of the issuance of '266 Patent and enclosed a copy of the patent; (b) advised Polar Supply Company that the issuance of '266 Patent allowed Midwest to pursue those who make, sell, offer for sale, and/or import knock-off or imitators of EK35® and EnviroKleen®; and (c) informed Polar Supply Company that Midwest had apprised Soilworks of '266 Patent and had not yet received a substantive response.  (Vitale Decl. at ¶¶25-26, and Attachments 9 and 10 thereto.)

***Soilworks' Claims against Midwest:***

   ***Claims:***

72.     Soilworks' allegation that Midwest has embarked on a scheme to injure the reputation of Soilworks and its products with its distributors, customers, and end-users, Soilworks bases these allegations on the Polar Supply Letters.  (D. Falkenberg Depo. at p. 57, line 1 – p. 59, line 15; p. 64, lines 3-21; C. Falkenberg Depo. at p. 97, line 11 – p. 100, line 3.)

73. In his deposition, Chad Falkenberg testified that he did not know whether any of the statements in the Polar Supply Letter were false. (C. Falkenberg Depo. at p. 131, line 13 – p. 133, line 22.)

74. In his deposition, Chad Falkenberg testified that he believed that Midwest sent the letter because it believed that Soilworks infringed Midwest's patents. (C. Falkenberg Depo. at p. 134, line 16 – p. 135, p. 1.)

75. In his deposition, Chad Falkenberg stated that Soilworks' tortious interference with business relationship and expectancy claim (Count IV of the Complaint) referred to the Polar Supply Letters. (C. Falkenberg at p. 125, line 18 – p. 126, line 22; p. 129, line 21 – p. 131, line 11.)

76. In her deposition, Dorian Falkenberg stated that she does not know of any business relationships of Soilworks with which Midwest interfered. (D. Falkenberg Depo. at p. 77, line 21 – p. 78, line 17.) She stated that the Polar Supply Letters "may be" the basis of Soilworks' claim that Midwest tortiously interfered with Soilworks' business relationships. (D. Falkenberg Depo. at p. 78, lines 18-21.) She could not identify anyone else at Soilworks that would know what business relationships of Soilworks with which Midwest has interfered. (D. Falkenberg Depo. at p. 79, lines 12-19.)

77. In her deposition, Dorian Falkenberg was unable to recall that there has ever been a disruption of business between Soilworks and the Polar Supply Company as a result of the Polar Supply Letter. (D. Falkenberg Depo. at p. 60, lines 6-13.) She stated that she would probably be the person that would have knowledge if there had been a disruption of business between the two entities. (D. Falkenberg Depo. at p. 60, lines 9-13.)

78.     In his deposition, Chad Falkenberg confirmed that Polar Supply Company never ceased being a distributor for Soilworks. (C. Falkenberg Depo. at 115, lines 5 – 8; p. 155, line 15 – p. 156, line 4.)  While he stated that he would "like to say" that Polar Supply Company would not purchase from Soilworks following the Polar Supply Letters until Soilworks provided them with an indemnification letter in December of 2006, he did not provide any factual support for this statement and he was unable to provide any specific facts regarding any missed bids or sales by Polar Supply Company during this time period.  (C. Falkenberg Depo. at p. 114, line 3 – p. 16, line 9; p. 127, line 9 – p. 128, line 21; p. 156, line 5 – p. 160, line 15.)  He further stated that he does not know what business Polar Supply Company does in Alaska, he does not know where all of the product goes, and he does not always know whether Polar Supply Company wins or loses bids.  (C. Falkenberg Depo. at p. 213, lines 1 – 10.)

79.     Soilworks continues to do business with Polar Supply Company as a distributor.  (D. Falkenberg Depo. at p. 59, line 23 - p. 60, line 5, lines 14-17; C. Falkenberg Depo. at p. 114, lines 3-6.)

80.     In her deposition, Dorian Falkenberg stated that she does not know whether Soilworks has lost any business because of the Polar Supply Letter.  (D. Falkenberg Depo. at p. 65, lines 13-15.)  She stated that she believed that she would be the person that would have knowledge if Soilworks had lost business because of the Polar Supply Letters or if Soilworks has been damaged by Midwest's actions.  (D. Falkenberg Depo. at p. 65, lines 13-20; p. 79, line 24 – p. 80, line 1.)

81.     In her deposition, Dorian Falkenberg stated that she does not know of any diversion of customer loyalty and loss of customers from Soilworks to Midwest because of the Polar Supply Letters. (D. Falkenberg Depo. at p. 66, lines 10-21; p. 67, lines 2-5.) She stated that she did not know if Midwest has attempted to divert sales from Soilworks. (D. Falkenberg Depo. at p. 63, lines 20-22.) She stated that she would "probably" be the person that would have knowledge if Soilworks lost customers to Midwest because of the Polar Supply Letters. (D. Falkenberg Depo. at p. 66, line 22 – p. 67, line 1.)

### *Damages:*

82.     In his deposition, Chad Falkenberg stated that he does not know what irreparable harm to Soilworks that Midwest has allegedly caused. (C. Falkenberg Depo. at p. 116, lines 10-22.)

83.     Dorian Falkenberg also stated in her deposition that she does not know what irreparable harm to Soilworks that Midwest caused by sending the Polar Supply Letters. (D. Falkenberg Depo. at p. 64, lines 14-24; p. 77, lines 18-20.)

84.     Chad Falkenberg stated in his deposition that he could not estimate the damage that has been caused to Soilworks and did not know when he would be able to do so. (C. Falkenberg Depo. at p. 122, line 1 – p. 124, line 9.)

85.     Dorian Falkenberg stated in her deposition said that she did not know what Soilworks' actual damages are, or whether there are any actual damages to Soilworks. (D. Falkenberg Depo. at p. 80, line 25 – p. 81, line 10.)

86.     Dorian Falkenberg also stated that she does not even know if Soilworks' reputation had been damaged by the Polar Supply Letters, or if Soilworks had suffered any

damage at all as a result of the Polar Supply Letters.  (D. Falkenberg at p. 64, line 25 – p. 65, line 12; p. 67, lines 20-24.)

By:    /s/ Jill Bautista
       Craig A. Marvinney, 0004951 (OH)
       John M. Skeriotis, 0069263 (OH)
       Jill A. Bautista, 0075560 (OH)
       BROUSE MCDOWELL
       388 S. Main Street, Suite 500
       Akron, Ohio 44311-4407
       Telephone:  330-535-5711
       Facsimile: 330-253-8601
       Email:   cmarvinney@brouse.com,
              jskeriotis@brouse.com,
              jbautista@brouse.com
*Admitted pro hac vice*

Donald L. Myles, Jr., 007464 (AZ)
JONES, SKELTON & HOCHULI, P.L.C.
2901 N. Central Ave., Suite 800
Phoenix, Arizona 85012
Telephone:  602-263-1700
Facsimile: 602-263-1784
Email:   dmyles@jshfirm.com

*Attorneys for Defendant/Counterclaimant*
*Midwest Industrial Supply, Inc.*

19

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **MIDWEST INDUSTRIAL SUPPLY, INC.'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS** has been electronically filed on this 9th day of May, 2008.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Jill Bautista
Jill A. Bautista

Doc. No. 715139.2