Craig A. Marvinney, 0004951 (OH)
John M. Skeriotis, 0069263 (OH)
Jill A. Bautista, 0075560 (OH)
BROUSE MCDOWELL
388 S. Main Street, Suite 500
Akron, Ohio 44311-4407
Telephone: 330-535-5711
Facsimile: 330-253-8601
Email: cmarvinney@brouse.com,
        jskeriotis@brouse.com,
        jbautista@brouse.com
*Admitted pro hac vice*

Donald L. Myles, Jr., 007464 (AZ)
JONES, SKELTON & HOCHULI, P.L.C.
2901 N. Central Ave., Suite 800
Phoenix, Arizona 85012
Telephone: 602-263-1700
Facsimile: 602-263-1784
Email: dmyles@jshfirm.com

*Attorneys for Defendant/Counterclaimant*
*Midwest Industrial Supply, Inc.*

## UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SOILWORKS, LLC, an Arizona corporation, | NO.: 2:06-CV-2141-DGC |
|     Plaintiff / Counterdefendant / Counterclaimant, | |
| v. | |
| MIDWEST INDUSTRIAL SUPPLY, INC., an Ohio corporation authorized to do business in Arizona, | **MIDWEST INDUSTRIAL SUPPLY, INC.'S OPPOSITION TO SOILWORKS, LLC'S MOTION FOR SUMMARY JUDGMENT ON MIDWEST'S COUNTERCLAIMS** |
|     Defendant / Counterclaimant / Counterdefendant. | |

1

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................... 1

II. SUMMARY JUDGMENT STANDARD .......................................................... 2

III. LAW AND ANALYSIS .................................................................................. 2

    A. The Record Evidence Establishes that Soilworks Infringes Midwest's Soil-Sement® Mark and the Infringement Causes a Likelihood of Confusion. ................................................................................................. 2

        1. Soilworks has used Midwest's Soil-Sement® Mark in Commerce ... 3

        2. Soilworks' Use of Midwest's Soil-Sement Mark Creates a Likelihood of Confusion. .................................................................. 5

    B. Midwest has Established that Soilworks Falsely Advertises its Products, and a Genuine Issue of Fact Exists as to the Money Damages to Which Midwest is Entitled. ...................................................................................... 7

        1. Soilworks has Made Numerous Advertising Statements that are Literally False and/or Misleading. .............................................. 7

        2. Soilworks' False Advertising Statements have Deceived or have a Tendency to Deceive Potential Consumers and Influence Their Purchasing Decisions. ................................................................... 9

        3. Midwest is Entitled to Pursue Damages for Soilworks' False Advertising at Trial. ...................................................................... 11

    C. Midwest has Established that Soilworks' Trademark Infringement Constitutes False Designation of Origin and Unfair Competition under the Lanham Act. ......................................................................................... 12

    D. Midwest has Established that Soilworks Unfairly Competes with Midwest. ................................................................................................... 13

    E. Genuine Issues of Material Fact Exist with Respect to Midwest's Unjust Enrichment Claim. ....................................................................................... 14

    F. The Admissible Evidence in the Record Does Not Establish Soilworks' Claim of Non-Infringement. ......................................................................... 15

IV. CONCLUSION ............................................................................................. 17

# **TABLE OF AUTHORITIES**

**CASES**

*800-JR Cigar, Inc. v. GoTo.com, Inc.,*
    437 F.Supp.2d 273, 278 (D.N.J. 2006)................................................................4

*Avid Identification Sys. v. Schering-Plough Corp.,*
    33 Fed. Appx. 854 (9th Cir. 2002) ...................................................................9

*Brookfield Communs., Inc. v. W. Coast Entertain. Corp.,* |
    174 F.3d 1036, 1064 (9th Cir. 1999)....................................................3, 6, 11

*Buying for the Home, LLC v. Humble Abode, LLC,*
    459 F.Supp.2d 310, 321-22 (D.N.J. 2006) .........................................................4

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.,*
    109 F.3d 1394, 1405 (9th Cir. 1997)...............................................................6

*Edina Realty, Inc. v. TheMLSonline.com,*
    Civ. No. 04-4371JRTFLN, 2006 WL 737064, *3 (D. Minn. 2006).........................4

*Fair Housing Council of Riverside Cty., Inc. v. Riverside Two,*
    249 F.3d 1132, 1136 (9th Cir. 2001)...............................................................2

*Fairway Construction, Inc. v. Ahern,*
    970 P.2d 954, 956 (Ariz. App. 1998) ...............................................................12

*Florence Mfg Co. v. J.C. Dowd & Co.,*
    178 F. 73, 75 (2d Cir. 1910).............................................................................1

*Google Inc. v. American Blind & Wallpaper Factory, Inc.,*
    No. C 03-5340, 2007 WL 1159950, *5-6 (N.D. Cal. April 18, 2007)......................4

*Internat'l Profit Associates, Inc. v. Paisola,*
    461 F.Supp.2d 672, 677 n.3 (N.D.Ill. 2006) .......................................................4

*Interstellar Starship Services, Ltd. v. Epix Inc.,*
    304 F.3d 936, 942 (9th Cir. 2002).............................................................5, 6

*J.G. Wentworth, S.S.C. Ltd. Partnership v. Settlement Funding LLC*,
    No. 06-0597, 2007 WL 30115, *7 (E.D. Pa. Jan. 4, 2007) .........................................4

*Meritage Homes Corp. v. Hancock*,
    522 F.Supp.2d 1203, 1222 (D. Ariz. 2007) .............................................................. 14

*Nissan Fire & Marine Ins. Co. v. Fritz Co.*,
    210 F.3d 1099, 1102 (9th Cir. 2000)...................................................................... 2, 13

*Playboy Enterprises, Inc. v. Netscape Communs. Corp.*,
    354 F.3d 1020, 1025-26 (9th Cir. 2004).................................................................. 3, 6

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134, 1146 (9th Cir.1997)............................................................................ 9

*U-Haul Int'l, Inc. v. Jartran, Inc.*,
    793 F.3d 1034, 1041 (9th Cir. 1986) .......................................................................... 9

*Walker v. Sumner*,
    917 F.2d 382, 387 (9th Cir. 1990)......................................................................... 2, 13

**STATUTES**

15 U.S.C. § 1117(a) ........................................................................................................ 10

15 U.S.C. § 1125(a)(1)(B)................................................................................................. 9

**RULES**

FED.R.CIV.P. 56...............................................................................................................2

# I.    INTRODUCTION

"It is so easy for the honest businessman, who wishes to sells his goods upon their merits, to select from the entire material universe, which is before him, symbols, marks and coverings which by no possibility can cause confusion between his goods and those of competitors, that the courts look with suspicion upon one who, in dressing his goods for the market, approaches so near to his successful rival that the public may fail to distinguish between the two of them." *Florence Mfg Co. v. J.C. Dowd & Co.*, 178 F. 73, 75 (2d Cir. 1910).

While goods, the market, and the underhanded tactics of some new businesses to compete with their successful rivals have all become much more sophisticated, this principle articulated by the Second Circuit nearly one hundred years ago remains compelling today. It sums up, in simple language, the suspiciousness with which the Court should regard the scheme undertaken by Soilworks to establish itself in the dust control and soil stabilization industry – an industry in which Midwest, through honest means, has developed unique goods and marks and has earned a substantial customer base, reputation, and goodwill based on its thirty-plus years as a recognized leader. Soilworks' scheme includes deliberate infringement of Midwest's trademarks and patents, and the false advertising of Soilworks' own products. The scheme was undertaken by Soilworks in order to unfairly compete with Midwest.

Midwest has moved for a summary judgment determination as to Soilworks' liability for Counts I, II, and IV of Midwest's counterclaims because the record evidence establishes as a matter of law that Soilworks' scheme constitutes federal trademark infringement, false designation of origin, unfair competition, and false advertising in violation of the Lanham Act, as well as state law unfair competition. *See* Soilworks' Motion for Partial Summary Judgment (ECF #78), Memorandum in Support (ECF #78-1), and Statement of Material Facts

1

(ECF #80).[1] Despite the substantial evidence supporting Midwest's counterclaims, Soilworks has nevertheless moved for summary judgment in its favor on these claims.[2] Plainly stated, Soilworks' memorandum and statement of material facts fail to establish that Soilworks is entitled to summary judgment on Midwest's counterclaims. Accordingly, the Court should deny Soilworks' motion and grant Midwest's motion for partial summary judgment.

## II. SUMMARY JUDGMENT STANDARD

On cross-motions for summary judgment, the district court considers each motion separately on its merits in order to determine whether either party has met its respective burden. FED.R.CIV.P. 56; *Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). A moving party without the burden of proof at trial, such as Soilworks with respect to Midwest's counterclaims, has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Conclusory assertions by Soilworks do not satisfy this burden. *Walker v. Sumner*, 917 F.2d 382, 387 (9th Cir. 1990).

## III. LAW AND ANALYSIS

### A. The Record Evidence Establishes that Soilworks Infringes Midwest's Soil-Sement® Mark and the Infringement Causes a Likelihood of Confusion.

Soilworks' summary judgment argument on Midwest's federal trademark infringement claim (Count I) is premised on the unsupported assertions that (1) Soilworks has not used any

---

[1] In accordance with Local Rule 7.1(d)(2), Midwest incorporates by reference the portions of its Summary Judgment Memorandum and Statement of Facts as cited herein.

[2] In moving for summary judgment, Soilworks submitted a supportive memorandum to the Court that is formatted in less than thirteen point font with double spacing, in violation of Local Rule 7.1(b). If Soilworks' memorandum was formatted in compliance with the Local Rules, it would be 21 pages in length and significantly over the Local Rule's 17-page limit. Thus, the last 4 pages of Soilworks' memorandum should be stricken.

of Midwest's Marks in commerce and (2) no likelihood of confusion exists. Both of these assertions are flatly contrary to the record evidence in this case.

   1.    **Soilworks has used Midwest's Soil-Sement® Mark in Commerce.**

Midwest has set forth in its partial summary judgment papers the undisputed evidence that Soilworks has admittedly used Midwest's Soil-Sement® mark in the metatags for its website, www.soiltac.com and www.soilworks.com, without Midwest's consent.[3]  *See* Midwest's Memo. at p. 5 and Statement of Facts at ¶¶40-43.  The use of another's marks in website metatags constitutes use in commerce for purposes of the Lanham Act.  *See Playboy Enterprises, Inc. v. Netscape Communs. Corp.*, 354 F.3d 1020, 1025-26 (9th Cir. 2004) ("keying" of internet banner advertisements to a trademark constitutes use in commerce); *Brookfield Communs., Inc. v. W. Coast Entertain. Corp.*, 174 F.3d 1036, 1064 (9th Cir. 1999) (use of another's trademarks as metatags constitutes actionable Lanham Act infringement).

Midwest has also set forth in its partial summary judgment papers the undisputed evidence that Soilworks has admittedly paid the search engine Google™ to use Midwest's Soil-Sement® mark as a "keyword," also without Midwest's consent.  *See* Midwest's Memo. at p. 5 and Statement of Facts at ¶¶38-39, 43.  The purchase of another's mark as a keyword for an internet advertising campaign constitutes use of the trademark in commerce for purposes of the Lanham Act because "[b]y establishing an opportunity to reach consumers via purchase and/or use of a protected trademark, defendant has crossed the line from internal use

---

[3]  In this Opposition, Midwest has not addressed Soilworks' infringement of Midwest's "Synthetic Organic Dust Control®" mark based upon the Court's May 22, 2008 Order (ECF #86), which held that this mark was not one of Midwest's Marks for purposes of its trademark infringement counterclaim.  Soil-Sement® is expressly defined as one of Midwest's Marks in Soilworks' Counterclaims.  *See* Midwest's Counterclaims (ECF #16) at ¶7.

3

to use in commerce under the Lanham Act." *See Google Inc. v. American Blind & Wallpaper Factory, Inc.*, No. C 03-5340, 2007 WL 1159950, *5-6 (N.D. Cal. April 18, 2007) (carefully analyzing keyword cases and Ninth Circuit precedent, and holding that purchasing trademarked terms from Google's AdWords program is a "use in commerce" for purposes of the Lanham Act).[4]

Rather than defending its conduct on the merits, Soilworks now makes the false and unsupported claim that "Midwest concedes that none of Midwest's Marks are have been or are being infringed." *See* Soilworks' Memo. at p. 6. The only portion of the record cited by Soilworks in support of this assertion is one passage of the deposition testimony of Robert Vitale (Midwest's principal and corporate representative) in which he discussed Soilworks' infringement of Midwest's "Synthetic Organic Dust Control®" mark, which the Court has held is not one of Midwest's Marks for purposes of this action. *See* Soilworks' Statement of Facts at ¶¶26-27. However, Mr. Vitale repeatedly confirmed during his deposition that Midwest's infringement claim encompasses Soilworks' internet advertising practices that improperly use Midwest's Soil-Sement® mark. *See* Midwest's Responsive Statement of Facts

---

[4] *See, e.g., 800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F.Supp.2d 273, 278 (D.N.J. 2006) (the purchase of marks as keywords or phrases on pay-for-priority search engines constitutes "use" for purposes of the Lanham Act); *Buying for the Home, LLC v. Humble Abode, LLC*, 459 F.Supp.2d 310, 321-22 (D.N.J. 2006) (the purchase of keywords under Google and Yahoo's respective sponsored links programs "clearly satisfy the Lanham Act's 'use' requirement."); *Internat'l Profit Associates, Inc. v. Paisola*, 461 F.Supp.2d 672, 677 n.3 (N.D. Ill. 2006) (acknowledging that other courts have held that "purchasing a trademarked term as a 'keyword' for Google AdWords program meets the Lanham Act's use requirement."); *Edina Realty, Inc. v. TheMLSonline.com*, Civ. No. 04-4371JRTFLN, 2006 WL 737064, *3 (D. Minn. 2006) ("Based on the plain meaning of the Lanham Act, the purchase of search terms is a use in commerce."); *J.G. Wentworth, S.S.C. Ltd. Partnership v. Settlement Funding LLC*, No. 06-0597, 2007 WL 30115, *7 (E.D. Pa. Jan. 4, 2007) ("defendant has crossed the line from internal use to use in commerce under the Lanham Act" when it purchases another's trademarks for in Google's AdWords program).

4

at ¶27. Soilworks' misconstruction of Mr. Vitale's deposition testimony is disingenuous at best.

The record evidence simply does not support Soilworks' assertion that Midwest cannot demonstrate Soilworks' use of Midwest's Marks in commerce. Instead, the evidence establishes that Soilworks has used Midwest's Soil-Sement® mark in commerce by (1) incorporating this mark into the metatags of its website coding and (2) purchasing this mark as keyword from Google™. *See* Midwest's Memo. at pp. 5 and Statement of Facts at ¶¶38-43.

> **2.     Soilworks' Use of Midwest's Soil-Sement Mark Creates a Likelihood of Confusion.**

Contrary to Soilworks' conclusory assertions that Midwest lacks evidence on the element of likelihood of confusion, Midwest has set forth in its partial summary judgment papers the record evidence that establishes as a matter of law that Soilworks' use of Midwest's Soil-Sement® mark creates a likelihood of confusion. *See* Midwest Memo. at pp. 5-8 and Statement of Facts at ¶¶28-42. In the dust control and soil stabilization industry, internet advertising is heavily used and relied upon by both consumers and distributors of products. *See* Midwest's Responsive Statement of Facts at ¶¶54-57. When competitors (Soilworks and Midwest) simultaneously use the internet as a marking channel, and one competitor (Soilworks) uses the exact trademark of another competitor (Midwest) to market and promote its similar product, a likelihood of confusion exists. *See* Midwest Memo. at pp. 5-8; *Interstellar Starship Services, Ltd. v. Epix Inc.*, 304 F.3d 936, 942 (9th Cir. 2002). There can be no dispute that this is precisely what Soilworks has done, and done so *intentionally*. *See* Midwest Memo. at pp. 5-8 and Statement of Facts at ¶¶28-31, 38-43.

Rather than analyzing the elements of likelihood of confusion under the applicable law of the Ninth Circuit, Soilworks only puts forth the false and unsupported claim that Midwest supposedly "admits no confusion exists." *See* Soilworks' Memo. at p. 6 and Responsive Statement of Facts at ¶28. This is false. The only portion of the record cited by Soilworks in supposed support of its assertion is a passage from Mr. Vitale's deposition testimony in which he states Midwest's claims related to Soilworks' use of Midwest's "synthetic organic dust control®" mark do not rest on the proposition that consumers buy Soilworks' products thinking that they are buying products from Midwest. *See* Soilworks' Statement of Facts at ¶27. Here again, Soilworks misconstrues Mr. Vitale's deposition testimony in an attempt to avoid addressing Midwest's claims on their merits.

First, this passage of Mr. Vitale's deposition has nothing to do with Midwest's claims regarding Soilworks' use of Midwest's Soil-Sement® mark. *See* Soilworks' Statement of Facts at ¶28 and Midwest's Responsive Statement of Facts at ¶28. Second, in order to establish its trademark infringement claim, Midwest is not required to show that consumers *buy* a Soilworks product thinking that they are buying a Midwest product in order to establish that Soilworks' use of Midwest's Soil-Sement® mark creates a likelihood of confusion. A likelihood of confusion can and does arise when consumers are likely to be confused about the *source* of products, even if that confusion is only initially created and no actual sale is completed as a result of the confusion. *See Interstellar Starship Servs., Ltd*, 304 F.3d at 941; *Playboy Enterprises, Inc*., 354 F.3d at 1025-26; *Brookfield Communs., Inc.*, 174 F.3d at 1063; *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1405 (9th Cir. 1997).

In short, with respect to the element of likelihood of confusion, Soilworks' position is not supported by either the portion of the record that it cites or the applicable law of this Circuit. The record evidence in this case establishes that Soilworks' use of Midwest's Soil-Sement® mark in its website's metatags and its purchasing of Google™ keywords creates a likelihood of confusion. *See* Midwest's Memo. at pp. 5-8; Statement of Facts at ¶¶28-31, 38-43; Responsive Statement of Facts at ¶¶54-55.

**B.    Midwest has Established that Soilworks Falsely Advertises its Products, and a Genuine Issue of Fact Exists as to the Money Damages to Which Midwest is Entitled.**

Soilworks' summary judgment argument as to Midwest's federal false advertising claim (Count II) is premised on the assertions that none of its advertising statements in issue are false or misleading, they do not have the capacity to deceive consumers, and are immaterial. *See* Soilworks' Memo. at pp. 8-10. These assertions are contradicted by the record evidence.

**1.    Soilworks has Made Numerous Advertising Statements that are Literally False and/or Misleading.**

Soilworks has engaged in a string of false advertisements to consumers regarding both Soilworks' products and its company. *See* Midwest's Memo. at pp. 9-10; Statement of Facts at ¶¶44-61, and Responsive Statement of Facts at ¶¶25, 29-30. As discussed in Midwest's Memorandum and Statement of Facts, Soilworks' allegations made in its advertisement and promotional materials include the false claims that:

- Its Durasoil product is "synthetic," "oil-sheen free," made of "proprietary ingredients," and a "revolutionary state-of-the-art innovation."
- Soilworks is an "innovator."

*See* Midwest's Memo. at pp. 9-10, Statement of Facts at ¶¶44-61.

7

According to Soilworks' own testimony and other undisputed evidence, these statements are literally false, in addition to being inherently misleading. *See id.* For example, Soilworks' corporate representative and the person in-charge of the company's product development and marketing (Chad Falkenberg) admits that even the manufacturer of its Durasoil product does not consider Durasoil to be "synthetic." *See* Midwest's Statement of Facts at ¶¶44-49. Mr. Falkenberg also admitted that Durasoil does not contain any "proprietary ingredients." *See id.* at ¶¶57-59. He admits that Soilworks has never performed the requisite testing to verify whether Durasoil is "oil-sheen free," which Midwest's scientific testing suggests that it is not. *See id.* at ¶¶50-54. Mr. Falkenberg also testified in his deposition that Soilworks does not know what it means by its claims that it is an "innovator" and its Durasoil product is a "revolutionary state-of-the-art innovation," despite the fact that he had a "heavy hand" in designing the webpage through which Soilworks makes these proclamations to consumers. *See id.* at ¶¶60-61. Tellingly, Soilworks does not address *any* of these false statements in its summary judgment papers. *See* Soilworks' Memo. at pp. 9-10.

Soilworks also falsely advertises that it is a "manufacturer." *See* Midwest's Responsive Statement of Facts at ¶¶15, 29-37. In its summary judgment papers, this is the only one of its false advertisements that Soilworks attempts to refute. *See* Soilworks' Memo. at pp. 9-10. Soilworks' argument, in short, is that Soilworks allegedly "blends" components together to make its Durasoil product and that blending is synonymous with manufacturing. *See id.* Even assuming, for the sake of argument, that blending constitutes manufacturing, the record evidence establishes that even Soilworks acknowledges that it does not blend its Durasoil product. *See* Midwest's Responsive Statement of Facts at ¶¶15, 29-37. For example,

Soilworks' patent claim charts, which were drafted by Chad Falkenberg, expressly state that "*Durasoil is not a blend.*" *See id.* Also, Soilworks' general foreman and field technician (Kevin Hurst) has testified that he would be the person in charge of blending if it were conducted by Soilworks and no blending has taken place during the past two years that he has been with Soilworks. *See id.* Finally, while Mr. Falkenberg may now claim that he "believes" that Soilworks is a manufacturer because Durasoil supposedly "can be" a blend, the fact that he could provide absolutely no information at all during his deposition as to when or how often blending by Soilworks supposedly occurs belies the credibility of Soilworks assertion blending takes place at all. *See id.* Mr. Falkenberg also confirmed that Soilworks' suppliers do not blend products for Soilworks. *See id.*

Patently obvious is the fact that, after Midwest's corporate representative agreed with a definition of "manufacturer" during his deposition that included a reference to the term "blend," Soilworks conveniently changed its story as to whether or not Durasoil is a blend in order to attempt to come within that definition. Soilworks cannot have it both ways. Minimally, the record evidence establishes a genuine issue of material fact as to whether Soilworks' claim that it is a "manufacturer" is literally false or misleading.

## 2. Soilworks' False Advertising Statements have Deceived or have a Tendency to Deceive Potential Consumers and Influence Their Purchasing Decisions.

Soilworks' arguments that Midwest cannot establish the Lanham Act false advertising elements of deception and materiality miss the mark entirely. *See* Soilworks' Memo. at pp. 10. The only portion of the record that Soilworks cites in support of its arguments on the elements of deception and materiality is Midwest's statement that consumers do not buy products from Soilworks thinking that they are buying them from Midwest. *See id.* This

9

statement is entirely irrelevant to Midwest's false advertising claim; Lanham Act false advertising claims are not premised on product-source confusion. *See* 15 U.S.C. § 1125(a)(1)(B). Soilworks' reliance on these misplaced arguments does not satisfy either its initial burden of production or ultimate burden of persuasion on these elements on summary judgment.

Even setting aside the deficiencies of Soilworks' arguments, the deception of consumers and influence on their purchasing decisions is presumed in this case because the evidence establishes that Soilworks' statements are literally false and intentionally made by Soilworks to deceive consumers. *See* Midwest's Statement of Facts at ¶¶ 44-61; *see, e.g.*, *Avid Identification Sys. v. Schering-Plough Corp.*, 33 Fed. Appx. 854 (9th Cir. 2002) ("Because these representations were literally false, the statements carry with them the presumption that consumers relied on and were deceived by them"); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1146 (9th Cir.1997) (when a party deliberately makes false statements, the trier-of-fact is entitled to presume false statement deceived consumers and was material); *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.3d 1034, 1041 (9th Cir. 1986) ("The expenditure by a competitor of substantial funds in an effort to deceive consumers and influence their purchasing decisions justifies the existence of a presumption that consumers are, in fact, being deceived.").

Moreover, internet advertising is relied upon by both consumers and distributors of dust control and soil stabilization products. *See* Midwest's Responsive Statement of Facts at ¶¶54-57. Midwest has explained in its summary judgment papers that the attributes of its Durasoil product that Soilworks falsely advertises are often considered important to

consumers when selecting a dust control product. *See* Midwest's Memo. at pp. 9-10; Statement of Facts at ¶¶55-56; Responsive Statement of Facts ¶¶39, 54-67. For example, public projects often include express specifications that dust control products must be synthetic and/or oil-sheen free. *See* Midwest's Statement of Facts at ¶56; Midwest's Responsive Statement of Facts at ¶¶59-64. Other customers expressly require that synthetic and/or oil-sheen free products be used as the dust control for their products, and recognize that Midwest and Soilworks are the only two companies that advertise their products to be synthetic. *See* Midwest's Responsive Statement of Facts at ¶¶39, 59-60. The record evidence accordingly establishes that Soilworks' false advertisements have a tendency to deceive potential consumers and influence their purchasing decisions.

**3.      Midwest is Entitled to Pursue Damages for Soilworks' False Advertising at Trial.**

A plaintiff who establishes a violation under section 43(a) of the Lanham Act can recover for its loss sales or the defendant's profits "subject to the principles of equity." 15 U.S.C. § 1117(a). In addition, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." *Id.*

In its summary judgment papers, Soilworks seeks to preclude Midwest from recovering monetary damages for Soilworks' false advertising of its products. *See* Soilworks' Memo. at pp. 12-13. Without citing any portion of the record, Soilworks asserts in a conclusory fashion that Midwest cannot establish an actual injury caused by Soilworks' false advertising. *See id.* This is not true. Midwest and Soilworks are the only companies that represent that their dust control products are "synthetic" and "oil-sheen free," and Midwest often competes with Soilworks or its distributor for the same potential consumers and submit bids or quotes for the

11

same public projects. *See* Midwest's Statement of Facts at ¶56 and Responsive Statement of Facts at ¶¶39, 54-67. This is not an industry in which numerous competitors participate in a market, or an industry in which the competing products are aimed at different market segments. *See* Responsive Statement of Facts at ¶54. Midwest has lost sales contracts to Soilworks and its distributors based on Soilworks' false representation that its Durasoil product is a synthetic isoalkane and is a non-petroleum distillate (i.e., oil-sheen free). *See id.* at ¶¶39, 54-67. Therefore, as a result of Soilworks' false advertisements that its Durasoil product possesses these attributes, Midwest has been directly injured through the loss of sales when consumers elect to purchase their dust control products from Soilworks or its distributor instead of Midwest. *See id.* Midwest is entitled to pursue these damages at trial.

**C.      Midwest has Established that Soilworks' Trademark Infringement Constitutes False Designation of Origin and Unfair Competition under the Lanham Act.**

The sole argument that Soilworks advances in its memorandum as to Midwest's Lanham Act claims for false designation and origin and unfair competition (Count II) is that no likelihood of confusion exists. *See* Soilworks' Memo. at pp. 11-12. While Soilworks is correct that likelihood of confusion is an element of false designation of origin and unfair competition claims, it is incorrect in its conclusory assertion that this element is not satisfied.

As set forth in Section II.A above and in Midwest's Memorandum, Soilworks' use of Midwest's Soil-Sement® mark in the metatag coding for its website and in its Google™ keywords creates a likelihood of confusion. *See* Midwest's Memo. at p. 8. This constitutes false designation of origin and unfair competition actionable under the Lanham Act. *See, e.g., Brookfield Communs.*, 174 F.3d at 1047 (analyzing federal trademark infringement and unfair

competition claims premised on the initial interest confusion created by use of a competitor's trademarks in metatags under the same standards and finding both claims viable). Accordingly, the Court must deny Soilworks' request for summary judgment on this claim.

**D.** **Midwest has Established that Soilworks Unfairly Competes with Midwest.**

Soilworks does not squarely address Midwest's state law unfair competition claim (Count IV) in its memorandum. It instead lumps its response to this claim together with its response to Midwest's Lanham Act claims in order to advance the conclusory argument that these claims fail because of an alleged lack of likelihood of confusion. *See* Soilworks' Memo. at pp. 11-12. This argument falls flat for multiple reasons.

First, unfair competition under Arizona state law extends beyond trademark infringement. As explained in Midwest's Memorandum, the common law doctrine of unfair competition under Arizona law is based on principles of equity, and it is designed to prevent business conduct that is contrary to honest practice in industry or commercial matters. *See* Midwest's Memo. at p. 10; *Fairway Construction, Inc. v. Ahern*, 970 P.2d 954, 956 (Ariz. App. 1998). The doctrine encompasses several tort theories, including as trademark infringement, as well as false advertising, "palming off," and misappropriation. *Id.* (citation omitted). The likelihood of confusion analysis has no application to false advertising and several of the other tort theories encompassed by Midwest's unfair competition claim.

Second, to the extent that the Arizona Supreme Court might apply a likelihood of confusion element to the portion of Midwest's state law unfair competition claim premised on trademark infringement, Midwest has established that Soilworks' use of Midwest's Soil-

13

Sement® mark creates a likelihood of confusion. *See* Section II.B.2 above, and Midwest's Memo. at pp. 5-8 and Statement of Facts at ¶¶28-42.

The record evidence establishes that Soilworks' infringing use of Midwest's Soil-Sement® mark and its false advertising of its products – all of which are undertaken by Soilworks in order to unfairly compete with Midwest in the soil stabilization and dust control industry – are simply not equitable and are flatly contrary to honest business practices. *See* Sections II.A-C above and Midwest's Memo. at p. 10. The Court accordingly must deny Soilworks' request for summary judgment on Midwest's state law unfair competition claim.

### E. Genuine Issues of Material Fact Exist with Respect to Midwest's Unjust Enrichment Claim.

Soilworks, *without pointing to any portion of the record*, includes a superficial argument in its summary judgment memorandum that Midwest cannot meet the *prima facie* elements for an unjust enrichment claim. *See* Soilworks' Memorandum at p. 12. As a threshold matter, these types of conclusory assertions are insufficient to satisfy the initial burden of production that a summary judgment movant bears in identifying for the Court (and the non-movant) the portions of the record that the movant believes establishes that absence of any genuine issue of material fact with respect to one or more elements of the non-movant's claim. *See Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102. Soilworks cannot properly rely on its mere conclusory assertions to either shift burden of production onto Midwest or satisfy Soilworks' ultimate burden of persuasion in moving for summary judgment on Midwest's unjust enrichment claim. *See Walker*, 917 F.3d at 387 (conclusory assertions do not satisfy a movant's summary judgment burden, even if the movant does not bear the burden of proof at trial). On this basis alone, the Court should deny Soilworks summary judgment on this claim.

Moreover, as discussed above, the record evidence establishes that (1) Soilworks uses Midwest's Soil-Sement® mark in its metatag coding and Google™ keywords for purposes of directing internet consumers to Soilworks' Soiltac product and (2) Soilworks falsely (and purposefully) advertises that its Durasoil product has characteristics that it does not have, but Midwest's products do. The obvious results – which are intended by Soilworks – are that Internet consumers looking for Midwest's Soil-Sement® product are directed away from Midwest's internet marketing and its products and that Soilworks profits from its unauthorized use of Midwest's Soil-Sement® mark. This conduct enriches Soilworks and impoverishes Midwest. Soilworks has presented no justification for its conduct, nor is there any justification. To the extent that Soilworks contends (and in the event that the Court or the jury ultimately determines), that Soilworks' actions do not give rise to viable Lanham Act causes of action by Midwest, Midwest has no remedy at law. *See, e.g., Meritage Homes Corp. v. Hancock*, 522 F.Supp.2d 1203, 1222 (D. Ariz. 2007) (finding genuine issues of material fact existed with respect to a party's unjust enrichment count premised on trademark infringement and unfair competition claims when the adverse party argued on summary judgment that the claims were not cognizable under the Lanham Act). Minimally, this evidence creates numerous genuine issues of material fact as to whether Soilworks has been unjustly enriched by its trademark infringement and false advertising scheme.

F.     **The Admissible Evidence in the Record Does Not Establish Soilworks' Claim of Non-Infringement.**

While Soilworks devotes much of the final section of its memorandum to reciting strings of legal citations regarding patent claims construction, it submits *no* admissible evidence to the Court in support of its allegation that its Durasoil product does not infringe

15

any of the claims in Midwest's patents. *See* Soilworks' Memo. at pp. 13-17; Responsive Statement of Facts at ¶¶45-53. The *sole* material offered by Soilworks to support its assertions of non-infringement is a two-page letter report prepared by Soilworks' expert, Edward Funk, *which is dated May 7, 2008 (two days before its summary judgment memorandum was filed).* In accordance with Local Rule 7.2(m), Midwest has explained in its Responsive Statement of Facts the multiple reasons why Mr. Funk's report must be stricken and disregarded by the Court, including: (1) Mr. Funk's report is entirely untimely, in violation of Federal Rule of Civil Procedure 26(A)(2)(B) and the deadlines set forth in this Court's May 7, 2007 Case Management Order (ECF #28); and (2) Soilworks never disclosed to Midwest pursuant to Rule 26(A)(2)(B) that Mr. Funk was expected to opine that Soilworks' Durasoil product did not infringe Midwest's patents. *See* Midwest's Responsive Statement of Facts at ¶45. Soilworks' tactics of surprise and ambush in submitting Mr. Funk's report to the Court, in support of its summary judgment motion, are flatly prohibited by Rule 26(A)(2)(B) and the Court's Case Management Order. The Court must accordingly disregard Mr. Funk's report.[5]

Without Mr. Funk's report, Soilworks has not put forth any evidence to satisfy its initial burden of production, and it certainly cannot satisfy its ultimate burden of persuasion, on

---

[5] As requested in Midwest's Responsive Statement of Facts, if the Court does not strike Mr. Funk's report for purposes of the summary judgment proceedings or if the Court permits Mr. Funk to testify at trial, the Court should expressly authorize Midwest to depose Mr. Funk and retain an expert to provide rebuttal testimony on the issue of patent infringement before the Court rules on these claims. *See* Midwest's Responsive Statement of Facts at ¶45.

summary judgment with respect to is assertions of non-infringement.[6]  An examination of the evidence in the record reveals that genuine issues of material fact exist as to whether Soilworks' Durasoil product infringes Midwest's Patents.  *See* Midwest's Responsive Statement of Facts at ¶¶54-52.  For example, even Chad Falkenberg of Soilworks concedes that Soilworks' Durasoil product could infringe Midwest's patents.  *See* Midwest's Responsive Statement of Facts at ¶¶46, 48, 50, 52, and 53.  He also concedes that Soilworks does not know whether Durasoil falls within the various claims of Midwest's Patents.  *See id.*

Moreover, Soilworks' distributors have submitted bids to supply Soilworks' Durasoil product for projects that included express specifications for Midwest's EK-35® product, as well as submit bids and quotes for projects that include express specifications for dust control products that have components covered by the claims in Midwest's Patents that Soilworks now conveniently asserts that its Durasoil product does not have (*e.g.*, a binder and synthetic isoalkane).  *See* Midwest's Statement of Facts at ¶¶56-57 and Responsive Statement of Facts at ¶¶50, 52, 61-65.  The only rational conclusion that can be drawn from this evidence is that either (A) Durasoil infringes Midwest's Patents or (B) both Soilworks and its distributors misrepresent the characteristics of Durasoil in order to unfairly compete with Midwest.

Thus, contrary to Soilworks' assertions, genuine issues of material fact exist.

## IV.   CONCLUSION

For all of the foregoing reasons, Midwest requests that the Court DENY Soilworks' motion for summary judgment in its entirety.

---

[6] Soilworks bears the ultimate burden of production and persuasion at trial with respect to its claims of non-infringement set forth in Count II of its Complaint (request for a declaration of Soilworks' non-infringement of Midwest's '270 Patent) and its counterclaim (request for a declaration of Soilworks' non-infringement of Midwest's '266 Patent).

By:  /s/ John M. Skeriotis
Craig A. Marvinney, 0004951 (OH)
John M. Skeriotis, 0069263 (OH)
Jill A. Bautista, 0075560 (OH)
BROUSE MCDOWELL
388 S. Main Street, Suite 500
Akron, Ohio 44311-4407
Telephone:  330-535-5711
Facsimile: 330-253-8601
Email:   cmarvinney@brouse.com,
          jskeriotis@brouse.com,
          jbautista@brouse.com
*Admitted pro hac vice*

Donald L. Myles, Jr., 007464 (AZ)
JONES, SKELTON & HOCHULI, P.L.C.
2901 N. Central Ave., Suite 800
Phoenix, Arizona 85012
Telephone:  602-263-1700
Facsimile: 602-263-1784
Email:   dmyles@jshfirm.com

*Attorneys for Defendant/Counterclaimant*
*Midwest Industrial Supply, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing **MIDWEST INDUSTRIAL SUPPLY, INC.'S OPPOSITION TO SOILWORKS, LLC'S MOTION FOR SUMMARY JUDGMENT ON MIDWEST'S COUNTERCLAIMS** has been electronically filed on this 11th day of June, 2008. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John M. Skeriotis
John Skeriotis

717913.6