E. SCOTT DOSEK #012114
JOHN P. PASSARELLI #16018 (NE)
KUTAK ROCK LLP
Suite 300
8601 North Scottsdale Road
Scottsdale, AZ  85253-2742
(480) 429-5000
Facsimile: (480) 429-5001

*Attorneys for Plaintiff*
*SOILWORKS, LLC, an Arizona corporation*

# UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SOILWORKS, LLC, an Arizona corporation, | NO.: 2:06-CV-2141-DGC |
| Plaintiff / Counterdefendant / Counterclaimant, | **SOILWORKS, LLC'S OPPOSITION TO MIDWEST INDUSTRIAL SUPPLY'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| MIDWEST INDUSTRIAL SUPPLY, INC., an Ohio corporation authorized to do business in Arizona, | |
| Defendant / Counterclaimant / Counterdefendant. | |

## I. Introduction

Midwest's Brief in Support of its Motion for Partial Summary Judgment ("Midwest's Brief") must fail. Midwest's trademark infringement claim fails because it asserts and applies the wrong likelihood of confusion standard and under the appropriate standard, its evidence (i.e. Soilworks' alleged use of the words "soil" and "sement" in its metatags and as a keyword), as a matter of law, does not create a likelihood of confusion or any deception.

Remarkably, Midwest has engaged in seemingly the exact same conduct (i.e., the purchase of Soilworks' trademarks for use as keywords) which forms the basis for its claims against Soilworks for trademark infringement, false designation of origin, unfair competition and, in large part, unjust enrichment.

4834-0969-7282.2

Midwest's false advertising claim, based upon Soilworks' use of the words "synthetic" and "oil-sheen free", must fail because it has not shown that the statements (i) are literally false or misleading, (ii) have a tendency to deceive, (iii) are material and (iv) are likely to injure Midwest through direct diversion of sales or loss of good will. Midwest's Founder's self-serving and conclusory declaration and its own testing on never-identified "similar materials" are, as a matter of law, insufficient proof and contradict the facts.

Midwest has, in bad faith, embarked on a campaign to discredit Soilworks including engaging in false advertising. While Midwest may advise others of its patents rights and even allege, in good faith, infringement, Midwest cannot, as a matter of law, make unequivocal, unconditional statements to the market which include, but are not limited to, the following: (i) Soilworks is an "imitator" (ii) Soilworks cannot design around the Midwest Patents, and (iii) "only Midwest can offer products that define the technology." Such statements, and others, incited apprehension in Soilworks' vendor, Polar Supply, which resulted in a loss of business to Soilworks.

As set forth in Soilworks Summary Judgment Brief and its Statement of Facts, incorporated herein by this reference and as more fully set forth below, Midwest tortiously interfered with Soilworks business relationship with Polar Supply resulting in a suspension of its business with Polar Supply and lost business for Soilworks.

## II. ARGUMENT

### A. Soilworks Is Entitled to Summary Judgment on Midwest's Trademark Infringement Claim

Soilworks is entitled to summary judgment on Midwest's Lanham Act trademark infringement claim because (i) Midwest's incorrect and misapplied likelihood of confusion standard disregards the law of the Ninth Circuit and this Court and, therefore, should be ignored and (ii) as a matter of law, under the appropriate *Brookfield* and *Designer Skin* test, Midwest has failed to present any proof of deception and/or a likelihood of confusion among the relevant sophisticated class of consumers.

### 1. Midwest's Trademark Infringement Analysis Should Be Ignored Because It Applies the Wrong "Likelihood of Confusion" Analysis

Midwest wholly misapprehends the standard for determining a likelihood of confusion in "metatag" and "keyword" cases. Instead, Midwest relies upon and applies the standard set forth in *Interstellar Starship Services, Ltd. v. Epix, Inc.*, 304 F.3d 936, 942 (9th Cir. 2002) and *Perfumebay.com v. eBay Inc.*, 506 F.3d 1165, 1174-75 (Fed. Cir. 2007), which addresses the test for a likelihood of confusion between a domain name and a trademark. Based upon the likelihood of confusion standard set forth in those cases, Midwest erroneously asserts that this Court must apply the same test to determine whether a likelihood of confusion exists in this case:

> [I]n the context of the Web, the three most important *Sleekcraft* factors are (1) the similarity of the marks, (2) the relatedness of the goods or services, and (3) the parties' simultaneous use of the Web as a marketing channel."

Midwest's Brief at 6. Midwest ignores the applicable law of this Court and the Ninth Circuit.

*Interstellar Starship Service, Inc.* and *Perfumebay.com* address whether a likelihood of confusion existed between a plaintiff's trademark and the defendant's use of a domain name alleged to have infringed the trademark. "Epix, Inc. sued Interstellar . . . alleging their use of the www.epix.com domain name infringed Epix's registered EPIX trademark." *Interstellar Starship Services, Ltd. v. Epix, Inc.*, 304 F.3d 936, 938 ("Epix contends that ISS's use of www.epix.com initially confuses consumers who expect to find Epix at that web address."). *See also Perfumebay.com v. eBay Inc.*, 506 F.3d 1165, 1169 (Fed. Cir. 2007) (Ninth Circuit reviewed the District Court's finding of a likelihood of confusion in favor of eBay.com from defendant's use of the perfumebay.com website).

Midwest has presented no evidence that any of Soilworks' domain names infringe the "Soil-Sement" mark. The alleged infringement before this Court is that (i) Soilworks has paid the search engine Google to use as a keyword the words "soil sement" and (ii) Soilworks has used the phrase "sement soil" as well as the words "soil" and "sement" in the

metatags of its website. *See* Midwest's Statement of Facts at 38-40. This is not a domain name confusion case. The correct test is set forth in *Brookfield Comm. Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036 (9th Cir. 1999) and *Designer Skin, LLC v. S&L Vitamins, Inc.*, 2008 WL 2116646 (D. Ariz. May 20, 2008) (J. Teilborg).

**2. The Correct "Likelihood of Confusion" Standard for Metatag/Keyword Cases Is Set Forth in *Brookfield* and Recently Applied in *Designer Skin, LLC v. S&L Vitamins, Inc.***

This is a metatag/keyword case. Midwest's trademark infringement claim arises from Midwest's allegation that Soilworks uses "Soil-Sement" as a keyword and the words "soil" and "sement" in its Web sites' metatags. Indeed, Midwest does not even allege that Soilworks' domain names infringe or bear any resemblance whatsoever to "Soil-Sement" or any other Midwest trademark.

*Brookfield Comm. Inc. v. West Coast Entertainment Corp.* teaches that the "controlling troika" standard set forth in *Interstellar Starship Service, Inc.* and *Perfumebay.com* does *not* apply to metatag/keyword cases like the one presently before this Court:

> At first glance, our resolution of the infringement issues in the domain name context would appear to dictate a similar conclusion of likelihood of confusion with respect to West Coast's use of "moviebuff.com" in its metatags. . . . Disposing of the issue so readily, however, would ignore the fact that the likelihood of confusion in the domain name context resulted largely from the associational confusion between West Coast's domain name "moviebuff.com" and Brookfield's trademark "MovieBuff." *The question in the metatags context is quite different.* 'This case . . . is not a standard trademark case and does not lend itself to the systematic application of the eight [*Sleekcraft*] factors' . . . Because we agree that the traditional eight-factor test is not well-suited for analyzing the metatags issue, we do not attempt to fit our discussion into one of the *Sleekcraft* factors.

*Id.* at 1061-1062. Emphasis added.

This is not a standard trademark case. As the law of this Court and the Ninth Circuit unequivocally states, the focus of the Court's infringement analysis does not rest on the

1  "controlling troika" of the *Sleekcraft* factors. Midwest's "likelihood of confusion analysis" on pages 5 through 8 of its Brief should be ignored.

Recently, this Court addressed and applied the appropriate analysis for "metatag;" and "keyword"-type cases and the potential, or lack thereof, for initial interest confusion[1] in *Designer Skin, LLC v. S&L Vitamins, Inc.*, 2008 WL 2116646 at *3-4 (D. Ariz. May 20, 2008) (J. Teilborg). In *Designer Skin*, Designer Skin sued S&L Vitamins for using Designer Skin's trademarks "in the metatags of its sites and as search-engine keywords." *Id.* at *1. Designer Skin argued "that initial interest confusion results [when] S&L Vitamins uses the marks in the metatags of its sites and as search-engine keywords." *Id.* at *3. This Court, "as a matter of law," disagreed. "[T]he mere fact that S&L Vitamins uses Designer Skin's marks in the metatags of its sites and as search-engine keywords does *not* result in initial interest confusion. Designer Skin must show that the uses are *deceptive*." *Id.* at 4 (emphasis added).

Next, Designer Skin argued that a likelihood of confusion exists "because . . . the links to S&L Vitamins' websites appear near the top (or even at the top) of the results page" when "internet users . . . type 'Designer Skin' into a search engine." *Id.* Again, this Court, "as a matter of law," disagreed. *Id.* While acknowledging that Designer Skin's second argument, at least, attempts to present evidence of deception, this Court found such evidence insufficient. "Liability only attaches for trademark infringement when conduct is 'likely to confuse an appreciable number of people as to the source of the product.'" *Id. citing to Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002). Even if Designer Skin could show that users might be confused, this Court concluded:

> "… such users, if any, will be the naïve few. S&L Vitamins' domain names bear no resemblance whatsoever to "Designer Skin" or its domain name "www.designerskin.com." Furthermore, Designer Skin has offered no evidence in the form

---

[1] "Initial interest confusion has been equated to a 'bait and switch' scheme. It occurs when potential customers are lured away from a trademark holder's product to a competitor's product through the *deceptive* use of the holder's mark." *Designer Skin, LLC v. S&L Vitamins, Inc.*, 2008 WL 2116646 at *3 (D. Ariz. May 20, 2008) (emphasis added).

4834-0969-7282.2                    5

of expert testimony or lay testimony that anyone hypothetically
could be or actually was confused in this way."

*Id*.

### 3. Midwest's Claim of Trademark Infringement Must Fail Because It Has Not Presented Any Evidence of Deception or a Likelihood of Consumer Confusion

Midwest has presented no evidence of deception on the part of Soilworks; nor has Midwest presented any evidence (e.g., expert testimony, survey results, or even any indirect evidence) from which this Court could conclude a likelihood of confusion exists. As the law of this Court and this Circuit unequivocally states, "[d]eception . . . is essential to a finding of initial interest confusion." *Id.* at 3. Midwest has failed to present any evidence of deception. Assuming without conceding that Soilworks has used "Soil-Sement" in its metatags and as a keyword, the mere fact that Soilworks uses Midwest's "Soil-Sement" mark in the metatags of its sites and as a search-engine keyword is *not*, as a matter of law, sufficient evidence of a likelihood of confusion. Even accepting, without conceding, every fact and inference in favor of Midwest (i.e., that Soilworks has used Midwest's "Soil-Sement" mark as a metatag and as a keyword[2]), such evidence does not demonstrate a likelihood of confusion. Indeed, no likelihood of confusion can exist in Soilworks' use of the words "soil" and "sement" in a non-conjoined manner. To the extent Midwest's trademark infringement claim relies upon such evidence, it should be ignored.

Assuming, without conceding, that links to Soilworks' Web sites appear near the top (or even at the top) of the results page when soil stabilization customers type "Soil-Sement" into a search engine, such evidence does *not*, as a matter of law, prove that a likelihood of confusion exists. Furthermore, even if links to Soilworks' Web sites appear near the top (or even at the top) of the results page when soil stabilization customers type "Soil-Sement" into a search engine, as a matter of law, such users, if any, would be the naïve few, especially in

---

[2] Indeed, Midwest's only evidence of the type and quality of use is Soilworks' use of "sement soil" and the words "soil" and "sement" in a non-conjoined manner. Midwest has not presented any evidence that Soilworks has used "Soil-Sement." At a minimum, non-conjoined use cannot be enjoined. *See Perfumebay.com v. eBay Inc.*, 506 F.3d 1165, 1181-1182 (Fed. Cir. 2007).

light of the sophisticated nature of the clients seeking out the products of Midwest and Soilworks (i.e., Alaska Department of Transportation and other military, governmental and commercial organizations and enterprises that purchase soil stabilization products). As a matter of law, Midwest cannot prove that Soilworks has infringed the "Soil-Sement" mark because no likelihood of confusion exists. Soilworks is entitled to summary judgment on Midwest's Lanham act trademark infringement claim.

### 4. Midwest Purchased Soilworks' Trademarks To Use as Keywords

Finally, it should be noted that Midwest, too, appears to have paid the search engine Google to use Soilworks' Soiltac® and Soilworks® marks as "keywords" without Soilworks' consent. *See* **Exs. 1 and 2** attached hereto. Despite engaging in the same conduct, Midwest has expended large sums of money and resources (and thereby forced Soilworks to do the same) and consumed this Court's time, by hinging the lion's share of its case on conduct that it too engages in. This Court cannot hold Soilworks liable for conduct seemingly no different than that engaged in by Midwest. Soilworks is entitled to summary judgment on Midwest's Lanham act trademark infringement claim.

### B. Soilworks Is Entitled to Summary Judgment on Midwest's Lanham Act Claims of False Designation of Origin and Unfair Competition

Midwest admits that its "[c]laims of false designation of origin and unfair competition under the Lanham Act are measured by identical standards as those of federal trademark infringement." Midwest's Brief at 8. Midwest further concedes that it has no other evidence to offer in support of its claims for false designation and unfair competition beyond that offered to support its trademark infringement claim. *See Id.* For the same reasons that Soilworks is entitled to summary judgment on Midwest's trademark infringement claim (i.e., no likelihood of confusion exists), Soilworks is also entitled to summary judgment on Midwest's claims of false designation of origin and unfair competition.

**C. Soilworks Is Entitled to Summary Judgment on Midwest's False Advertising Claim**

Midwest argues that Soilworks has either falsely or misleadingly advertised its Durasoil product as being "synthetic" and "oil-sheen free." Midwest cannot, as a matter of law, support its claim. This Court should grant summary judgment in favor of Soilworks because Midwest has failed to meet several elements of the prima facie case for a Lanham Act false advertising claim.

**1. Midwest Has Failed To Present Evidence Sufficient To Meet the Prima Facie Case for False Advertising**

Midwest cannot meet the prima facie case for its false advertising claim. Its evidence of falsity is, at best, a distortion of the record evidence. Furthermore, at a minimum, it has failed to present any evidence that the statements "synthetic" and "oil-sheen free" have either deceived or have a capacity to deceive a substantial segment of potential customers, that the deception is material in that it is likely to influence the relevant consumer's purchasing decision, and that Midwest has been or is likely to be injured as a result of the statements at issue either by direct diversion of sales from itself to Soilworks, or by a lessening of goodwill associated with Midwest's products.

Midwest offers the following conclusory and self-serving "evidence" regarding elements (2) and (3) of its false advertising claim:

> These statements unquestionably have the tendency to deceive a substantial segment of their audience and are undeniably material, as the synthetic and/or oil-sheen free nature of dust control and soil stabilization products is often considered important to consumers when selecting a product.

Midwest Brief at 9 and 10.

Midwest cites to the declaration of its Founder and President, Robert Vitale, as its only evidence that "oil-sheen free" and "synthetic" are often considered important. *See* Midwest's Brief at 10. Mr. Vitale's statements in paragraphs 19-23 of his declaration are conclusory and self-serving. As a matter of law, it cannot establish a material fact. *Century 21 Real Estate LLC v. Century Ins. Group*, 2007 WL 484555 at *3 (D. Ariz. Feb. 9, 2007).

Midwest "may not rely on [a] self-serving, conclusory [declaration], but must 'set forth specific facts' regarding each element of [its] claim." *Peters v. Figuerroa*, 1997 WL 117092 at *1 (9th Cir. March 11, 1997); *see also* Fed. R. Civ. P. 56(e).

Midwest makes the following conclusory remark as its sole evidence that it has been or is likely to be injured either by direct diversion of sales from Midwest to Soilworks, or by a lessening of goodwill associated with Midwest's product:

> Midwest is likely to be injured through the loss of sales when Soilworks falsely represents that its products have [the "synthetic" and "oil-sheen free"] attributes, particularly considering Midwest and Soilworks and/or its distributors often compete for the same projects.

Midwest's Brief at 10. Such a conclusory remark is hardly the "specific and identifiable" type of facts required to support the fifth element of its false advertising claim. Soilworks is entitled to summary judgment on Midwest's false advertising claim.

**2. Midwest Has Failed To Present Evidence Demonstrating the Falsity of Soilworks' Claim That the Durasoil Product is "Synthetic" and "Oil-Sheen Free"**

**"Synthetic"**

In addition to its failure to meet elements (2), (3) and (5), Midwest cannot meet element (1), i.e., that a false or misleading statement has been asserted. However, Midwest asserts that Soilworks' identification of its Durasoil product as "synthetic" is false because (i) Mr. Falkenberg does not know if Durasoil is "synthetic" and (ii) Mr. Falkenberg "acknowledges that the manufacturer of Durasoil would not consider it to be 'synthetic.'" Midwest's Brief at 9. Midwest distorts the deposition testimony of Mr. Falkenberg to the point of absurdity.

Mr. Falkenberg's deposition testimony says nothing about him stating he "does not even know" whether Durasoil is "synthetic." The discussion on pages 177 to 179 of Mr. Falkenberg's deposition—cited by Midwest as its sole evidence of such a statement—relates exclusively to the following topics: **(*See* Ex. 3 attached hereto).**

(1) Lines 177:15-23 address whether "synthetic isoalkanes" are present in Durasoil (C. Falkenberg Depo. at 177:15-23);

(2) Lines 177:23-25 address whether mineral oil is an isoalkane (C. Falkenberg Depo. at 177:23-25);

(3) Lines 178:1-2 address whether mineral oil is synthetic (C. Falkenberg Depo. at 178:1-2);

(4) Lines 178:3-25-179:1 address how Mr. Falkenberg defines the word "synthetic" (C. Falkenberg Depo. at 178:3-25-179:1;

(5) Lines 179:2-9 address whether Mr. Falkenberg had tested Durasoil to find out if it has an isoalkane (C. Falkenberg Depo. at 179:2-9); and

(6) Lines 179:10-12 Confirm that Mr. Falkenberg is not a chemist (C. Falkenberg Depo. at 179:10-12).

None of these statements address or answer whether Mr. Falkenberg knows if Durasoil is "synthetic." Midwest's claims in this regard should be disregarded.

Regarding Midwest's second and final piece of evidence supporting its "synthetic" false advertising claim, Mr. Falkenberg testified multiple times to the fact that Soilworks mixes the Durasoil product. So, the fact that Mr. Falkenberg "acknowledges" that ConocoPhillips does not identify a certain base oil as "synthetic" is irrelevant because Soilworks mixes its Durasoil product. As set forth in its Brief in Support of its Motion for Summary Judgment, and as implicitly conceded by Midwest, Soilworks "mixes" and "manufactures" the Durasoil product. Such activity makes the Durasoil product "synthetic." *See* **Ex. 4** attached hereto. Significantly, Midwest has not set forth, through expert testimony or otherwise, what the dust control and soil stabilization industry understands the term "synthetic" to mean with regard to dust control products. Indeed, Midwest has presented no evidence that "synthetic" has a unique meaning in the industry that would distinguish it from its common dictionary definition. Midwest's claim of falsity must fail.

**"Oil-Sheen Free"**

Essentially, Midwest attempts to show that Soilworks' use of "oil-sheen free" is a false or misleading statement of fact because (i) Soilworks has not performed an EPA test on

Durasoil; and (ii) Midwest believes it is not "oil-sheen free" based upon tests it performed on other allegedly similar materials. However, Midwest has not presented the results of such tests on other allegedly "similar materials."

In fact, Midwest *did* perform its own tests on the Durasoil product prior to engaging in the unlawful conduct described herein. And Midwest admits that it drew "no" conclusions from its testing of Durasoil product. *See* **Midwest 30(b)(6) Depo. at 38:8-21 filed by Soilworks as Ex. 4 with this Court on May 9, 2008 under seal**. Yet, Midwest now asks this Court to ignore these facts and, instead, accept its unsupported statement that its test of "similar" products led it to believe Durasoil infringed the Midwest Patents. Such evidence is self-serving, conclusory and belies the truth. As a matter of law, it does not demonstrate falsity. Soilworks' President confirms that it has run tests on Durasoil and confirms that no rainbow effect occurs when introducing Durasoil to water. *See* **C. Falkenberg declaration attached hereto as Ex. 5.** Here, Midwest has presented no proof that Soilworks' statements are false. Midwest sites to no expert testimony regarding any special meaning of these terms within the relevant marketplace nor has it presented any evidence that Soilworks' use of the term is false or misleading. Summary Judgment in Soilworks' favor is appropriate.

### D. Soilworks Is Entitled to Summary Judgment on Midwest's State Unfair Competition Claim

Midwest's state unfair competition claim relies exclusively upon the same facts as its failed false advertising and trademark infringement claims. For the same reasons that these claims must fail, this Court should grant Soilworks summary judgment on Midwest's unfair competition claim.

### E. Soilworks Has Established a False Advertising Claim

#### 1. Midwest's Statements to the Marketplace Evidence Bad Faith

Midwest argues that, as a threshold matter, Soilworks' false advertising claim must fail because it cannot show Midwest has acted in bad faith. Midwest incorrectly asserts that Soilworks' "false advertising claim arises out of Midwest's marketplace statements about its

patent to Midwest's [sic] distributor, Polar Supply Company." Midwest's Brief at 11. Midwest ignores the undisputed facts and the law of this Circuit.

Representations that a create a false impression that a competitor cannot effectively design around a patent or statements that give the impression that the patentee is the exclusive source of a product are "inherently suspect" and indicative of bad faith of the patent holder. *Zenith Electronics Corp. v. Exzec*, 182 F.3d 1340, 1354 (Fed. Cir. 1999).

"The Lanham Act prescribes limitations on infringement letters. Specifically, patent holders cannot send infringement letters which contain false statements." *Mitsubishi Electric Corp. v. IMS Technology, Inc.*, 1997 WL 630187 at *8 (N.D. Ill. Sept. 30, 1997). Indeed, "a seller who exaggerates the scope and validity of his patent, thus creating the false impression that the seller is the exclusive source of the product, may overstep the boundaries set in the Lanham Act." *Id.*

Midwest did more than simply send a cease and desist letter to Soilworks and its Vendor Polar Supply. It embarked on a campaign to exaggerate the scope of its patent in a very close-knit community of customers. Midwest's statements to the trade constitute "inherently suspect" conduct sufficient to show bad faith. Soilworks' false advertising claim arises out of Midwest's statements to a Soilworks' vendor and the dust control and soil stabilization market at-large that (i) Soilworks is an "imitator" of its products; (ii) that it cannot design around Midwest's patents; and (iii) that Midwest is the exclusive source for dust control technology.

Midwest asserts that the analysis in *Zenith Electronics Corp. v. Exzec*, 182 F.3d 1340 (Fed. Cir. 1999), controls this Court's determination. Soilworks agrees. Under *Zenith*, Soilworks has shown bad faith. In *Zenith Electronics Corp.*, Exzec, Inc. ("Exzec"), the Court held that representations that create a false impression that a competitor cannot effectively design around a patent, or statements that give the impression that the patentee is the exclusive source of a product, are "inherently suspect" and indicative of bad faith of the patent holder. *Id.* at 1354. The Court explained that such statements are suspect "because with sufficient effort it is likely that most patents can be designed around, [and] also because

such a statement appears nearly impossible to confirm *a priori*." *Id.* For these reasons, the Court concluded "the bad faith element may be much easier to satisfy for statements of this type." *Id.*

In the summer of 2006, Midwest embarked on a scheme to discredit and tarnish the good will of Soilworks and send a chill through the marketplace through sending letters to a Soilworks' vendor, issuing a press release and direct comparative advertising between Midwest's Envirokleen product and Soilworks' Durasoil product. In these materials, Midwest made unequivocal, unconditional, seemingly fact-based assertions which created the false impression that (i) Midwest was the exclusive source of dust control and soil stabilization products, (ii) Soilworks' Durasoil was an imitator of the Envirokleen product and (iii) Soilworks could not design around the Midwest Patents. Such statements included the following:

- "[O]nly Midwest can offer products and methods that define this technology";
- "Midwest has secured **exclusive** rights to the products and methods that define the category";
- "[T]here are a number of imitators that claim to be synthetic organic dust control agents; however, **none of those competitors can have the same formulation or method**" as Midwest;
- Companies like Soilworks "are either not supplying synthetic organic dust control technology, as recited above, or they are infringing Midwest's patents" and
- "Soilworks, LLC is an imitator of synthetic organic dust suppressant technology"

*See* **Exs. 7 and 8 to Soilworks' SOF filed with this Court on May 9, 2008** (emphasis added).

In addition to its statements to the trade in general, Midwest targeted a specific vendor of Soilworks. Midwest sent two letters to Polar Supply. In those letters, Midwest expressly refers to Soilworks as an "imitator" of its products. "**Soilworks, LLC is an imitator** of synthetic organic dust suppressant technology." (Id.) **[*See* Soilworks' SOF ¶ 13 filed with this Court on May 9, 2008.]** Emphasis added.

Midwest's unequivocal unconditional statements to the trade at-large and to a Soilworks' vendor, in particular, belie Midwest's own admissions that, when it made these communications to the industry and to Polar Supply, Midwest had drawn "no" conclusions

from its testing of Durasoil product as to Durasoil and its infringement of the Midwest Patents. *See* **Midwest 30(b)(6) Depo. at 38:8-21 filed by Soilworks as Ex. 4 with this Court on May 9, 2008 under seal**. Yet, even after additional review of the Durasoil product by its outside counsel, Midwest asserted that, at best, Soilworks' Durasoil "**might infringe**" the Midwest Patents. *See* Statement of Facts at ¶ 67. Midwest, at best, believed that the Midwest Patents "**could potentially** affect Soilworks' ability to make, use and sell Durasoil." *Id.* at ¶ 68. To this day, Midwest has failed to present any evidence that Durasoil infringes the Midwest Patents.

It is worth noting that Midwest chronically mischaracterizes the correspondence between the parties prior to this action. On July 18, 2006 John Passarelli responded to Mr. Skeriotis' letter to Mr. Allsworth, stating that he was aware of no factual or legal basis for Midwest's claims of infringement. *See* **Ex. 6** attached hereto**.** Mr. Passarelli advised Mr. Skeriotis of his obligation, pursuant to *View Engineering, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981 (Fed. Cir. 2002) to provide a claims chart which mapped "each element of an asserted patent claim" to the accused product. Mr. Skeriotis ignored this request and the law of the Federal Circuit. Indeed, Mr. Skeriotis never provided a claims chart prior to filing its counterclaim for patent infringement. In fact, no claims chart was presented to Soilworks until December 24, 2007. Indeed, Midwest has failed to present any evidence that it prepared a claims chart prior to filing its patent infringement claim.

Midwest's admissions of uncertainty and total lack of a foundation for claiming Soilworks infringes, is an imitator and that Midwest is the "exclusive source" for dust stabilization technology stand in stark contrast to the truth: i.e., Midwest had no idea whether Soilworks' Durasoil infringed the Midwest Patents or that it is the exclusive source for dust suppressant technology, when it sent letters to Polar Supply or issued press releases or created and disseminated direct comparative advertising to the trade at large, or when it filed its counterclaim for patent infringement.

Amidst all this, Midwest claims it was "simply advising" the industry "about the issuance of" its patents. *See* Midwest's Brief at 12. Midwest's statements to Polar Supply

and the trade at-large are in no way "consistent with [Midwest's] right to inform a potential infringer of the existence and scope of its patents." *Id.* Midwest's statements to the industry and to Polar Supply constitute bad faith. Such statements are well outside the contemplated and expressly excepted conduct under *Zenith* and its progeny. *Zenith*, in fact, expressly states that such conduct is indicative of bad faith. Midwest's motion for summary judgment on Soilworks' false advertising claim must be denied.

### 2. Midwest Made False or Misleading Statements

As discussed above, Midwest made false or misleading statements to both Polar Supply and the industry at large. In addition to these false and/or misleading statements, Midwest falsely asserted in its letters to Polar Supply that "U.S. Patent law requires that a response be received by the patent owner when someone has been accused of infringement." *See* **Ex. 6 to Soilworks' SOF filed with this Court on May 9, 2008**. No such law exists. Such statements were designed to incite apprehension and fear in the mind of a Soilworks' vendor and the industry at-large. No doubt it did, as Polar Supply immediately contacted Soilworks requesting that it be indemnified from any claims of infringement.

### 3. Midwest Disseminated its Misrepresentations to the Industry at Large Sufficient to Constitute "Advertising" and "Promotion"

Midwest ignores its own press releases and advertising. There can be no dispute that Midwest's July 2006 "FOR IMMEDIATE RELEASE" Press Release and its "COMPARE MIDWEST AND ENVIROKLEEN TO [SOILWORKS' DURASOIL]" advertisement were "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within [the] industry." *Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999). As Midwest repeatedly touts, it has been in this business for 30 years. It knows how to issue press releases and advertisements to its relevant purchasing public.

For the reasons above, Soilworks is entitled to Summary Judgment on its false advertising claim.

4834-0969-7282.2

15

## F. Soilworks' State Law Claims Are Not Preempted by Federal Patent Law Because it Has Shown Midwest's Bad Faith

At a minimum, Soilworks has shown Midwest's bad faith for its claims to survive summary judgment. As set out above, Midwest's multiple unequivocal statements to the marketplace and to Polar Supply constitute bad faith. "[S]tate tort claims, including tortious interference claims, based on publicizing a patent in the marketplace are not preempted by the patent laws if the claimant can show that the patentholder acted in bad faith." *Zenith Electronics Corp. v. Exzec*, 182 F.3d at 1355. Midwest's tortious interference and unfair competitions claims survive because Soilworks has shown bad faith.

## G. Midwest Tortiously Interfered With Soilworks' Business Relationship With Polar Supply

Midwest asserts that "Soilworks' tortious interference claim cannot survive summary judgment because Soilworks lacks any evidence to prove at least three of [the] essential elements" of a tortious interference claim. Midwest is wrong.

Midwest does not challenge the valid contractual relationship between Polar Supply and Soilworks, Midwest's knowledge of that relationship nor its intentional interference with such relationship.

Upon receipt of the letters from Midwest, Polar Supply refused to conduct any business with Soilworks until it received a promise of indemnification from Soilworks. *See* **Ex. 3 at 115:8-13**. Indeed, during this period of time (which was, at a minimum, five months), Soilworks missed several bids and/or sales of its product to Polar Supply due to Midwest's intentional interference. *See* **Ex. 3 at 115:14-19 and 127:15-23**.

Furthermore, Midwest specifically identified losing an Alaska Department of Transportation bid to a supplier of Midwest products due to the interference caused by Midwest sending the Polar Supply letters. *See* **Ex. 3 at 127:24-25-128:1-8**.

Midwest acted improperly. This determination "involves an inquiry into the party's motive and purpose as well as actual intent." *Snow v. W. Sav. & Loan Assn.*, 730 P.3d 204, 213 (Ariz. 1986). As addressed above, Midwest's concerted scheme to discredit and harm

the business of Soilworks, through false and/or misleading claims in press releases, advertising and letters to a Soilworks' vendor, show that Midwest's motive and purpose for interfering with Soilworks business relationship was unreasonable and in bad faith. Soilworks is entitled to summary judgment on its tortious interference claim.

### H. Midwest Did Unfairly Compete With Soilworks

For all the same reasons Midwest is liable for false advertising, tortious interference, false designation of origin and unfair competition, Soilworks is entitled to summary judgment on its state unfair competition claim.

### I. Midwest's Patents are Invalid Pursuant to The New Obviousness Standard Set Forth In *KSR Intern. Co. v. Teleflex Inc.*

*KSR Intern. Co. v. Teleflex Inc.*, 127 S. Ct. 1727, (1997) sets forth a new standard under which courts must review patents for obviousness. Based upon this new threshold for obviousness, and the prior art already submitted to this Court, the Midwest Patents are obvious and, therefore, invalid. Midwest's argument falsely assumes that prior art already considered by the USPTO does not potentially invalidate the Patent in light of new obviousness standards. This is not the case. Summary Judgment on Soilworks' invalidity claim is appropriate.

## III. CONCLUSION

For the reasons stated herein, Soilworks respectfully requests that this Court deny Midwest's Motion for Partial Summary Judgment and grant summary judgment in favor of Soilworks on Midwest's claims.

/ / /

/ / /

Dated this 12th day of June, 2008.

                                              KUTAK ROCK LLP

                                      By   /s E. Scott Dosek
                                              E. Scott Dosek
                                              John P. Passarelli *(Pro Hac Vice)*
                                              Suite 300
                                              8601 North Scottsdale road
                                              Scottsdale, AZ 85253-2742

                                              *Attorneys for Plaintiff*

# **CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2008, the foregoing Plaintiff's Response in Opposition to Midwest's Motion For Partial Summary Judgment was filed electronically. Notice of this filing will be sent to all parties by operations of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                      /s Amy S. Fletcher
                                      Amy S. Fletcher