**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Soilworks, LLC, an Arizona corporation, )<br>)<br>       Plaintiff/Counterdefendant/ )<br>       Counterclaimant, )<br>)<br>vs. )<br>)<br>Midwest Industrial Supply, Inc., an Ohio )<br>corporation authorized to do business in )<br>Arizona, )<br>)<br>       Defendant/Counterclaimant/ )<br>       Counterdefendant. )<br>)<br>_____ ) | No. CV-06-2141-PHX-DGC<br><br>**ORDER** |

Soilworks, LLC and Midwest Industrial Supply, Inc. ("Midwest") are competitors. Both companies distribute soil erosion and dust control products throughout the United States. Soilworks' products include Durasoil and Soiltac. Midwest's products include EK35, EnviroKleen, and Soil-Sement.

In July 2006, Midwest was issued two United States Patents, Nos. 7,074,266 ("'266 Patent") and 7,081,270 ("'270 Patent"), for EK35 and EnviroKleen. On June 8, 2006, prior to the issuance of the patents, Midwest sent Soilworks a letter informing it of the pending patent applications, expressing concern that Durasoil may infringe the patents when issued, and requesting that Soilworks review the claims in the patent applications in an effort to resolve any issues regarding the sale of Durasoil. Soilworks responded ten days later, stating that it was not aware of any reason why the sale of Durasoil would infringe Midwest's

patent rights. On July 27, 2006, Midwest sent letters to one of Soilworks' customers, Polar Supply Company ("Polar"), regarding possible infringement of the '266 Patent ("Polar Letters"). Midwest also issued a press release in July 2006 regarding its patents ("Press Release").

Soilworks then commenced this action for injunctive relief and damages. Soilworks asserts the following claims: false representation under the Lanham Act, declaratory judgment for patent invalidity and noninfringement, misappropriation of goodwill, tortious interference with business relationship and expectancy, and common law unfair competition. Dkt. ##1, 22. Midwest filed a counterclaim asserting declaratory judgment, Lanham Act, and state law claims. Specifically, Midwest asserts claims for trademark infringement, false designation of origin, unfair competition, and false advertising under the Lanham Act, declaratory judgment for patent validity and infringement, common law unfair competition, and unjust enrichment. Dkt. ##16, 35.

The parties have filed motions for summary judgment. Dkt. ##78-79. Midwest seeks summary judgment on all of its claims except unjust enrichment and declaratory judgment for infringement, and on all of Soilworks' claims. Dkt. #78 at 2-3 & n.1. Soilworks seeks summary judgment on all of Midwest's claims. Dkt. #79 at 1. For reasons stated below, the Court will grant the motions in part and deny them in part.[1]

## I.    Summary Judgment Standard.

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter

---

[1]The parties' requests for oral argument are denied because they have fully briefed the issues (*see* Dkt. ##78-79, 88-89, 91-92) and oral argument will not aid the Court's decision. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. Soilworks' Lanham Act Claim for False Representation (Count I).

Soilworks asserts a claim for false representation under the Lanham Act, 15 U.S.C. § 1125(a). Dkt. #1 ¶¶ 15-19. To prevail on such a claim, the plaintiff must show that (1) a false or misleading statement of fact was made about a product, (2) the statement was made in a commercial advertisement, (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience, (4) the deception was material, in that it was likely to influence purchasing decisions, (5) the defendant caused the statement to enter interstate commerce, and (6) the plaintiff has been or is likely to be injured as a result of the statement, either by direct loss of sales or by a lessening of the goodwill associated with its products. *See* 15 U.S.C. § 1125(a)(1)(B); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *Newcal Indus., Inc. v. IKON Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008).

Citing the Federal Circuit's decision in *Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340 (Fed. Cir. 1999), the parties agree that because the alleged false representations were made by Midwest in support of its patent rights, Soilworks must also show bad faith on the part of Midwest. Dkt. ##78-2 at 18, 89 at 12. *Zenith* added a bad faith requirement to Lanham Act claims asserted against patentees in order to "give effect both to the rights of patentees as protected by the patent laws under normal circumstances, and to the salutary purposes of the Lanham Act to promote fair competition in the marketplace." 182 F.3d at 1353-54. This Circuit recently has adopted the holding in *Zenith*. *See Fisher Tool Co. v. Gillet Outillage*, --- F.3d ---, 2008 WL 2574505, at *3 (9th Cir. June 30, 2008).

In seeking to eliminate the false representation claim by summary judgment, Midwest states that the claim is based on the two identical Polar Letters, one sent to Polar's president and the other to its sales manager. Dkt. ##78-2 at 18, 80 ¶ 72, 91 at 10. The letters informed

Polar of the issuance of the '266 Patent and that Midwest had "invented the category of synthetic organic dust control agents, more commonly known as EK35® and EnviroKleen®." Dkt. ##80-14, 80-15. The letters then stated:

> There are a number of imitators that claim to be synthetic organic dust control agents; however, none of those competitors can have the formulation or method as that of EK35® or EnviroKleen®. The granting of the U.S. Patent now allows Midwest to pursue those who make, use, sell, offer for sale and/or import knock-off or imitators of EK35® or EnviroKleen®.

*Id.*

According to Midwest, the letters simply advised Polar about the issuance of the '266 Patent and Midwest's ability to prosecute infringers. The letters do not constitute bad faith as a matter of law, Midwest contends, because they were "entirely consistent with [Midwest's] right to inform a potential infringer of the existence and scope of its patents[.]" Dkt. ##78-2 at 19-20, 91 at 11. Midwest further contends that the statements made in the letters were not legally or factually inaccurate and that the letters were not published sufficiently to constitute a commercial advertisement for purposes of the false representation claim. Dkt. #78-2.

Soilworks asserts that its claim is not based solely on the Polar Letters. Dkt. #90 ¶ 72. Soilworks asserts that Midwest represented in its Press Release that competitors could not design around Midwest's patents and Midwest therefore was the exclusive source of synthetic organic dust control products. Soilworks argues that these statements are indicative of bad faith under *Zenith*, are false or misleading, and clearly were made in a commercial advertisement. Dkt. #89 at 11-15. Midwest does not address these arguments in its reply.

## A.    Bad Faith.

*Zenith* addressed two types of marketplace statements by patentees: those alleging infringement of the patent and those alleging that competitors cannot design around the patent. *Zenith* made clear that "[b]oth statements, if made in bad faith, are damaging to competition and are not the type of statements protected by the patent laws." 182 F.3d at 1354. The latter kind of statements – known as "exclusive source" statements – are "inherently suspect." *Id.* "They are suspect not only because with sufficient effort it is likely

that most patents can be designed around, but also because such a statement appears nearly impossible to confirm *a priori*." *Id.*

Midwest's Press Release reasonably can be construed as making exclusive source statements. The heading of the publication announces the issuance of Midwest's patents and states that Midwest has gained "exclusive control" over the synthetic organic dust control category of products. Dkt. #79-4 at 4. The fourth paragraph states that Midwest has "secured *exclusive rights* to the products and methods that define the [synthetic organic dust control] category" and that Midwest's patents "provide it with the *exclusive right* to manufacture and sell synthetic organic soil stabilization and dust suppressant technology[.]" *Id.* (emphasis added). The next paragraph suggests that competitors cannot design around the patents: "Midwest's competitors may claim to offer synthetic organic dust control technology, but only Midwest can offer the products and methods that define this technology. Those competitors are either not supplying synthetic organic dust control technology . . . or they are infringing Midwest's patents." *Id.*

A patentee who "exaggerates the scope and validity of his patent, thus creating the false impression that the [patentee] is the exclusive source of [a] product, may overstep the boundaries set in the Lanham Act." *Mitsubishi Elec. Corp. v. IMS Tech., Inc.*, No. 96 C 499, 1997 WL 630187, at *8 (N.D. Ill. Sept. 30, 1997); *see William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 257-58 (9th Cir. 1995) ("'[T]he Lanham Act encompasses more than blatant falsehoods. It embraces innuendo, indirect intimations, and ambiguous suggestions evidenced by the consuming public's misapprehension of the hard facts underlying an advertisement.'") (citation omitted). Construed in Soilworks' favor, Midwest's Press Release can be interpreted as creating the impression that Midwest is the exclusive source of synthetic organic dust control products. Midwest's argument that there is no evidence of bad faith on its part is therefore without merit. *See Zenith,* 182 F.3d at 1354; *see also Newcal*, 513 F.3d at 1054 ("[T]he question of IKON's knowledge and intent is a factual question."); *Braxton-Secret v. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985) ("Questions involving a person's state of mind . . . are generally factual issues inappropriate for resolution by

1 summary judgment.").[2]

2 Relying on *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367,
3 1375 (Fed. Cir. 2004), Midwest contends that "[t]he bad faith standard of *Zenith* cannot be
4 satisfied 'in the absence of a showing that the claims asserted were objectively baseless.'"
5 Dkt. #78-2 at 19. *Globetrotter*, however, does not control this case. *See Collegenet, Inc. v.*
6 *XAP Corp.*, No. CV-03-1229-HU, 2004 WL 2303506, at *12 (D. Or. Oct. 12, 2004). The
7 statements at issue in *Globetrotter* were pre-litigation communications made to an alleged
8 infringer. 362 F.3d at 1368, 1370; *see also GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d
9 1369, 1371, 1374 (Fed. Cir. 2007) (patentee "gave notice of its patent rights and its intent to
10 enforce them"). *Globetrotter* expressly declined to decide "whether the objectively baseless
11 standard applies to statements in the context of publicizing a patent through means other
12 than pre-litigation communications." 362 F.3d at 1377 n.9. The representations in
13 Midwest's Press Release, like those at issue in *Zenith*, reasonably can be construed as
14 marketplace statements suggesting that competitors are incapable of designing around
15 Midwest's patents. *See Zenith*, 182 F.3d at 1343-44, 1349. "*Globetrotter*'s objectively
16 baseless standard does not apply to [this type of] marketplace conduct[.]" *Collegenet*, 2004
17 WL 2303506, at *14.

18 **B. Falsity.**

19 Soilworks argues that the exclusive source statements contained in the Press Release
20 were not only made in bad faith, but also are false or misleading. Dkt. #89 at 15. Midwest
21 does not address this argument in its reply. *See* Dkt. #91. Nor has Midwest otherwise
22 presented evidence showing that competitors are in fact incapable of designing around its
23 patents. Midwest has therefore failed to demonstrate the absence of a genuine issue of
24 material fact with respect to this element of Soilworks' false representation claim. *See*
25 *Finnsugar Bioproducts, Inc. v. Amalgamated Sugar Co.*, No. 97 C 8746, 2002 WL
26 31207213, at *1 n.1 (N.D. Ill. Oct. 2, 2002) (noting that exclusive source statements made

27 _____

28 [2]This conclusion also disposes of Midwest's argument that Soilworks' state law
claims similarly are barred by an inability to show bad faith. *See* Dkt. #78-2 at 21-22.

to potential customers "violate the Lanham Act because they create the false impression that the patent holder is the exclusive source of a product and an alleged infringer is unable to design around a patent").

## C. Commercial Advertisement.

Soilworks argues that the Press Release was disseminated sufficiently to the relevant purchasing public to constitute a commercial advertisement for purposes of the false representation claim. Dkt. #89 at 15. The Court agrees. To satisfy the commercial advertisement element, "representations need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotion[.]'" *Newcal*, 513 F.3d at 1054 (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999)). Midwest does not dispute that the Press Release promoted its products to the soil erosion and dust control industry at large.

## D. False Representation Summary.

Midwest's Press Release constitutes a commercial advertisement. There are triable issues as to whether statements contained in the Press Release were made in bad faith and are false. Midwest does not contend that the other elements of the false representation claim cannot be met. The Court accordingly will deny Midwest's request for summary judgment on Count I of Soilworks' complaint.

## III. Soilworks' Misappropriation of Goodwill Claim (Count III).

Soilworks asserts a claim for misappropriation of goodwill in count three of the complaint. Dkt. #1 ¶¶ 24-26. Midwest previously sought dismissal of the claim on the ground that it is not an independent cause of action under Arizona law. Dkt. #8 at 15. Soilworks responded that it intended to bring the claim under the Lanham Act. Dkt. #11 at 16. Rather than dismissing the claim with leave to amend, the Court construed the claim as part of Soilworks' Lanham Act claim asserted in Count I of the complaint. Dkt. #13 at 5.

Midwest notes in its summary judgment motion that misappropriation of goodwill is not a separate cause of action under the Lanham Act. Dkt. #78-2 at 18 n.4. Soilworks does not address this argument in its response. *See* Dkt. #89.

Misappropriation of goodwill is simply "an element of trademark, trade dress, and unfair/deceptive claims; it is not a claim in and of itself." *Rainbow Play Sys., Inc. v. Groundscape Techs., LLC*, 364 F. Supp. 2d 1026, 1039 (D. Minn. 2005); *see Playboy Enters., Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1025 (9th Cir. 2004) (trademark infringement results in the misappropriation of the mark's goodwill); *Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1057 (9th Cir. 1999) (same). The Court accordingly will grant summary judgment in favor of Midwest on Count III of Soilworks' complaint.

**IV. Soilworks' Tortious Interference Claim (Count IV).**

Soilworks asserts a claim for tortious interference with business relationship and expectancy. Dkt. #1 ¶¶ 27-30. To establish tortious interference, Soilworks must show (1) the existence of a valid business relationship or expectancy, (2) Midwest's knowledge of the relationship or expectancy, (3) intentional and improper interference by Midwest causing a breach of the relationship or expectancy, and (4) resulting damage to Soilworks. *See Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bur. of Maricopa County, Inc.*, 637 P.2d 733, 740 (Ariz. 1981); *Wagonseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1043 (Ariz. 1985), *superseded in other respects by* A.R.S. § 23-1501.

Midwest does not dispute that there was a valid business relationship between Soilworks and Polar and that Midwest had knowledge of the relationship. Rather, Midwest argues that Soilworks has presented no evidence that Midwest interfered with the relationship, that Midwest's conduct was improper, or that Soilworks has suffered any harm. Dkt. #78-2.

With respect to the element of harm, Midwest claims that Soilworks cannot articulate, let alone prove, the alleged damages it has suffered as a result of the Polar Letters. *Id.* at 23. Midwest states that Soilworks' corporate officers, Chad and Dorian Falkenberg, have provided no factual support for the allegation that Soilworks has been harmed by the Polar Letters. *Id.* (citing Dkt. #80 ¶¶ 77-85). Midwest further states that Soilworks has produced no documents or other information in support of its alleged damages. *Id.*

Soilworks does not dispute that Dorian Falkenberg testified that she does not know whether Soilworks has lost any business because of the Polar Letters. Dkt. ##80, 90 ¶¶ 80. Relying solely on the testimony of Chad Falkenberg, Soilworks asserts that the Polar Letters caused it to lose "several bids and/or sales of its product to Polar," including a bid by the Alaska Department of Transportation ("ADOT"). Dkt. #89 at 16. But Mr. Falkenberg admitted in his deposition that he did not know whether the ADOT bid was lost because of the Polar Letters. Dkt. #80-16 at 35. Mr. Falkenberg was unable to articulate any facts regarding the ADOT bid or any other bid or sale allegedly lost as a result of Midwest's conduct. *Id.* at 27-35. Nor was he able to estimate the amount of damages allegedly caused by Midwest's conduct. *Id.* at 29-31.

To prevail on its tortious interference claim, Soilworks must establish its damages with "reasonable certainty." *S. Union Co. v. S.W. Gas Corp.*, 180 F. Supp. 2d 1021, 1050 (D. Ariz. 2002) (citing *Rancho Pescado, Inc. v. N.W. Mut. Life Ins. Co.*, 680 P.2d 1235, 1244-47 (Ariz. Ct. App. 1984)). "Damages that are speculative, remote or uncertain may not form the basis of a judgment." *Coury Bros. Ranches, Inc. v. Ellsworth*, 446 P.2d 458, 464 (Ariz. 1968); *see Eastman Kodak Co. v. S. Photo Materials Co.*, 273 U.S. 359, 379 (1927) (a "reasonable basis of computation" must exist to award damages); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993) ("[D]amages which result from a tort must be established with reasonable certainty."). Soilworks' evidence falls far short of meeting the reasonable certainty standard. The Court accordingly will grant summary judgment in favor of Midwest on Count IV of Soilworks' complaint.[3]

## V.     Soilworks' Unfair Competition Claim (Count VI).[4]

Midwest seeks summary judgment on Soilworks' unfair competition claim. Dkt. #78-2 at 24. The common law doctrine of unfair competition "encompasses several tort theories, such as trademark infringement, false advertising, 'palming off,' and

---

[3]Given this ruling, the Court need not address Midwest's arguments that the Polar Letters were not improper and did not interfere with Soilworks' business relationship.

[4]Soilworks' complaint does not contain a Count V. *See* Dkt. #1.

misappropriation." *Fairway Const., Inc. v. Ahern*, 970 P.2d 954, 956 (Ariz. Ct. App. 1998). Midwest does not address these torts, but instead merely asserts that "Soilworks cannot demonstrate that a patentee's notification of its intellectual property rights and intent to enforce them, such as the [Polar Letters], constitutes unfair competition." Dkt. #78-2 at 24.

As the party seeking summary judgment, Midwest has the initial burden of informing the Court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 322. Midwest has not met this burden. The Court accordingly will deny Midwest's request for summary judgment on Count VI of Soilworks' complaint.

**VI.    Midwest's Lanham Act Claims for Trademark Infringement, False Designation of Origin, and Unfair Competition (Count I).**

Midwest asserts three Lanham Act claims in Count I of its counterclaim: trademark infringement, false designation of origin, and unfair competition. Dkt. #16 ¶¶ 17-26. According to the counterclaim, Midwest's claims arise from Soilworks' alleged use of the following trademarks: Soil-Sement, EnviroKleen, EK35, Road Oyl, Road Pro NT, Haul Road Dust Control, Dustfyghter, Diamond Dr, Arena Rx, Base-Bldr, and ROAD-BLDR. Dkt. #16 ¶¶ 7, 18-20. Soilworks argues that it is entitled to summary judgment because Midwest has presented no evidence that Soilworks used any of these marks in commerce. Dkt. #79 at 6. In response, Midwest claims only that Soilworks has used the Soil-Sement mark. Dkt. #88 at 7; *see* Dkt. #78-2 at 12. The Court accordingly will grant summary judgment in favor of Soilworks with respect to the other marks. *See* 15 U.S.C. §§ 1114(1), 1125(a)(1) (requiring commercial use of mark); *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005) (Lanham Act claims "are subject to a commercial use requirement"); *see also* Fed. R. Civ. P. 56(e) (the party opposing summary judgment may not rest upon the mere allegations of the party's pleadings, but "must set forth specific facts showing that there is a genuine issue for trial").

Midwest seeks summary judgment on its Lanham Act claims. It is undisputed that Midwest's Soil-Sement mark is a valid, protectable trademark. Dkt. ##80, 90 ¶¶ 6. It also

is undisputed that Soilworks, without Midwest's permission, uses the phrase "soil sement" in keyword advertising on an Internet search engine and uses variations of the phrase in metatags for its websites. *Id.* ¶¶ 38-43. Keywords allow advertisers to target individuals by linking advertisements or websites to pre-identified terms. Persons using those terms in an Internet search will be presented with advertisements for Soilworks products. *See Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1045 (9th Cir. 1999). Metatags are unseen computer code used by search engines to determine the content of websites in order to direct searchers to relevant sites. *Id.* When consumers put "soil sement" or variations of that phrase into an Internet search engine, the metatags will result in the search engine identifying Soilworks websites as part of the search results. In its use of keywords and metatags, Soilworks thus capitalizes on Midwest's "Soil-Sement" trademark to attract clients to its websites. Courts have held that such use constitutes commercial use for purposes of the Lanham Act. *See id.* at 1065 (metatags); *Playboy Enters., Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1024-26 (9th Cir. 2004) (keywords); *see also* Dkt. #78-2 at 12 & n.2 (citing cases).

Although "[t]he core element of trademark infringement is whether the similarity of the marks is likely to confuse customers about the source of the products," *Interstellar Starship Servs., Ltd., v. Epix, Inc.*, 304 F.3d 936, 942 (9th Cir. 2002), the Ninth Circuit and other courts have recognized a variation of trademark infringement that does not require such confusion. "Under the 'initial interest confusion' theory of trademark liability, 'source confusion' need not occur[.]" *Storus Corp. v. Aroa Mktg., Inc.*, No. C-06-2454 MMC, 2008 WL 449835, at *4 (N.D. Cal. Feb. 15, 2008). Rather, initial interest confusion occurs when the defendant uses the plaintiff's mark "in a manner calculated 'to capture initial consumer attention[.]" *Brookfield*, 174 F.3d at 1062 (quoting *Dr. Seuss Enters. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1405 (9th Cir. 1997)). Once the consumer's attention is captured, the consumer might well realize that he or she has arrived at the defendant's (and not the plaintiff's) website, and yet might stay there and purchase the defendant's similar products. Although a sale procured in this manner does not ultimately result from the consumer's

confusion as to the source of the products, it is procured nonetheless through the defendant's unfair use of the plaintiff's trademark and associated goodwill. Thus, "the wrongful act is the defendant's use of the plaintiff's mark to 'divert' consumers to a website that 'consumers know' is not [the plaintiff's] website." *Storus*, 2008 WL 449835, at *4 (quoting *Brookfield*, 174 F.3d at 1062); *see Playboy Enters.*, 354 F.3d at 1025 ("Although dispelled before an actual sale occurs, initial interest confusion impermissibly capitalizes on the goodwill associated with a mark and is therefore actionable trademark infringement."); *see also Brookfield*, 174 F.3d at 1057, 1062-65.[5]

Ninth Circuit cases have varied in their analysis of how initial interest confusion is to be established in metatag and keyword cases. The court in *Brookfield* stated that the traditional eight-factor test for assessing consumer confusion – commonly known as the *Sleekcraft* factors – "is not well-suited for analyzing the metatags issue." 174 F.3d at 1062 n. 24. The court did not apply the *Sleekcraft* analysis in its metatag ruling, but instead held that "the Lanham Act bars [a defendant] from including in its metatag any term confusingly similar with [the plaintiff's] marks." *Id*. at 1065. A later Ninth Circuit case applied the traditional *Sleekcraft* analysis in a keyword initial interest confusion case. *See Playboy Enters.*, 354 F.3d at 1026-29. Although this Court agrees that the *Sleekcraft* analysis is not perfectly suited to analyzing initial interest confusion in metatag and keyword cases, some of the factors clearly are relevant and helpful.

The *Sleekcraft* factors are: (1) the similarity of the marks, (2) the relatedness of the goods, (3) the marketing channels used, (4) the defendant's intent in selecting the mark, (5) the strength of the mark, (6) the degree of care likely to be exercised by purchasers, (7) evidence of actual confusion, and (8) the likelihood of expansion in product lines. *See Interstellar*, 304 F.3d at 942 (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 34, 346 (9th Cir. 1979)). "This eight-factor test is pliant, and the relative import of each factor is case

---

[5] *Brookfield*'s adoption of the initial interest confusion theory in metatag cases has been criticized. *See Playboy Enters.,* 354 F.3d at 1034-36 (Berzon, J., concurring). For now, however, it is the law of the circuit and must be followed by this Court. *See Storus*, 2008 WL 449835, at *4 n.6.

specific." *Id.* (citing *Brookfield*, 174 F.3d at 1054).  For example, and significantly for this case, the three most important factors in the context of the Internet are the similarity of the marks, the relatedness of the goods, and the use of the Internet as a marketing channel. *See id.* (citing *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000)); *Brookfield*, 174 F.3d at 1054 n.16.

The first factor of the "internet trinity," similarity of the marks, weighs in favor of Midwest in this case.  Soilworks uses the phrase "soil sement" in keyword advertising on the search engine Google.  Dkt. ##80, 90 ¶ 38.  The phrase "soil sement" is nearly identical to Midwest's Soil-Sement mark.  Soilworks also uses the phrase "sement soil" in a metatag for its website www.soiltac.com, and the words "sement" and "soil" in close proximity in a metatag for its website www.soilworks.com.  *Id.* ¶¶ 40-41.  These terms are similar to Midwest's Soil-Sement mark in spelling, sound, and meaning.  When used in Internet searches as metatags, they clearly are designed to divert persons interested in Midwest's mark to Soilworks' websites.

The second factor concerns the relatedness of the parties' goods.  It is undisputed that Soilworks and Midwest market and sell competing products.  Dkt. #80, 90 ¶¶ 28-29.

The third factor considers the marketing channels used.  Soilworks and Midwest both use the Internet to market their products.  *Id.* ¶¶ 30-31.

These factors show that Soilworks' use of "soil sement" and similar phrases in keywords and metatags has the effect of connecting web customers familiar with Midwest's Soil-Sement mark to Soilworks' websites.  Soilworks is using the Midwest's mark, in the Internet where Midwest does business, to divert potential customers to Soilworks' websites.  Thus, although the *Sleekcraft* factors are designed primarily to evaluate the likelihood of source confusion – a type of confusion not necessary for initial interest confusion cases – the Court finds these factors relevant in showing the effect of Soilworks' conduct.  It is precisely the effect proscribed by *Brookfield* – the use of Midwest's mark to divert initial consumer interest to Soilworks and its products.

Soilworks does not explicitly address these or other *Sleekcraft* factors.  Rather,

Soilworks relies on *Brookfield* and *Designer Skin, LLC v. S & L Vitamins, Inc.*, No. CV-05-3699-PHX-JAT, 2008 WL 2116646 (D. Ariz. May 20, 2008), for the proposition that the "internet trinity" standard does not apply to "metatag/keyword cases" and that the correct likelihood of confusion standard requires a showing of deception. Dkt. ##89 at 4-5, 92 at 2-4. The Court does not agree that *Brookfield* requires a showing of deception. The facts of *Brookfield*, where one company used another company's trademark "MovieBuff" as a metatag, did not involve deception of consumers. 174 F.3d at 1062-65. And as noted above, the wrong in a metatag initial interest confusion case is not that the consumer is deceived into believing that he is purchasing the plaintiff's products when in fact he is purchasing defendant's, but instead is the diversion of the consumer's initial attention to the defendant's website using the plaintiff's trademark and goodwill. When accomplished through the use of key words or metatags on the Internet, this wrongful conduct may involve no deception of the consumer. The consumer is simply led to the defendant's website through the unseen keywords and metatags the defendant has purchased on the web.[6]

Soilworks emphasizes that Midwest has presented no evidence of actual confusion on the part of consumers. Dkt. ##89 at 4-5, 92 at 2-4. But the Court finds the "actual confusion" prong of the *Sleekcraft* analysis to be less relevant in a metatag initial interest confusion case. As noted above, the wrong in such a case does not result from actual consumer confusion over the source of products, but from the diversion of potential customers to the defendant's site through the use of the plaintiff's mark. To the extent that the doctrine adopted in *Brookfield* requires a showing of initial confusion – that the consumer's initial attention was diverted to the defendant's website through confusion – the Court concludes that it has been established here. A person typing "soil sement" into a search engine presumably would be somewhat familiar with Midwest's product and would

---

[6] In *Designer Skin*, "S & L Vitamins use[d] Designer Skin's marks to truthfully inform internet searchers where they can find Designer Skin's products." 2008 WL 2116646, at *4. Soilworks does not contend that its use of the "soil sement" mark "invites [Midwest's] customers to purchase [Midwest's] products." *Id.* Rather, Soilworks clearly uses the mark to attract customers to Soilworks' websites. *Designer Skin* is therefore distinguishable.

be looking for the product or its maker, and yet would be directed by the keywords and metatags to Soilworks' websites. The confusion – thinking one would be connected to Midwest when in fact Soilworks' websites also appear in the search results – would entirely be caused by Soilworks' use of Midwest's mark.

The remaining *Sleekcraft* factors – Soilworks' intent, the strength of Midwest's mark, the degree of consumer care, and the likelihood of product expansion – either favor Midwest or are of little import in the initial interest confusion analysis. Soilworks admits that its intent in using the phrase "soil sement" on the Internet was to trade off Midwest's goodwill in its Soil-Sement mark by diverting potential customers to Soilworks' Soiltac product. Dkt. ##80, 90 ¶¶ 39, 42.

With respect to the strength of the Soil-Sement mark, Midwest's federal registration of the mark "is conclusive evidence that the mark is non-descriptive or has acquired secondary meaning." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 606 (9th Cir. 2005). Moreover, even if the Soil-Sement mark were found to be relatively weak, this factor is of "diminished importance" because the parties' products are closely related and the marks used are nearly identical. *Brookfield*, 174 F.3d at 1058-59.

The degree of consumer care is not dispositive because this factor considers whether consumers are likely to avoid source confusion through the exercise of care, a consideration not directly relevant in an initial interest confusion case. And the remaining factor, likelihood of product expansion, is "relatively unimportant" because Midwest and Soilworks are direct competitors. *Id.* at 1060.

In sum, the undisputed evidence in this case establishes that Soilworks diverts the initial attention of potential Internet customers to its websites by using Midwest's Soil-Sement trademark in keywords and metatags. Because there is no dispute that Soil-Sement is a valid, protectable mark and that Soilworks uses the mark in commerce, the Court will grant summary judgment in Midwest's favor with respect to liability – not damages or other relief – on the Lanham Act claims asserted in Count I of the counterclaim with respect to Soil-Sement. *See Flow Control*, 278 F. Supp. 2d at 1199 (granting summary judgment in

favor of the mark holder because "metatagging a website with a competitor's mark creates 'initial interest confusion' in violation of the Lanham Act") (citing *Brookfield*, 174 F.3d at 1057, 1063); *Horphag Research Ltd. v. Pelligrini*, 337 F.3d 1036, 1040 (9th Cir. 2003) ("Because the [defendant] admits to using Horphag's Pycnogenol trademark and specifically admits to using the Pycnogenol mark in the meta-tags for his websites, his use satisfies the terms of trademark infringement in the first instance."). As noted above, the Court will grant summary judgment in favor of Soilworks with respect to the other marks alleged in Midwest's counterclaim.[7]

## VII. Midwest's Lanham Act Claim for False Advertising (Count II).

Midwest asserts a Lanham Act claim for false advertising in Count II of its counterclaim. Dkt. #16 ¶¶ 27-32. Midwest contends that Soilworks has falsely advertised that it is the "innovator" and "manufacturer" of Durasoil, that Durasoil is "synthetic" and "oil-sheen free," and that Durasoil is made from "proprietary ingredients" and "revolutionary state-of-the-art innovation." Dkt. ##78-2 at 9-10 & n.3, 88 at 11-13. Soilworks argues that Midwest has failed to present evidence sufficient to establish one or more elements of the claim for false advertising. Dkt. ##79 at 7-11, 89 at 8-11, 92 at 4-11; *see supra* § II (setting forth elements of the claim). The Court will address each alleged false statement.

### A. Soilworks is an Innovator and Durasoil is made from Proprietary Ingredients and Revolutionary State-of-the-Art Innovation.

Soilworks argues that these statements constitute mere "puffery." Dkt. #92 at 7. Puffery "'is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely and is not actionable under [the Lanham Act].'" *Southland*, 108 F.3d at 1145 (citation omitted). "While product superiority claims that are vague or highly subjective often amount to nonactionable puffery, 'misdescriptions of specific or absolute

---

[7]Soilworks asserts that Midwest has used Soilworks' trademarks in keyword advertising without Soilworks' consent. Dkt. #89 at 7. Soilworks asserts that the Court cannot hold it "liable for conduct seemingly no different than that engaged in by Midwest." *Id.* But Soilworks made no claim against Midwest for this alleged conduct, and the fact that Midwest may have violated the Lanham Act does not somehow excuse Soilworks' violation.

characteristics of a product are actionable.'" *Id.* (quoting *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990)). "[T]he determination of whether an alleged misrepresentation 'is a statement of fact' or is instead 'mere puffery' is a legal question[.]" *Newcal*, 513 F.3d at 1053.

The Court concludes that Soilworks' statements are "general, vague and unspecified assertions, constituting mere 'puffery' upon which a reasonable consumer could not rely." *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 379 (9th Cir. 2003). Courts have found that the word "innovative" is "not specific, not concrete, not measurable, and therefore puffery." *Rosenthal Collins Group, LLC v. Trading Techs. Int'l, Inc.*, No. 05 C 4088, 2005 WL 3557947, at *10 (N.D. Ill. Dec. 26, 2005). Courts have also held that "the generalized and vague statements of product superiority such as . . . 'more innovative than competing machines' are non-actionable puffery." *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008). This Court similarly concludes that references to "proprietary ingredients" are sufficiently imprecise to constitute puffery. *Cf. Hilderman v. Enea TekSci, Inc.*, 551 F. Supp. 2d 1183, 1199 (S.D. Cal. 2008) (equating use of "proprietary" with "vague puffery" in trade secret claim). The Court will grant summary judgment in favor of Soilworks with respect to this part of Midwest's false advertising claim.[8]

**B.      Soilworks' is a Manufacturer of Durasoil.**

Soilworks states on its website that it is a "manufacturer" of Durasoil. Dkt. ##80-19, 80-20, 80-21. Midwest contends that this statement constitutes false advertising. Dkt. ##88 at 8-9, 88-2 ¶ 30. "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland*, 108 F.3d at 1139.

Soilworks argues that Midwest has presented no evidence that its advertisement is literally false. Dkt. #79 at 9-10. Soilworks states that by Midwest's own definition of the

---

[8]Given this ruling, the Court need not address Soilworks' late disclosure argument. *See* Dkt. #92 at 6-7.

term "manufacturer," Soilworks is a manufacturer of Durasoil because the product is blended both by Soilworks and its suppliers pursuant to formulas provided by Soilworks. Dkt. #79-2 ¶¶ 31-37. Midwest counters that even if blending constitutes manufacturing, the evidence shows that Durasoil is not a blended product. Dkt. ##88 at 8-9, 88-2 ¶¶ 15, 29-37.

The evidence on this issue is conflicting. Soilworks' patent claims chart for Durasoil states that "Durasoil is not a blend" (*see* Dkt. #88-7 at 31), while the material safety data sheet for Durasoil states that the "[p]roduct [is] a blend" (*see* Dkt. #80-17 at 1). Soilworks' general foreman has testified that Durasoil has not been blended since he started working for Soilworks in March 2006. Dkt. #88-5 at 12. Chad and Dorian Falkenberg have testified that Durasoil has been blended at times. Dkt. ##79-2 ¶¶ 31, 36.

"Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255; *see T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether Soilworks is in fact a manufacturer of Durasoil is an issue for the jury to determine.

Soilworks further argues that Midwest has presented no evidence with respect to the deception and materiality elements of the false advertising claim. Dkt. #79 at 10-11. In response, Midwest asserts generally that Internet advertising is relied on by both consumers and distributors of dust control products. Dkt. #88 at 14. While this assertion undoubtedly is true, it says nothing about consumers' and distributors' specific reliance on Soilworks' statement that it is a manufacturer of Durasoil. Midwest also states that it "has explained in its summary judgment papers that the attributes of its Durasoil product that Soilworks falsely advertises are often considered important to consumers when selecting a dust control product." *Id.* But Midwest's summary judgment papers address only the statements that Durasoil is synthetic and oil-sheen free. *See* Dkt. ##78-2 at 16-17, 91 at 7-10. Midwest has failed to demonstrate a triable issue as to whether purchasers of dust control products were likely to be deceived by, or relied upon, Soilworks' statement that it is a manufacturer of Durasoil.

Midwest relies on *Southland* for the proposition that deception and materiality are

presumed because the statement is literally false and intentionally made. Dkt. #88 at 14. Unlike *Southland*, where the Ninth Circuit stated that "publication of deliberately false *comparative* claims gives rise to a presumption of actual deception and reliance,' this case does not involve comparative advertising[.]" *Societe Civile Succession Richard Guino v. Beseder Inc.*, No. CV 03-1310-PHX-MHM, 2007 WL 3238703, at *4 (D. Ariz. Oct. 31, 2007) (quoting *Southland*, 108 F.3d at 1146) (emphasis in original). Nor has Midwest shown the expenditure by Soilworks "'of substantial funds in an effort to deceive consumers and influence their purchasing decisions[.]'" *Southland*, 108 F.3d at 1146 (quoting *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1040-41 (9th Cir. 1986)). Midwest therefore is not entitled to "a presumption that consumers are, in fact, being deceived." *Id.*

With respect to the statement that Soilworks is a manufacturer of Durasoil, the Court will grant summary judgment in favor of Soilworks to the extent Midwest seeks an award of damages. *See* Dkt. #16 ¶ 31. The Court will deny summary judgment to the extent Midwest seeks injunctive relief. *See id.* ¶ 32. When plaintiffs fail to raise a triable issue as to causation and injury, their Lanham Act claim is still viable to the extent it seeks an injunction. *See Southland Sod*, 108 F.3d at 1145-46.

## C. Durasoil is Synthetic.

Soilworks advertises on its website and in other marketing materials that Durasoil is "synthetic." Dkt. ##80-19, 80-20, 80-21. Midwest asserts that this statement is false or misleading. Dkt. ##78-2 at 16, 80 ¶ 44. While Midwest has presented evidence that the synthetic nature of soil erosion and dust control products is important to consumers, *see* Dkt. #80 ¶¶ 55-56, Midwest has presented no evidence, such as consumer surveys, showing that Soilworks' advertisement "has misled, confused, or deceived the consuming public." *Southland*, 108 F.3d at 1140. Thus, to prevail on its claim, Midwest must show that Soilworks' advertisement is literally false. *See id.* Soilworks argues that Midwest has failed to make this showing. Dkt. ##79 at 8, 89 at 9-10. The Court agrees.

Midwest does not define what constitutes a "synthetic" product generally or in the soil erosion and dust control industry. Rather, Midwest claims that Durasoil is not synthetic

because Chad Falkenberg testified that he does not know if it is synthetic and one of Soilworks' suppliers purportedly would not consider it to be synthetic.  Dkt. ##78-2 at 16, 85 ¶¶ 45-48.

Mr. Falkenberg specifically testified that his definition of "synthetic" is something that is not "natural or naturally occurring."  Dkt. #85-2 at 21.  Mr. Falkenberg further testified that under this definition, Durasoil is synthetic because it contains a refined, non-natural product.  *Id.*  Midwest does not dispute the definition provided by Mr. Falkenberg, and it comports with common English usage.  *See Merriam-Webster OnLine Dictionary*, http://www.merriam-webster.com/dictionary (defining "synthetic" as "something resulting from synthesis rather than occurring naturally").  Nor does Midwest dispute that Durasoil contains the refined product identified by Mr. Falkenberg.  Contrary to Midwest's assertion, Mr. Falkenberg's testimony actually supports a finding that Durasoil is synthetic.  The fact that one of  Soilworks' suppliers may believe that Durasoil does not contain a "synthetic isoalkane," *see* Dkt. 85-2 at 26, does not change this conclusion.

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see T.W. Elec. Serv.*, 809 F.2d at 630 (the nonmoving party "must produce at least some 'significant probative evidence tending to support the complaint'") (quoting *Anderson*, 447 U.S. at 256).  Midwest has failed to demonstrate a triable issue as to the falsity of the statement that Durasoil is synthetic.  The Court accordingly will grant summary judgment in favor of Soilworks with respect to this issue.

### D.    Durasoil is Oil-Sheen Free.

Soilworks states in a product brochure that Durasoil is "oil-sheen free," which means it does not discolor or leave a film or sheen on the surface of water.  Dkt. #80 ¶ 50; *see* 40 C.F.R. Pt. 435, Subpt. A, App. 1(1).  Midwest contends that Soilworks' failure to test Durasoil to confirm that is in fact oil-sheen free renders Soilworks' statement misleading.  Dkt. ##78-2 at 16, 80 ¶¶ 51-53.  But Midwest has presented no evidence showing that

consumers have been misled, confused, or deceived.

Midwest believes, based on certain materials listed in the material safety data sheet for Durasoil and Midwest's testing of those materials in connection with its own products, that Durasoil is not oil-sheen free and that Soilworks' statement to the contrary is therefore literally false. Dkt. ##78-2 at 16, 80 ¶ 54, 80-5 ¶ 18. Midwest does not describe the nature of the tests it performed on its own products. Nor does Midwest identify the specific materials that purportedly make Durasoil not oil-sheen free.[9]

To avoid summary judgment, Midwest "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 requires Midwest to "come forward with '"specific facts showing that there is a *genuine issue for trial*.'"" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *see T.W. Elec. Serv.*, 809 F.2d at 630. Midwest has not met this burden.

It is undisputed that Midwest has not tested Durasoil to determine whether it is oil-sheen free. Dkt. #80-4 at 13. Midwest's mere belief that Durasoil is not oil-sheen free is insufficient evidence for a jury to find in Midwest's favor. *See Suckow Borax Mines Consol. v. Borax Consol.*, 185 F.2d 196, 203 (9th Cir. 1951) (statements based on "information and belief" are inadequate for purposes of summary judgment). The Court will grant summary judgment in favor of Soilworks with respect to the statement that Durasoil is oil-sheen free.

**VIII. Midwest's Unfair Competition Claim (Count IV).**

The parties agree that Midwest's common law unfair competition claim arises from Soilworks' alleged false advertising and infringement of Midwest's trademarks. *See* Dkt. ##78-2 at 17, 88 at 17-18, 89 at 11. The Court will grant summary judgment in favor of Midwest to the extent the Court has found that Soilworks infringes Midwest's Soil-Sement trademark (*see supra* §§ V-VI). *See also* A.R.S. §§ 44-1451, 44-1452; *Raizk v. Southland Corp.*, 591 P.2d 985, 986 (Ariz. Ct. App. 1978) ("The gist of a claim of [trademark

---

[9]Midwest's Chief Executive Officer, Robert Vitale, testified only that the materials are "severely hydrotreated blah-blah-blah." Dkt. #80-4 at 12.

infringement] is unfair competition."). To the extent Midwest's unfair competition claim is based on Soilworks' alleged false advertising, the Court will grant summary judgment in favor of Soilworks except with respect to the statement that Soilworks is a manufacturer of Durasoil (*see supra* § VII).

## IX. Midwest's Unjust Enrichment Claim (Count V).

Soilworks seeks summary judgment on Midwest's unjust enrichment claim. Dkt. #79 at 12. The essential elements of the claim are an enrichment of Soilworks, an impoverishment of Midwest, a connection between the enrichment and the impoverishment, the absence of justification for the enrichment and impoverishment, and the absence of a legal remedy. *See Cmty. Guardian Bank v. Hamlin*, 898 P.2d 1005, 1008 (Ariz. Ct. App. 1995).

Soilworks contends that Midwest has failed to make a prima facie showing of unjust enrichment because it fails to meet all five elements. Dkt. #79 at 12. Midwest argues that each element is met based on Soilworks' improper use of Midwest's Soil-Sement trademark. Dkt. #88 at 19. Soilworks does not address this argument in its reply. *See* Dkt. #92 at 11. The Court will deny Soilworks' request for summary judgment.

## X. The Declaratory Judgment Claims.

Soilworks seeks summary judgment on Midwest's claims for a declaratory judgment that Durasoil infringes Midwest's patents. Dkt. #79 at 1, 16-17; *see* Dkt. ##16 ¶¶ 33-35, 35 ¶¶ 6-7. Soilworks relies on the report of its expert witness, Edward Funk, for the contention that Durasoil does not infringe Midwest's patents. Dkt. #79 at 16-17 (citing Dkt. #79-2 ¶¶ 45-53). Midwest argues that Mr. Funk's report is inadmissible because it is untimely and Soilworks never disclosed to Midwest that Mr. Funk would opine that Durasoil did not infringe Midwest's patents. Dkt. #88 at 20 (citing Fed. R. Civ. P. 26(a)(2)(B)). Soilworks does not address these arguments in its reply. *See* Dkt. #92.

The Court's Case Management Order, filed May 10, 2007, stated that the parties shall provide "full and complete expert disclosures" as required by Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure "no later than **December 14, 2007**." Dkt. #28 ¶ 5(a)

(emphasis in original). The Court specifically advised the parties, both at the case management conference and in the Case Management Order, that the deadlines were real and that the Court intended to enforce them. *Id.* ¶ 10; *see* Dkt. #65 at 1. Mr. Funk's report is dated May 7, 2008 – almost five months after the expert disclosure deadline and only two days before Soilworks filed its summary judgment motion. Dkt. #79-4 at 26. Soilworks has offered no explanation for the late disclosure. Nor does Soilworks dispute that it never disclosed to Midwest that Mr. Funk would opine that Durasoil does not infringe Midwest's patents. The Court will not grant summary judgment for Soilworks on the basis of Mr. Funk's report.

Midwest seeks summary judgment on its claims for a declaratory judgment that the '266 and '270 Patents are valid. Dkt. #78-2 at 9-10; *see* Dkt. ##16 ¶¶ 33-35, 35 ¶¶ 6-7. "By direction of 35 U.S.C. § 282, an issued patent is presumed valid." *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1737 (2007). "The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282; *see W. Lighting, Inc. v. Smoot-Holman Co.*, 381 F.2d 355, 356 (9th Cir. 1966) (Section 282 "provides for the presumption of the validity of a patent and places the burden of establishing invalidity upon the party asserting it"). The burden is met only if clear and convincing evidence of invalidity is presented. *See Saf-Gard Prods., Inc. v. Serv. Parts, Inc.*, 532 F.2d 1266, 1271 (9th Cir. 1976); *Lisle Corp. v. A.J. Mfg. Co.*, 398 F.3d 1306, 1316 (Fed. Cir. 2005) ("On numerous occasions, this court has recognized that a party challenging a patent's validity has the burden of proving by clear and convincing evidence that the patent is invalid, and that burden does not shift at any time to the patent owner.") (citation omitted).

Soilworks asserts that "based on the prior art already submitted to this Court, the Midwest Patents are obvious and, therefore, invalid." Dkt. #89 at 17. Soilworks does not identify the prior art previously submitted to the Court. Nor does Soilworks explain why such evidence shows that the inventions claimed in Midwest's patents were obvious.

"'[A] district court need not scour the record to make the case of a party,' especially in the context of a patent invalidity claim." *Contech Stormwater Solutions, Inc. v. Baysaver*

*Techs., Inc.*, 534 F. Supp. 2d 616, 627 (D. Md. 2008) (citation omitted). Rather, courts rely on "'the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.'" *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation omitted). Soilworks has "simply failed to produce specific facts showing that there is a genuine issue for trial, especially under a clear and convincing standard." *Contech*, 534 F. Supp. 2d at 627 (citation and internal quotation marks omitted). The Court will grant summary judgment in favor of Midwest on its claims for a declaratory judgment that the '266 and '270 Patents are valid. *See id.* (granting summary judgment for patentee where the alleged infringer failed to establish the scope and meaning of the alleged prior art or how the patents were invalid in light of the prior art).

**IT IS ORDERED:**

1.     The parties' motions for summary judgment (Dkt. ##78-79) are **granted in part** and **denied in part** as follows:

    a.     Summary judgment is denied with respect to Soilworks' claims for false representation (Count I) and unfair competition (Count VI).

    b.     Summary judgment is granted in favor of Midwest with respect to Soilworks' claims for misappropriation of goodwill (Count III) and tortious interference (Count IV).

    c.     Midwest's Lanham Act claims for trademark infringement, false designation of origin, and unfair competition (Count I): Summary judgment is granted in favor of Midwest as to liability regarding the use of the Soil-Sement trademark. Summary judgment is granted in favor of Soilworks with respect to Midwest's other marks.

    d.     Midwest's Lanham Act claim for false advertising (Count II): Summary judgment is granted in favor of Soilworks with respect to the statements that Soilworks is the "innovator" of Durasoil, that Durasoil is "synthetic" and "oil-sheen free," and that Durasoil is made from "proprietary ingredients" and "revolutionary state-of-the-art

- 24 -

innovation." With respect to the statement that Soilworks is a "manufacturer" of Durasoil, summary judgment is granted in favor of Soilworks to the extent Midwest seeks an award of damages and denied to the extent Midwest seeks injunctive relief.

    e.    Midwest's common law unfair competition claim (Count IV): Summary judgment is granted in Midwest's favor to the extent Soilworks infringes the Soil-Sement mark. To the extent Midwest's unfair competition claim is based on Soilworks' alleged false advertising, summary judgment is granted in favor of Soilworks except with respect to the statement that Soilworks is a manufacturer of Durasoil.

    f.    Summary judgment is denied with respect to Midwest's unjust enrichment claim (Count V).

    g.    Summary judgment is granted in favor of Midwest on its claims for a declaratory judgment that the '266 and '270 Patents are valid.

    h.    Summary judgment is denied with respect to Midwest's claims for a declaratory judgment that Soilworks infringes the '266 and '270 Patents.

2.    The Court will set a final pretrial conference by separate order.

DATED this 7th day of August, 2008.


_____
David G. Campbell
United States District Judge