E. Scott Dosek, 012114
John P. Passarelli, 016018 (NE)
KUTAK ROCK LLP
8601 North Scottsdale Road, Suite 300
Scottsdale, AZ 85253-2742
Telephone:  480-429-5000
Facsimile:  480-429-5001
Email:  scott.dosek@kutakrock.com, john.passarelli@kutakrock.com
*Attorneys for Plaintiff/Counterdefendant/Counterclaimant
Soilworks, LLC*

Craig A. Marvinney, 0004951 (OH)
John M. Skeriotis, 0069263 (OH)
BROUSE MCDOWELL
388 S. Main Street, Suite 500
Akron, Ohio 44311-4407
Telephone:  330-535-5711
Facsimile: 330-253-8601
Email:  cmarvinney@brouse.com,  jskeriotis@brouse.com,
*Attorneys for Defendant/Counterclaimant/Counterdefendant
Midwest Industrial Supply, Inc., admitted pro hac vice*

Donald L. Myles, Jr., 007464(AZ)
JONES, SKELTON & HOCHULI, P.L.C.
2901 N. Central Ave., Suite 800
Phoenix, Arizona 85012
Telephone:  602-263-1700
Facsimile: 602-263-1784
Email:  dmyles@jshfirm.com
*Attorney for Defendant/Counterclaimant/Counterclaimant
Midwest Industrial Supply, Inc.*

# UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SOILWORKS, LLC, an Arizona corporation, | NO.: 2:06-CV-2141-DGC |
|     Plaintiff / Counterdefendant / Counterclaimant, | |
| v. | **PARTIES' JOINT PROPOSED FINAL PRETRIAL ORDER** |
| MIDWEST INDUSTRIAL SUPPLY, INC., an Ohio corporation authorized to do business in Arizona, | |
|     Defendant / Counterclaimant / Counterdefendant. | |

4836-1531-1619.1

The following is the Joint Proposed Final Pretrial Order to be considered at the

Final Pretrial Conference set for October 9, 2008 at 4 p.m.

## A.   TRIAL COUNSEL FOR THE PARTIES

**Plaintiff/Counterdefendant/Counterclaimant Soilworks, LLC ("Soilworks"):**

E. Scott Dosek, 012114
KUTAK ROCK LLP
8601 North Scottsdale Road, Suite 300
Scottsdale, AZ 85253-2742
Telephone:  480-429-5000
Facsimile:  480-429-5001
Email:  scott.dosek@kutakrock.com

John P. Passarelli, 016018 (NE)
KUTAK ROCK LLP
1650 Farnam Street
Omaha, NE 68102
Email:  john.passarelli@kutakrock.com
*Attorneys for Plaintiff/Counterdefendant/Counterclaimant*
*Soilworks, LLC*

**Defendant-Counterclaimant Midwest Industrial Supply, Inc. ("Midwest"):**

Craig A. Marvinney, 0004951 (OH)
BROUSE MCDOWELL
1001 Lakeside Ave, Suite 1600
Cleveland, Ohio 44114
Telephone:  216-830-6830
Email: cmarvinney@brouse.com

John M. Skeriotis, 0069263 (OH)
BROUSE MCDOWELL
388 S. Main Street, Suite 500
Akron, Ohio 44311-4407
Telephone:  330-535-5711
Facsimile: 330-253-8601
Email:  jskeriotis@brouse.com,

Donald L. Myles, Jr., 007464(AZ)
JONES, SKELTON & HOCHULI, P.L.C.
2901 N. Central Ave., Suite 800

Phoenix, Arizona 85012
Telephone: 602-263-1700
Facsimile: 602-263-1784
Email: dmyles@jshfirm.com

## B. STATEMENT OF JURISDICTION

1. The Court has jurisdiction over the parties' respective federal claims under the Lanham Act, 15 U.S.C. §§ 1041 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, pursuant to 15 U.S.C. §§ 1121 and 28 U.S.C. §§ 1331, 1338. The Court also has diversity jurisdiction over this action under 28 U.S.C. § 1332. Jurisdiction over the state law claims in this case is based on the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

2. Neither party disputes that this Court has subject matter jurisdiction as well as personal jurisdiction in this case.

## C. STIPULATIONS AND UNCONTESTED FACTS AND LAWS

**1. The following material facts are admitted by the parties and require no proof:**

a. Midwest is an Ohio corporation that maintains its principal place of business in Canton, Ohio. Midwest maintains an office in Arizona and is authorized to do business in Arizona.

b. Midwest is a manufacturer and provider of dust control, erosion control, soil stabilization products. For more than thirty (30) years, Midwest has manufactured, distributed, and sold these products to customers in various industries throughout the United States and the world.

c. Midwest's chemical products for dust control, erosion control, soil stabilization include Soil-Sement®, EnviroKleen®, EK35®, Diamond Dr®, and Arena Rx®.

d. Robert Vitale is the Chief Executive Officer of Midwest and has been an owner and principal for Midwest since 1975.

e. Midwest has received U.S. Patent No. 7,074,266 ("'266 Patent") and U.S. Patent No. 7,081,270 ("'270 Patent") (collectively referred to herein as "Midwest's Patents").

f. The '266 Patent was issued on July 11, 2006.

g. The '270 Patent was issued on July 25, 2006.

h. Midwest's Patents are valid for purposes this litigation.

i. Midwest' Soil-Sement® product was first introduced in 1978.

j. Midwest owns federally registered trademarks for Soil-Sement®. On August 10, 1982, Midwest received a registration on the Principal Register (Reg. No. 1,204,198) for the trademark Soil-Sement® for "chemical adhesive used in cementing surface dust particles together and then cementing the bound surface layer to the road bed subbase[.]" On February 9, 1999, Midwest received a registration on the Principal Register (Reg. No. 2,222,732) for the trademark Soil-Sement® for "chemical adhesive used in cementing surface dust and surface particles together and then cementing the bound surface layer to a subbase, including roadbase earth-work, bareground environments, clear cut or excavated areas, and subbase which is subject to wind, water, and vehicle erosion[.]"

k. Soilworks is a limited liability company that maintains its principal place of business at 681 North Monterey Street, Suite 101, Gilbert, Arizona 85233. Soilworks was formed in 2003 and has three (3) members. Chad Falkenberg is the President of Soilworks. Dorian Falkenberg is the Vice President of Soilworks.

l. Soilworks manufactures, sells and distributes soil stabilization, dust control, and erosion control products throughout the United States. Soilworks' chemical products for, dust control, erosion control and soil stabilization include Soiltac®, Powdered Soiltac, Gorilla-Snot®, Durasoil®, and Surtac®. Midwest disputes that Soilworks is a manufacturer of Durasoil®.

m. Midwest and Soilworks compete with one another in the fields of dust control and soil stabilization products. More specifically, Midwest's EK35®, EnviroKleen®, Diamond Dr®, and Arena Rx® products compete with Soilworks' Durasoil® product, while Midwest's Soil-Sement® product competes with Soilworks' Soiltac® and Gorilla-Snot products.

n. In 2003, Soilworks purchased "Soil-Sement" from Google's AdWord program for use as a "keyword." When an Internet user enters a Google search for the words "soil sement" Midwest's Web site appears on the search results page along with Soilworks' Web site www.soiltac.com, which appears as a Google "Sponsored Link" on the right hand side of the search results. Soilworks owns the federally registered Soiltac®

trademark and www.soiltac.com. Soilworks has used Soil-Sement® as keyword from 2003 through 2007.

o. Soilworks used Midwest's Soil-Sement® trademark in the metatag coding for its www.soiltac.com and www.soilworks.com websites from 2003 through 2007.

p. Soilworks maintains that both the on-line sales and other sales of its products are not relevant to this action. Midwest maintains that the sales of Soilworks' Soiltac® and Gorilla-Snot® products are material facts that are relevant to the issue of Midwest's damages for Soilworks' liability on Count I of Midwest's counterclaims (trademark infringement, false designation of origin, and unfair competition under the Lanham Act). To the extent that the Court determines that Soilworks' sales are relevant to Midwest's damages on Count I, Soilworks' sales from 2003-2007 are as follows: $5,067,766.62 for Soiltac® and $2,474,477.58 for Gorilla-Snot®.

q. Polar Supply Company, located in Anchorage, Alaska, is a customer and distributor of Soilworks' products, including Durasoil® and Soiltac®. Polar Supply Company was acquired by Spenard Builders Supply, Inc. in April 2007 and is now operated as a division of Spenard Builders Supply, Inc.

r. Midwest and Polar Supply Company have competed directly with one another to supply the dust control and stabilization products for construction projects in Alaska.

s. On June 8, 2006, Midwest's outside counsel sent a letter to Soilworks' counsel concerning Midwest's Patents. During the next several months, the parties' counsel exchanged letters with one another.

t. On July 27, 2006, Midwest sent two identical letters to Polar Supply Company (the "Polar Supply letters").

u. Soilworks' states on its www.durasoil.com website that it is a "manufacturer" of Durasoil.

**2. The following material facts, although not admitted, will not be contested at trial:**

None at this time.

**3. The following issues of law are uncontested and stipulated to by the parties:**

The following legal standards apply to the parties' claims and damages related thereto

to be tried in this case:

**Soilworks' Lanham Act False Advertising Claim:**

   a. To prevail on a claim for false advertising under the Lanham Act, Soilworks must demonstrate: (1) a false or misleading statement of fact was made about a party or its product; (2) the statement was made in a commercial advertisement or promotion; (3) the statement actually deceived or had a tendency to deceive a substantial segment of its audience; (4) the deception was material, in that it was likely to influence purchasing decisions; (5) the defendant caused the statement to enter interstate commerce; (6) the plaintiff has been or is likely to be injured as a result of the statement, either by a direct loss of sales or a lessening of the goodwill associated with its products. 15 USC § 1125(a)(1)(B); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1136 (9th Cir. 1997); *Newcal Indus., Inc. v. Ikon Office Solution,* 513 F.3d 1038, 1052 (9th Cir. 2008).

   b. When the statements at issue involve the defendant's patent rights, Soilworks must also prove bad faith on the part of the defendant. *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353-54 (Fed. Cir. 1999).

**Soilworks' Common Law Unfair Competition Claim:**

   c. The common law doctrine of unfair competition is based on principles of equity. *Fairway Construction, Inc. v. Ahern,* 970 P.2d 954, 956 (Ariz.App. 1998). The general purpose of the doctrine is to prevent business conduct that is "contrary to honest practice in industrial or commercial matters." *Id.* The doctrine encompasses several tort theories, such as trademark infringement, false advertising, "palming off," and misappropriation. *Id.* Misappropriation, for purposes of common law unfair competition claims, is "normally invoked in an effort to protect something of value that is not covered by patent or copyright law . . .. Misappropriation involves the unfair taking for profit, at little or no cost, of property acquired by another through investment of substantial time and money." *Id.* at 957.

   d. When a common law unfair competition claim is based on a Midwest's statements concerning its patent rights, Soilworks must demonstrate that the defendant made the statements in bad faith in order for its unfair competition claim to be valid. Otherwise, this claim is preempted by the federal patent laws. *Zenith Elecs. Corp.*, 182 F.3d at 1353.

**Midwest's Lanham Act False Advertising Claim:**

   e. To prevail on a claim for false advertising under the Lanham Act, Midwest must

demonstrate: (1) a false or misleading statement of fact was made about a party or its product; (2) the statement was made in a commercial advertisement or promotion; (3) the statement actually deceived or had a tendency to deceive a substantial segment of its audience; (4) the deception was material, in that it was likely to influence purchasing decisions; (5) the defendant caused the statement to enter interstate commerce; (6) the plaintiff was likely to be injured as a result of the statement, either by a direct loss of sales or a lessening of the goodwill associated with its products. 15 USC § 1125(a)(1)(B); *Southland Sod Farms*, 108 F.3d at 1136; *Newcal Indus., Inc.*, 513 F.3d at 1052.

f.  Pursuant to the Court's August 7, 2008 Order, Midwest is entitled to pursue injunctive relief for this claim to the extent that it involves Soilworks' statements that Soilworks is a "manufacturer" of Durasoil®, but not monetary damages.

**Midwest's Lanham Act Trademark Infringement, False Designation of Origin, and Unfair Competition Claim:**

g.  The Court's August 7, 2008 Order states: "Midwest's Lanham Act claims for trademark infringement, false designation of origin, and unfair competition (Count I): Summary judgment is granted in favor of Midwest as to liability regarding the use of the Soil-Sement trademark. Summary judgment is granted in favor of Soilworks as to Midwest's other marks."

**Midwest's State Law Unfair Competition Claim:**

h.  The common law doctrine of unfair competition is based on principles of equity. *Fairway Construction, Inc. v. Ahern*, 970 P.2d 954, 956 (Ariz.App. 1998). The general purpose of the doctrine is to prevent business conduct that is "contrary to honest practice in industrial or commercial matters." *Id.* The doctrine encompasses several tort theories, such as trademark infringement, false advertising, "palming off," and misappropriation. *Id.* Misappropriation, for purposes of common law unfair competition claims, is "normally invoked in an effort to protect something of value that is not covered by patent or copyright law . . .. Misappropriation involves the unfair taking for profit, at little or no cost, of property acquired by another through investment of substantial time and money." *Id.* at 957.

i.  Because unfair competition under common law is a tort claim, damages are compensatory in nature and may include lost profits caused by the other party's conduct. *Kaibab Shop v. Desert Son, Inc.*, 662 Ariz. 452 (Ariz.App. 1983) (trial court awarding lost profit damages against defendant for "palming off" the plaintiff's product).

7

**Midwest's Unjust Enrichment Claim:**

    j.  In order to establish an unjust enrichment claim, Midwest must demonstrate: (1) enrichment by the Soilworks; (2) impoverishment by the plaintiff (c) a connection between impoverishment and enrichment; (d) the absence of justification for the enrichment and impoverishment, and (e) the absence of a legal remedy. *Community Guardian Bank v. Hamlin*, 898 P.2d 1005, 1008 (Ariz. App. 1995).

    k.  The damages awardable for this claim, if any, are *quantum meruit*-based damages. *Id.*

**Patent Claims:**

    l.  Pursuant to the Court's August 7, 2008 Order, Midwest's Patents are valid as a matter of law for purposes of this action.

    m.  A determination of infringement is a two-step process. *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1311 (Fed. Cir. 2005). The court construes the scope and meaning of disputed patent claims as a matter of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). The court needs to construe only the claim language that is in dispute. *NTP, Inc.*, 418 F.3d at 1311. The jury then compares the claims to the allegedly infringing devices, systems, or methods. *Id.* A finding of literal infringement requires that the asserted claims, as properly construed, read on the accused product. *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1468 (Fed. Cir. 1993). However, the jury may also find infringement under the doctrine of equivalents. According to the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Voda v. Cordis Corp.*, 536 F.3d 1311, 1324 (Fed Cir. 2008)(quoting *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1998)). The Federal Circuit applies two articulations of the test for equivalence. *Id.* at 1326. "Under the insubstantial differences test, '[a]n element in the accused device is equivalent to a claim limitation if the only differences between the two are insubstantial.'" *Id.* (quoting *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004). Under the function-way-result test, "an element in the accused device is equivalent to a claim limitation if it 'performs substantially the same function in substantially the same way to obtain substantially the same result.'" *Id.* (quoting *Schoell v. Regal Marine Indus., Inc.*, 247 F.3d 1202, 1209-10 (Fed. Cir. 2001).

    n.  In order to prove infringement of the '266 Patent, Midwest must demonstrate that Soilworks infringed each element of one or more of the asserted independent claims of the '266 Patent. *Warner-Lambert Co. v. Teva Pharm. USA, Inc., 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005); Seal-Flex, Inc. v. Athletic Track and Court Constr., 172*

F.3d 836, 842 (Fed. Cir. 1999); *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1468-69 (Fed. Cir. 1993).

o. In order to prove infringement of the '270 Patent, Midwest must demonstrate that Soilworks has infringed one or more of the asserted claims of the '270 Patent. *Warner-Lambert Co.,* 418 F.3d at 1341 n.15; *Seal-Flex, Inc.,* 172 F.3d at 842; *Morton Int'l, Inc.*, 5 F.3d at 1468-69.

p. The damages awardable for patent infringement are the amount of those damages which must be adequate to compensate a patent holder for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty for the infringing sales. *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*). The measure of a patentee's monetary award is damages adequate to compensate him for the infringement, that is, for the patentee's lost profits, but in no event less than a reasonable or established royalty. *Armco, Inc. v. Republic Steel Corp.*, 707 F.2d 886, 891, 219 U.S.P.Q. (BNA) 397, 402 (6th Cir. 1983). The patent owner does not have the burden of proving infringing sales with exactitude in order to recover a reasonable royalty thereon. *Trend Products Co. v. Metro Industries Inc.*, 10 U.S.P.Q.2d (BNA) 1531, 1538, 1989 WL 418778 (C.D. Cal. 1989). When the calculation of damages is impeded by incomplete records of the infringer, adverse inferences are appropriately drawn. *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572–73, 38 U.S.P.Q.2d (BNA) 1551, 1556 (Fed. Cir. 1996); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065, 219 U.S.P.Q. (BNA) 670, 675 (Fed. Cir. 1983). When the amount of damages cannot be ascertained with precision, any doubts regarding the amount must be resolved against the infringer. *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 8 U.S.P.Q.2d (BNA) 1323, 1331 (Fed. Cir. 1988); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065, 219 U.S.P.Q. (BNA) 670, 675 (Fed. Cir. 1983).

q. The determination of a reasonable royalty can be determined by the jury based upon the hypothetical negotiations between a willing licensor and licensee. *TWM Mfg. Co., Inc. v. Dura Corp.*, 789 F.2d 895 (Fed. Cir. 1986). Hypothetical royalty negotiations are assumed to have occurred when the infringement began. *Wang Laboratories, Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993), *reh'g denied, in banc suggestion declined*, (June 28, 1993); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1158 (6th Cir. 1978). A "reasonable royalty" standard for an infringer under 35 U.S.C.A. § 284 may be greater than an actually negotiated reasonable royalty in order to make a truly adequate award. *Fromson v. Citiplate, Inc.*, 699 F. Supp. 398, 407 (E.D. N.Y. 1988), *judgment aff'd*, 886 F.2d 1300 (Fed. Cir. 1989).

r. A patentee's foreseeable losses from the infringement, including losses in sales of products competing with the patented product, are properly included in a damage award. *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538 (Fed. Cir. 1995).

s. In cases in which the infringing activity commenced prior to the grant of the patent in issue, the damages that may be awarded commence on the date that the patent in issue was issued. 35 U.S.C. § 287; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *American Med. Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987).

## D. CONTESTED ISSUES OF FACT AND LAW

### 1. The following are the material issues of fact to be tried and decided:

### Soilworks' Lanham Act False Advertising Claim and Arizona Unfair Competition Claim:

a. Whether Soilworks has demonstrated that any of Midwest's statements at issue were false or misleading.

(i) Plaintiff Contends: The statements contained in the July 27, 2006 letters from Midwest to customers and distributors of Soilworks are false statements contained in a commercial advertisement and made in bad faith. A defendant's exaggerations about the scope and validity of a patent which create the impression that it is the exclusive source of a product, are inherently suspect and may overstep the boundaries of legality. Judge's Summary Judgment Order at 5-6; *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d at 1343-44, 1349 and 1354 (9th Cir. 1999).

"If a [Google AdWords] banner advertisement clearly identifie[s] its source . . . no confusion would occur under the [initial interest confusion] theory." *Playboy Enterprises, Inc. v. NetScape Comm. Corp.*, 354 F.3d 1020, 1025 n.16 (9th Cir. 2004); *see Finance Express LLC v. NowCom Corp.*, 2008 WL 2477430 at *13 (C. D. Cal. June 18, 2008) ("[I]t is true that a clearly-labeled banner advertisement [does] not create initial interest confusion"); *see also Storus Corp. v. Aroa Marketing, Inc.*, 2008 WL 449835 at *4 (N. D. Cal. Feb. 15, 2008); *see also J.G. Wentworth, S.S.C. Ltd. Partnership v. Settlement Funding LLC*, 2007 WL 30115 at *7 (E.D. Pa. Jan. 4, 2007).

In order to be entitled to damages under claims trademark infringement, false designation of origin, and unfair competition, the plaintiff must show a likelihood

of confusion. **[CITE]**

    (ii) <u>Defendant Contends:</u>  Soilworks lacks evidence that any of the statements in the Comparison Chart, Press Release, or Polar Supply letters were false or misleading. Soilworks will not be able to demonstrate falsity in this case because Midwest's statements were truthful statements, including (among other things) that: only Midwest can offer products and methods that are set forth in Midwest's Patents as defined by the category of synthetic organic dust control technology that Midwest created; and imitators (such as Soilworks) are either not supplying this technology or are infringing Midwest's Patents.

b.    Whether Soilworks has demonstrated that Midwest's statements at issue constitute "commercial advertising or promotions" that entered interstate commerce.

    (i) <u>.Plaintiff Contends</u>:  It has already been determined and is therefore the law of the case pursuant to the Court's August 7, 2008 Order that Midwest's statement at issue constitute commercial advertising or promotions.

    (ii) <u>Defendant Contends</u>:  Soilworks lacks evidence to demonstrate that the Polar Supply letters constitute "commercial advertising or promotion" because, among other things, (1) the letters were not sent for the purpose of influencing Polar Supply Company to buy Midwest's goods and (2) the letters, sent to one member of the purchasing public, were not disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within the meaning of the Lanham Act.

c.    Whether Soilworks has demonstrated that Midwest's statements at issue deceived or had a tendency to deceive a substantial segment of their audience.

    (i) <u>Plaintiff Contends</u>:  The statements made in the comparison chart, press release and Polar Supply letters are demonstrably false and were made in bad faith with the express purpose of deceiving a substantial segment of their audience.

    (ii) <u>Defendant Contends:</u> Soilworks lacks evidence to demonstrate that a substantial segment of the audience was deceived by the respective statements in the Comparison Chart, Press Release, or Polar Supply letters.

d.    Whether Soilworks has demonstrated that that any deception caused by Midwest's statements at issue was material, in that it was likely to influence consumers' purchasing decisions.

    (i) <u>Plaintiff Contends</u>:  The evidence is clear and uncontroverted that the statements contained in the comparison chart, press release and Polar Supply letters was in fact material and indeed influence consumer's purchasing decisions requiring,

among other things, that Soilworks enter into agreements of indemnification with its customers and distributor.

(ii) <u>Defendant Contends:</u> Soilworks lacks evidence that any alleged deception caused by the respective statements in the Comparison Chart, Press Release, or Polar Supply letters was likely to influence customers' purchasing decisions.

e.    Whether Soilworks has demonstrated, that Midwest issued the statements at issue in bad faith.

(i) <u>Plaintiff Contends:</u>  The fact that the statements contained in the comparison chart, press release and Polar Supply letters are false on their face, and are addressed directly to Soilworks' customers and distributors is clear evidence of Midwest's bad faith in making the statements.

(ii) <u>Defendant Contends:</u> Soilworks must prove bad faith by clear and convincing evidence.  Soilworks lacks evidence, much less clear and convincing evidence, that the respective statements in the Comparison Chart, Press Release, and Polar Supply letters were issued by Midwest in bad faith.  The evidence will demonstrate that Midwest issued the Comparison Chart, Press Release, and Polar Supply letters based on the good faith belief that the statements contained therein were true and accurate.

f.    If Soilworks establishes the requisite elements of its Lanham Act false advertising claim, whether Soilworks has demonstrated that it is entitled to any monetary damages.

(i) <u>Plaintiff Contends:</u>  The evidence has established the actual injury to Soilworks in the form of its obligation to provide indemnity to Polar Supply.

(ii) <u>Defendant Contends:</u> Soilworks lacks evidence of any actual injury caused by the Comparison Chart, Press Release, and Polar Supply letters and otherwise lacks evidence to support a claim for any type or amount of monetary damages under 15 USC § 1117(a).

g.    Whether Soilworks has established that Midwest has unfairly competed with Soilworks under Arizona common law.*

        *Unfair competition under Arizona common law is an equitable doctrine and, therefore, is subject to the court's equitable jurisdiction.  Because Soilworks' unfair competition claim is premised on the same facts as its Lanham Act claim, which will be heard and tried by the jury, the parties suggest that the Court obtain an advisory verdict from the jury on Midwest's liability for this claim for the Court's consideration.  *See City of Tucson v. Superior Court*, 798 P.2d 374, 380 n.5 (Ariz. 1990) ("Although either party

to litigation in the superior court is entitled to demand a jury trial as a matter of right, whether the case falls in equity or in law, in an equity case the verdict is merely advisory.").

(i) <u>Plaintiff Contends</u>:  The evidence will show that the statements made by Midwest in the comparison chart, press release and Polar Supply letters constitute, in and of themselves, a course of conduct by Midwest designed to claim that it (Midwest) was the exclusive source of dust control products for the purpose of exaggerating the scope and validity of its patent, thereby creating the false impression that Midwest is the exclusive source of the product.
A defendant's exaggerations about the scope and validity of a patent which create the impression that it is the exclusive source of a product are inherently suspect and may overstep the boundaries of a legality. Judge's Summary Judgment Order at 5-6;  *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d at 1343-44, 1349 and 1354 (9th Cir. 1999).

(ii) <u>Defendant Contends</u>: Soilworks lacks evidence that the Comparison Chart, Press Release, and Polar Supply letters constitute a course of conduct by Midwest that is contrary to honest business practices in commercial dealings, amounting to unfair competition under Arizona common law.

h.     If Soilworks establishes that Midwest unfairly competed with Soilworks under Arizona common law, whether Soilworks is entitled to monetary damages.*

      *Because Soilworks' unfair competition claim is premised on the same facts as its Lanham Act claim, which will be heard and tried by the jury, the parties suggest that the Court obtain an advisory verdict from the jury on the damages for which Soilworks should be awarded (if any) if it is successful on this claim.

(i) <u>Plaintiff Contends</u>:  The evidence will support Soilworks' claim that it has suffered actual injury as a result of Midwest's conduct, including but not limited to, Soilworks' obligation to provide indemnification to Polar Supply.

(ii) <u>Defendant Contends</u>: Soilworks lacks evidence of any actual injury caused by the Comparison Chart, Press Release, and Polar Supply letters and otherwise lacks evidence to support a claim for any type or amount of monetary damages for Midwest's alleged unfair competition.

i.   Whether from 2006 through today, Midwest has made statements to the marketplace stating, among other things, that Soilworks is an infringer of Midwest's patents and that it is the exclusive source for synthetic organic dust control products and that its patents cannot be designed around.

Plaintiff Contends:  Soilworks contends that Midwest has made such statements.

Defendant Contends:

## Midwest's Lanham Act False Advertising, False Designation of Origin, and Unfair Competition Claim:

i.      Whether Midwest has demonstrated that Soilworks' statement that Soilworks is a "manufacturer" is false or misleading.

(i) Plaintiff Contends:  The evidence is clear and unequivocal that Soilworks is indeed a manufacturer of many of its products including Durasoil®.  The evidence will further show that Soilworks is a "manufacturer" for the same reasons, to the same extent, and base upon the very same definition of the term "manufacture" as is employed by Midwest.

(ii) Defendant Contends:  Soilworks' statement that it is a "manufacturer" is literally false or, minimally, misleading.  Even if Soilworks' alleged blending of its Durasoil® product constituted "manufacturer," the preponderance of the evidence will demonstrate that Soilworks does not blend Durasoil® such that it can truthfully advertise or promote itself as a manufacturer.

j.      Whether Soilworks' statement on its www.durasoil.com website constitutes "commercial advertising or promotion" that entered interstate commerce.

(i) Plaintiff Contends:   Such website statements do not constitute commercial advertising or promotion in interstate commerce.

(ii) Defendant Contends:   Statements made on websites constitute commercial advertising or promotion in interstate commerce.

k.      Whether Midwest has demonstrated that Soilworks claim that it is a "manufacturer" deceived or had a tendency to deceive a substantial segment of its audience.

(i) Plaintiff Contends:  Soilworks is a manufacturer of Durasoil®, and thus, there is no deception.

(ii) Defendant Contends: The evidence will demonstrate the Soilworks' claim that it is a "manufacturer" is likely to deceive a substantial segment of the www.durasoil.com website's audience.

l.      Whether Midwest has demonstrated that that any deception associated with Soilworks' statement that it is a "manufacturer" was material, in that it was likely to influence potential customers' purchasing decisions.

(i) Plaintiff Contends: Soilworks is a manufacturer of Durasoil®, thus, there is no material deception.

(ii) Defendant Contends: The evidence that demonstrate that Soilworks' statement that it is a "manufacturer" is likely to influence potential customer's purchasing decisions and is, therefore, material deception.

m.      The timeframe that Soilworks' infringed Midwest's Soil-Sement® trademark, to the extent that the parties cannot stipulate the facts regarding this issue.

(i) Plaintiff Contends: Soilworks use of the term Soil-Sement was at all times in good faith and was not continuous from the years 2003 through 2007.

(ii) Defendant Contends:  The evidence currently available to Midwest demonstrates that Soilworks' infringed Midwest's Soil-Sement® trademark from at least 2003 to 2007.

n.      Whether Soilworks willfully infringed Midwest's Soil-Sement® trademark.

(i) Plaintiff Contends:  Soilworks' use of the term Soil Sement was at all times limited to metatags and the purchase of Google Adwords and was in good faith.

(ii) Defendant Contends:  Midwest's Count I counterclaim stated that Soilworks willfully, intentionally, and deliberately infringed on Midwest's trademarks.  The Court granted judgment to Midwest on Count I with respect to Midwest's Soil-Sement® mark.  Further, the Court recognized that "Soilworks admits that its intent in using the phrase 'soil sement' on the Internet was to trade off [on] Midwest's goodwill in its Soil-Sement mark by diverting potential customers to Soilworks' Soiltac product."  Because Soilworks used Midwest's mark to attempt to gain the value of Midwest's established trademark, Soilworks willfully infringed Midwest's trademark.

o.      Whether Midwest is entitled to damages for Soilworks' infringement of Midwest's Soil-Sement® mark, and if so, the amount of any damages.

(i) Plaintiff Contends:  Midwest is not entitled to damages for Soilworks use of the term Soil-Sement.

(ii) Defendant Contends:  Pursuant to 15 USC § 1117(a), Midwest is entitled an award of (1) Midwest's actual damages, (2) Soilworks' profit from its sales of Soiltac® and Gorilla-Snot during the period of infringement, and (3) the costs of this action.

The evidence currently available to Midwest demonstrates that Soilworks' gross sales from 2003 to 2007 for its Soiltac and Gorilla-Snot products totaled $7,542,244.20. The evidence will also demonstrate that Midwest suffered actual damages due to the trademark infringement. Additionally, as the Court has already determined the evidence demonstrates that Soilworks' infringement was willful, and, therefore, an award of treble damages is appropriate. 15 USC 1117(a); *Blockbuster Videos, Inc. v. City of Tempe*, 141 F.3d 1295, 1300 (9th Cir. 1998); *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1384 (9th Cir. 1984).

**Midwest's State Law Unfair Competition Claim:**

p.     Whether Midwest has established that Soilworks has unfairly competed with Midwest under Arizona common law.*

   *Unfair competition under Arizona common law is an equitable doctrine and, therefore, is subject to the court's equitable jurisdiction. The parties suggest that the Court obtain an advisory verdict from the jury on Soilworks' liability for this claim for the Court's consideration. *See City of Tucson v. Superior Court*, 798 P.2d 374, 380 n.5 (Ariz. 1990) ("Although either party to litigation in the superior court is entitled to demand a jury trial as a matter of right, whether the case falls in equity or in law, in an equity case the verdict is merely advisory.").

q.     If Soilworks' conduct constitutes unfair competition under Arizona common law, the amount of damages which should be awarded in favor of Midwest.*

   *The parties suggest that the Court obtain an advisory verdict from the jury on the damages for which Midwest should be awarded (if any) if it is successful on this claim.

(i) <u>Plaintiff Contends</u>: Midwest's State Law Unfair Competition claim is, in essence, an element of its Lanham Act claim and therefore no separate or additional damage calculation or award can be considered even if Midwest is successful on this claim because any such award would amount to an impermissible double recovery.

(ii) <u>Defendant Contends</u>: Appropriate compensatory damages should be awarded in favor of Midwest and against Soilworks for compensation for acts of Soilworks' unfair competition.

**Midwest's Unjust Enrichment Claim:**

r.     Whether Soilworks has been unjustly enriched, without justification and to the impoverishment of Midwest, by its course of conduct.

(i) <u>Plaintiff Contends</u>:   No evidence exists to establish the required elements of Midwest's unjust enrichment claim, and the claim is nevertheless untenable because Midwest does not lack adequate remedies at law.

(ii) <u>Defendant Contends</u>:   Soilworks' course of conduct, which includes its infringement of Midwest's Soil-Sement® trademark and other dishonest business practices, has enriched Soilworks to Midwest's impoverishment and was undertaken without justification.   To the extent that Midwest lacks available remedies at law for Soilworks' conduct, Midwest is entitled to *quantum meruit*-based damages.

**<u>Patent Claims:</u>**

s.   Whether Soilworks' Durasoil® product infringes Midwest's Patents.

(i) <u>Plaintiff Contends</u>:  There has been no evidence disclosed or produced by Midwest to establish that Soilworks infringes either the '266 patent or the '270 patent.

(ii) <u>Defendant Contends</u>:  The evidence will demonstrate that Soilworks' infringes one or more of the claims in both the '266 Patent and the '270 Patent.

t.   If Midwest establishes that Soilworks' Durasoil® product infringes Midwest's Patents, the amount of damages to which Midwest is entitled.

(i) <u>Plaintiff Contends</u>:   Since there is no infringement, Midwest is not entitled to damages under any measure. Additionally, it is Plaintiff's contention that even if there were a finding of patent infringement, the proper measure of damages is not measured by Soilworks' sale of the Durasoil® product after the date patent was issued.

(ii) <u>Defendant Contends</u>:  Midwest is entitled to an amount adequate to compensate it for Soilworks' patent infringement.  Midwest is entitled to all sales by Soilworks of its Durasoil® product after July 11, 2006, the date that the '266 Patent was issued.   At the very least, Midwest is entitled to a reasonable royalty for all infringing sales by Soilworks of its Durasoil® product after July 11, 2006. Midwest should also be awarded prejudgment interest.

The Federal Circuit has indicated that it is improper to exclude evidence of an infringer's profits on the issue of damages. *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552 (Fed. Cir. 1984).  The patent owner need show only a reasonable probability that he would have made the sales but for the infringement; he need not negate all possibility that a purchaser might have bought a different product or foregone the purchase totally. *Paper Converting Machine Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 21 (Fed. Cir. 1984). Instead, the patent

owner need only show that there was a reasonable probability that the sales would have been made "but for" the infringement and, therefore, the issue of whether a patent owner deserves lost profit damages is not based on a subjective, individualized inquiry, but on an objective standard of "reasonable probability." *Kaufman Co., Inc. v. Lantech, Inc.*, 926 F.2d 1136, 1139 (Fed. Cir. 1991). Oral testimony, even without supporting documentation, may suffice to establish lost profits. *Durango Associates, Inc. v. Reflange, Inc.*, 629 F. Supp. 1443 (S.D. Tex. 1986), *judgment aff'd in part, vacated in part on other grounds*, 843 F.2d 1349 (Fed. Cir. 1988).

**2. The following are the issues of law to be determined:**

This section includes the issues of both law and equitable remedies to be determined by the Court in this action.

a. If the jury determines that Soilworks has proven the requisite elements of its Lanham Act false advertising claim and Arizona common law claim for unfair competition, whether the Court should order injunctive relief in favor of Soilworks and against Midwest.

(i) <u>Plaintiff Contends</u>:  Appropriate injunctive relief should be entered by the Court with respect to the statements made by Midwest in the comparison chart, press release, and Polar Supply letters prohibiting Midwest from making such statements or statements similar.

(ii) <u>Defendant Contends:</u> If the jury determines that the Comparison Chart, Press Release, or Polar Supply letters contain a false advertisement or promotion in violation of the Lanham Act or Arizona common law and order injunctive relief, an appropriate order would be that Midwest cease commercially advertising or promoting the particular statements determined by the jury to be false or misleading

b. Whether Soilworks Is required to prove bad faith by clear and convincing evidence.

(i) <u>Plaintiff Contends</u>:  Midwest's statements are of the kind and character to which a standard of preponderance of the evidence applies.

(ii) <u>Defendant Contends</u>:  The relevant case law requires Soilworks to prove bad faith by clear and convincing evidence. *See Golan v. Pingel Enterprise, Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002); *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004).

c. If Midwest establishes the requisite elements of its Lanham Act false advertising claim, whether the Court should order injunctive relief in favor of Midwest and against Soilworks.

(i) <u>Plaintiff Contends</u>:  If judgment is entered upon a finding that Soilworks use of the term manufacturer with respect to its Durasoil® product is false and misleading, Soilworks will cease commercially advertising or promoting itself as a "manufacturer".

(ii) <u>Defendant Contends</u>:  The Court should award appropriate injunctive relief in favor of Midwest and against Soilworks, consisting of a judicial order that requires Soilworks to cease commercially advertising or promoting itself as a "manufacturer."

d.  Whether the Court should order injunctive relief in favor of Midwest and against Soilworks for Soilworks' infringement of Midwest's Soil-Sement® trademark.

(i) <u>Plaintiff Contends</u>:  Soilworks does use the term Soil-Sement in its keyword advertising or metatag coding.

(ii) <u>Defendant Contends</u>:  The Court should award appropriate injunctive relief in favor of Midwest and against Soilworks, consisting of a judicial order that Soilworks shall cease and refrain from using Midwest's trademarks in commerce, including (without limitation) in Soilworks' keyword advertising on Google™ and in the metatag coding for Soilworks' websites, without Midwest's consent.

e.  Whether the Court should award Midwest the costs of this action and attorneys fees for Soilworks' infringement of Midwest's Soil-Sement® trademark pursuant to 15 USC § 1117(a).

(i) <u>Plaintiff Contends</u>:  There has been no determination that any infringement of the Soil-Sement trademark was willful.  The issue of attorneys fees and costs is one which is to be addressed post trial.  Further, there has been no designation of this case as an exceptional case as that term is used in Title 15, Section 1117(a) as a matter of fact and law, it is not an exceptional case.

(ii) <u>Defendant Contends</u>:  The Court has already determined that Soilworks' infringement of Midwest's Soil-Sement® trademark was willful.  The Court should therefore award Midwest the costs of this action and attorneys fees, to be paid by Soilworks, pursuant to 15 USC § 1117(a).

f.  Whether Midwest is entitled to prejudgment interest for patent infringement.

(i) <u>Plaintiff Contends</u>:  The question of the prejudgment interest is one for the court.  At the time of entering its judgment upon a verdict which includes an award of damages.

(ii) <u>Defendant Contends:</u> It is within the discretion of the trial court to include in an award of damages prejudgment interest, *i.e.*, an amount representing the interest that would have accrued had the infringer made annual royalty payments under a license where the court bases damages on a royalty rate determined by the court. *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 103 S. Ct. 2058, 76 L. Ed. 2d 211 (1983); *Kaufman Co., Inc. v. Lantech, Inc.*, 926 F.2d 1136, 1144 (Fed. Cir. 1991); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 557 (Fed. Cir. 1984); *Water Technologies Corp. v. Calco, Ltd.*, 658 F. Supp. 980 (N.D. Ill. 1987). Both prejudgment and postjudgment interest are needed to compensate completely the patent owner for the defendant's infringement and both are deemed proper components of the relief afforded as a result of success in litigation. *Devex Corp. v. General Motors Corp.*, 579 F. Supp. 690, 698–99 (D. Del. 1984), *judgment aff'd*, 746 F.2d 1466 (3d Cir. 1984) *and judgment aff'd*, 746 F.2d 1468 (3d Cir. 1984) *and judgment aff'd*, 746 F.2d 1469 (3d Cir. 1984). Prejudgment interest has no punitive, but only compensatory, purposes. *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996), *reh'g denied, in banc suggestion declined*, (Oct. 1, 1996). Addition of prejudgment interest for patent infringement is to be ordinarily awarded absent evidence of exceptional circumstances that would justify withholding its imposition. *Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226, 1250 (Fed. Cir. 1989); *State Industries, Inc. v. Mor-Flo Industries, Inc.*, 124 F.R.D. 613 (E.D. Tenn. 1988). Failure to award prejudgment interest has been held an abuse of discretion absent a showing by the infringer of any excusing circumstances. *Laitram Corp. v. Cambridge Wire Cloth Co.*, 785 F.2d 292 (Fed. Cir. 1986). To deny prejudgment interest on calculation difficulties alone would be error. *Sensonics, Inc. v. Aerosonic Corp.*, 31 F.3d 1566, 1574 (Fed. Cir. 1996); *Lummus Industries, Inc. v. D.M. & E. Corp.*, 862 F.2d 267, 274–75 (Fed. Cir. 1988). Failure to award prejudgment interest must be explained by the trial court. *Lummus Industries, Inc. v. D.M. & E. Corp.*, 862 F.2d 267, 274–75, 8 U.S.P.Q.2d (BNA) 1983, 1988–89 (Fed. Cir. 1988). Merely stating that prejudgment interest would be inequitable and constitute a windfall is insufficient and has warranted remand to the trial court on the issue. *P.W. Woo & Sons, Inc. v. Antelope Enterprise Co. Ltd.*, 871 F.2d 1096 (Fed. Cir. 1989).

g. If Midwest establishes that Soilworks' Durasoil® product infringes Midwest's Patents, whether the Court should order injunctive relief in favor of Midwest and against Soilworks.

(i) <u>Plaintiff Contends:</u> Soilworks' Durasoil® product does not infringe either of Midwest's patents, and therefore no relief, injunctive or otherwise should be granted.

(ii) <u>Defendant Contends:</u>  The Court should award appropriate injunctive relief in favor of Midwest and against Soilworks, consisting of a judicial order that Soilworks shall cease and refraining from making, using, selling, or offering for sale its current Durasoil® product and any future derivation thereof that infringes Midwest's Patents.

### E.  LIST OF WITNESSES
#### (Name, Address, Fact or Expert, Brief Description of Testimony)

**1.  The following witnesses shall be called at trial:**

**a.  Plaintiff's Witnesses:**

**(i) Chad Falkenberg**

Address:  681 North Monterey Street, Suite 101, Gilbert, Arizona 85233
Fact/Expert:  Fact
Anticipated Testimony:  Mr. Falkenberg will testify consistent with his deposition testimony, and further will testify with respect to all relevant aspects of the business of Soilworks, LLC including its products, the company's history, and marketing program.  Mr. Falkenberg is one of the founders of Soilworks, LLC and has been its president continuously since Soilworks was founded.

**(ii)    Robert Vitale (live or by deposition)**

Address:  c/o Brouse McDowell, 388 S. Main Street, Suite 500 Akron, Ohio 44311
Fact/Expert:  Fact
Anticipated Testimony:   Mr. Vitale is expected to testify consistent with his deposition testimony both as an individual witness and a Rule 30(b)(6) witness.

**(iii)   Dorian Falkenberg**

Address:  681 North Monterey Street, Suite 101, Gilbert, Arizona 85233
Fact/Expert:  Fact
Anticipated Testimony:  Ms. Falkenberg is the vice-president of Soilworks, LLC and will testify consistent with her depositin testimony.

**(iv)    Cheryl Detloff (by deposition)**

Address:  c/o Brouse McDowell, 388 S. Main Street, Suite 500 Akron, Ohio 44311
Fact/Expert:  Fact
Anticipated Testimony:   Ms. Detloff is expected to testify consistent with her deposition.

**(v)    Todd Hawkins (by deposition)**

Address:  c/o Brouse McDowell, 388 S. Main Street, Suite 500 Akron, Ohio 44311
Fact/Expert:  Fact
Anticipated Testimony:   Mr. Hawkins is expected to testify consistent with his deposition.

### b.  Defendant's Witnesses:

**(i) Robert Vitale**
Address:  c/o Brouse McDowell, 388 S. Main Street, Suite 500
Akron, Ohio 44311-4407
Fact/Expert:  Fact
Anticipated Testimony:  Mr. Vitale is the CEO, principal and party representative of Midwest.  He will testify as to all aspects of this case, including:  the soil stabilization and dust control product industry; Midwest's business and customers; Midwest's products; Midwest's Patents (U.S. Patent Nos. 7,074,266 and 7,081,270); and Midwest's Soil-Sement® trademark; the underlying facts of Midwest's claims against Soilworks (including Soilworks' false advertising, its infringement of Midwest's Patents and Soil-Sement® trademark, and other unfair business practices) and Soilworks' claims against Midwest; Midwest's damages; and the documents produced by Midwest in this action.

Midwest reserves the right to call any witnesses to testify at trial whose testimony becomes necessary for rebuttal or impeachment purposes.

### 2.  The following witnesses may be called at trial:

### a.  Plaintiff's Witnesses:

(i) Kevin Hurst

Address:  681 North Monterey Street, Suite 101, Gilbert, Arizona 85233
Fact/Expert:  Fact
Anticipated Testimony:   He will testify about his employment at Soilworks including Soilworks manufacturing activities.

(ii) Shane Williams

### b.  Defendant's Witnesses:

(i) Todd Hawkins
Address:  c/o Brouse McDowell, 388 S. Main Street, Suite 500

Akron, Ohio 44311-4407
Fact/Expert: Fact
Anticipated Testimony: Mr. Hawkins is a former employee of Midwest and one of the inventors of Midwest's Patents. If called by Midwest to testify at trial, Mr. Hawkins may testify as to Midwest Patents, including the invention and relevant claims.

(ii) Julie Mamula
Address: c/o Brouse McDowell, 388 S. Main Street, Suite 500
Akron, Ohio 44311-4407
Fact/Expert: Fact
Anticipated Testimony: Ms. Mamula is an employee of Midwest. If called by Midwest to testify at trial, Ms. Mamula may testify regarding Midwest's marketing, Midwest's Soil-Sement® trademark, and her search results for Soilworks' website in the Internet Archives' "way-back-machine" archive.

(iii) Custodian of Records for the Internet Archive
Address: c/o Internet Archive, 116 Sheridan Avenue, San Francisco, CA 94129
Fact/Expert: Fact
Anticipated Testimony: The Internet Archive is a section 501(c)(3) non-profit organization that maintains internet-based archives of various digital media, including the "way-back machine," which is an archive that displayed internet webpages as they appeared on certain dates and the related coding for webpages (including metatags). If called by Midwest to testify at trial, the Custodian of Records for the Internet Archive will describe the "way-back-machine" archive and will testify regarding the archive's stored data for Soilworks' websites, including the metatag code for the websites for years 2003 to present.

(iv) Chad Falkenberg (on cross-examination)
Address: c/o Kutak Rock, 8601 North Scottsdale Road
Scottsdale, AZ 85235
Fact/Expert: Fact
Anticipated Testimony: Mr. Falkenberg is the president and an officer of Soilworks. If called by Midwest to testify, Mr. Falkenberg may testify as to Soilworks' operations and products; Soilworks' advertisement and marketing of its business and products (including Soilworks' claim that it is a manufacturer and its use of Midwest's Soil-Sement® trademark); Soilworks' customers and sales; the documents produced by Soilworks in this action; and the underlying facts of the parties' claims against one another in this action.

(v) Dorian Falkenberg (on cross-examination)
Address: c/o Kutak Rock, 8601 North Scottsdale Road
Scottsdale, AZ 85235
Fact/Expert: Fact

Anticipated Testimony: Mrs. Falkenberg is the vice president and an officer of Soilworks. If called by Midwest to testify, Mr. Falkenberg may testify as to Soilworks' operations and products; Soilworks' advertisement and marketing of its business and products (including Soilworks' claim that it is a manufacturer and its use of Midwest's Soil-Sement® trademark); Soilworks' customers and sales; the documents produced by Soilworks in this action.

(vi) Kevin Hurst (on cross-examination, live or by deposition)
   Address: c/o Kutak Rock, 8601 North Scottsdale Road
   Scottsdale, AZ 85235
   Fact/Expert:  Fact
   Anticipated Testimony:  Mr. Hurst is an employee of Soilworks. If called by Midwest to testify, Mr. Hurst may testify as to his knowledge of Soilworks' operations (including the alleged "blending" of Soilworks' Durasoil® product) and its products.

(vii) Stephen Hickman (by deposition)
   Address:  c/o Holmes Weddle & Barcott, 701 W Eighth Avenue, Suite 700
   Anchorage, Alaska 99501
   Fact/Expert:  Fact
   Anticipated Testimony:  Mr. Hickman is an employee of Spenard Builders Supply ("SBS," fka Polar Supply Company), a distributor of Soilworks' products. If called Midwest to testify, Mr. Hickman may testify as to the relationship and course of business between Soilworks and SBS, communications between SBS and Soilworks, and certain bids (or components thereof) submitted by SBS to supply Soilworks' dust palliative products for projects.

(viii)   Stephen Gordner (by deposition)
   Address:  c/o Holmes Weddle & Barcott, 701 W Eighth Avenue, Suite 700
   Anchorage, Alaska 99501
   Fact/Expert:  Fact
   Anticipated Testimony:  Mr. Hickman is an employee of Spenard Builders Supply ("SBS," fka Polar Supply Company), a distributor of Soilworks' products. If called Midwest to testify, Mr. Hickman may testify as to the relationship and course of business between Soilworks and SBS, communications between SBS and Soilworks, and certain bids (or components thereof) submitted by SBS to supply Soilworks' dust palliative products for projects.

(ix) Dan Thomson
(x) Cheryl Detloff
(xi)  Alaskan Department of Transportation Representative.

Midwest reserves the right to call any witnesses to testify at trial whose testimony becomes necessary for rebuttal or impeachment purposes.

**3. The following witnesses are unlikely to be called at trial:**

**a. Plaintiff's Witnesses:**

None at this time.

**b. Defendant's Witnesses:**

None at this time.

Each party understands that it is responsible for ensuring that the witnesses it calls to testify are subpoenaed. Each party further understands that any witnesses a party wishes to call shall be listed on that party's list of witnesses; the party cannot rely on the witnesses having been listed or subpoenaed by the other party.

Soilworks objects to the listing of any proposed witness by Midwest who is not identified by name, and/or has not been previously disclosed.

**F. LIST OF EXHIBITS**

Soilworks' List of Exhibits 1 through 33 is attached hereto as Exhibit A.

Midwest's List of Exhibits 51 through 131 is attached hereto as Exhibit B.

**1. The following exhibits are admissible in evidence and may be marked in evidence by the Clerk:**

**a. Plaintiff's Exhibits:**

Soilworks' Exhibits 1-4, 6-13, 16, 17 (last page), 18, 23, 27-30.

**b. Defendant's Exhibits:**

Midwest's Exhibits 51, 52, 54, 66 though 76, 79 through 81, 84 through 87, 94, 98, 102 through 106, 116.

**2. As to the following exhibits, the parties have reached the following stipulations:**

**a. Plaintiff's Exhibits:**

None at this time.

**b. Defendant's Exhibits:**

None at this time.

**3. As to the following exhibits, the parties against whom the exhibit is to be offered objects to the admissibility of the exhibit and offers the objection stated below:**

**a. Plaintiff's Exhibits:**

**Exhibit 4**: Irrelevant, redundant and more prejudicial than probative.

**Exhibit 5**: Irrelevant, redundant and more prejudicial than probative.

**Exhibit 14**: Irrelevant, incomplete, redundant.

**Exhibit 17** (First two pages): Irrelevant, prejudicial, argumentative, lack of foundation, hearsay, inadmissible argumentation requiring an attorney of record to be a witness in the action.

**Exhibit 19**: Hearsay, lack of foundation.

**Exhibit 20**: Hearsay, lack of foundation.

**Exhibits 21and 22**: Irrelevant, prejudicial, argumentative, lack of foundation, hearsay, inadmissible argumentation requiring an attorney of record to be a witness in the action.

**Exhibit 24**: Hearsay, lack of foundation.

**Exhibit 25**: Hearsay, lack of foundation.

**Exhibit 26**: Hearsay, lack of foundation.

**Exhibits 31, 32 and 33**: Hearsay, lack of foundation.

**b. Defendant's Exhibits:**

Soilworks objects to the following defendant exhibits:

**Exhibit 53** appears to be a report prepared by the United States Army Corp of Engineers which is multiple hearsay, irrelevant. Further, there is no adequate and sufficient foundation for the admission of this document inasmuch as its apparent authors are not identified as witnesses in this case nor have previously been disclosed as witnesses.

**Exhibits 55, 56, 57** – These letters have absolutely no relevance to any of the issues before the court.

**Exhibits 58, 59, 60, 61** – Hearsay and not relevant to any issue before the court.

**Exhibit 62 -** Hearsay, irrelevant to any issue before the court, and lack of proper and sufficient foundation as the apparent author of the document is not present in court.

**Exhibit 63** – Hearsay, lack of foundation by the purported author and irrelevant to any issue before the court.

**Exhibits 64, 65 –** Multiple hearsay, lack of foundation as the apparent author is not before the court and irrelevant to any issue before the court.

**Exhibit 77** – Multiple hearsay, irrelevant, and lack of foundation inasmuch as it appears to specification draft by Santiago Canyon College of Orange, California.

**Exhibit 78** – Irrelevant and offered solely for the purpose of unduly prejudicing the jury.

**Exhibit 82** – Hearsay, and lack of foundation inasmuch as the exhibit appears to be specification issued by the State of Alaska.

**Exhibit 83** – Hearsay, irrelevant, and lack of foundation. Neither the author or recipient of this communication is identified anywhere in this case.

**Exhibit 88** – Hearsay, irrelevant to any issue before the court, and lack of sufficient foundation.

**Exhibit 89** – Irrelevant to any issue before the court.

**Exhibit 90** – Hearsay, relevance and lack of sufficient foundation.

**Exhibits 91** – Hearsay, and irrelevant to any issue pending before the court.

**Exhibit 92** – Hearsay, relevance and lack of sufficient foundation.

**Exhibits 95, 96, 97, and 99** – Hearsay, and not relevant to any issue before the court.

**Exhibits 100 and 101** –Hearsay and irrelevant to any issue before the court.

**Exhibit 107** – Hearsay, lack of foundation and irrelevant to any issue before the court.

**Exhibit 108** – Irrelevant to any issue before the court.

**Exhibits 109 and 110** – Hearsay, immaterial, lack of foundation in that there is no indication of its author or the basis of any of the information contained in the exhibit.  Further, it is irrelevant to any issue before the court.

**Exhibits 112 and 113** – Hearsay and lack sufficient foundation.

**Exhibit 114** – Irrelevant, hearsay, lacking in foundation as nowhere is the author identified.

**Exhibits 115 and 117** – Irrelevant to any issue before the court, multiple hearsay, and lack of proper and sufficient foundation in that its author is not identified or

before the court, nor is the purpose of the publication identified.

**Exhibit 118** – Irrelevant to any issue before the court.

**Exhibits 119 through 131** – Irrelevant.

Each party hereby acknowledges by signing this Joint Proposed Pretrial Order that any objections not specifically raised herein are waived.

## G.  DEPOSITIONS TO BE OFFERED

### 1.  Plaintiff's Deposition Designations:

Soilworks may offer the following portions of the following depositions at trial:

#### Deposition of Todd R. Hawkins (August 19, 2008):

4:8-12; 5:4-22; 6:16-25; 7:14-8:16; 8:23-12:13; 21:1-29:15; 31:11-13; 32:19-33:12; 33:24-36:19; 36:21-24; 37:6-22; 38:2-8; 39:9-25; 40:4-41:2; 45:7-15; 58:22-61:23; 97:1-102:12; 106:18-108:24; 117:5-23; 118:1-25; 120:15-129:16; 132:1-24; 137:13-138:3; 138:20-139:6; 141:17-22; 143:12-144:8; 151:6-154:16; 156:6-19; 159:20-25;

#### Deposition of Cheryl Detloff (April 21, 2008):

4:7-10; 4:25-5:11; 5:16-20; 7:2-22; 10:24-11:17; 12:15-13:5; 14:19-17:20; 18:23-19:22; 20:19-21:14; 22:7-24:25; 25:4-26:2; 28:1-33:17; 34:2-35:24; 37:14-39:4; 40:7-42:9; 42:16-44:7; 45:2-46:5; 53:13-54:21; 55:2-25; 61:11-62:7; 66:21-68:22; 69:11-22; 70:20-71:4; 85:16-86:5; 100:4-101:18; 103:2-105:6; 107:11-108:1; 111:2-10; 115:4-21;

### 2. Defendant's Deposition Designations:

Midwest may offer the following portions of the following depositions at trial:
**Deposition of Steven Hickman (April 23, 2008):**
4:1-9:24
11:4-12:8
21:8-22:1
22:11-25:23
26:8-33:3
34:2-37:17
37:18-39:22
39:23-45:20
45:21-46:4
46:5-48:15

48:15-50:2
54:17:-56:4
56:5-56:12
56:13-57:3
64:17-66:1
67:2-70:11
70:15-71:5
72:9-73:9
74:13-76:2
76:16-78:25
79:1-80:24
80:25-81:5
87:7-90:18
90:20-94:18
95:9-96:5
99:7-101:16
101:22-110:23
116:13-118:5
118:6-127:21
135:12-140:1
140:10-142:15
142:19-146:4
146:5-156:10
156:11-160:9
160:13-174:23
175:13-178:17
178:19-179:20
179:21-183:2

**Deposition of Steven Gordner (April 23, 2008):**
4:1-11:18
12:24-17:25
18:1-19:13
21:1-23:19
24:5-26:24
28:8-23
29:16-33:1
33:2-35:8
35:9-39:4
41:1-42:4
43:24-48:18
49:5-52:11
54:6-55:1
57:3-12
62:3-64:2

**Deposition of Kevin Hurst (April 11, 2008):**
4:1-6:18
8:20-9:19
12:13-13:11
13:12-14:14
15:1-17
15:21-17:14
17:15-20:1

20:2-21:15
21:16-22:11
22:12-23:8
23:22-25

Midwest reserves the right to offer any portion of any deposition taken in this action for impeachment purposes. Additionally, in the event that any witnesses identified by Soilworks in Section E.1.a fail to appear and testify in person at trial (including, without limitation, Chad Falkenberg and Dorian Falkenberg), Midwest reserves the right to offer such witnesses' deposition testimony at trial.

### H.  MOTIONS *IN LIMINE*

Pursuant to the Court's Order Setting Final Pretrial Conference, motions *in limine* have been filed as separate pleadings and will be responded to in accordance with the Order Setting Final Pretrial Conference.

### I.  LIST OF PENDING MOTIONS

None, other than the parties' respective motions *in limine*.

### J.  PROCEDURES FOR EXPEDITING TRIAL

The parties have discussed and will continue to cooperate with one another to use all available procedures for expediting the trial, including the use of courtroom and other technology to expedite the presentation of evidence.

### K.  ESTIMATED LENGTH OF TRIAL

4 hours for opening statements and closing arguments

12 hours for Plaintiff's case

12 hours for Defendant's case

4 hours for rebuttal

### L.  JURY DEMAND

The parties stipulate that a jury demand was timely and properly made in this

case.

### M.  PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW (BENCH TRIALS)

**The separately lodged Proposed Findings of Fact and Conclusions of Law are incorporated by reference into this Joint Proposed Final Pretrial Order.**

### N.  JOINT PROPOSED JURY INSTRUCTIONS, JOINT PROPOSED VOIRE DIRE QUESTIONS, AND PROPOSED FORMS OF VERDICT FOR JURY TRIALS

The Joint Proposed Jury Instructions, Joint Proposed Voire Dire Questions, and Proposed Forms of Verdict have been filed in accordance with the instructions contained in the Order Setting Final Pretrial Conference.

### O.  CERTIFICATIONS

The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

1.  All discovery has been completed.

2.  The identity of each witness has been disclosed to opposing counsel.

3.  Each exhibit listed herein is:  (1) in existence; (2) numbered; and (3) has been disclosed and shown to opposing counsel.

4.  The parties have complied in all material respects with the mandates of the Court's Rule 16 Scheduling Order and Order Setting Final Pretrial Conference.

5.  The parties have made all of the disclosures required by the Federal Rules of Civil Procedure.

6.  The parties acknowledge that once this Final Pretrial order has been

signed and lodged, no amendments to this Order can be made without leave of Court.

## P.   INFORMATION FOR COURT REPORTER

Each party shall file a "Notice to Court Reporter" one week before trial containing the following information that may be used at trial:

1. Proper names, including those of witnesses

2. Acronyms

3. Geographic locations

4. Technical (including medical) terms, names or jargon

5. Case names and citations.

Each party shall also send (or transmit electronically) to the court reporter a copy of the concordance from key depositions.


___/s E. Scott Dosek____                    ____/s Craig Marvinney_____
Attorney for Plaintiff                              Attorney for Defendant
Soilworks LLC                                       Midwest Industrial Supply, Inc.

Based on the foregoing,

IT IS ORDERED that this Proposed Final Pretrial order jointly submitted by the parties is hereby APPROVED and ADOPTED as the official Pretrial Order of this Court.

Dated this _____ day of _____, 2008.


_____
David G. Campbell
United States District Judge