Craig A. Marvinney, 0004951 (OH)
John M. Skeriotis, 0069263 (OH)
Anastasia J. Wade, 0082797 (OH)
BROUSE MCDOWELL
388 S. Main Street, Suite 500
Akron, Ohio 44311-4407
Telephone: 330-535-5711
Email: cmarvinney@brouse.com,
  jskeriotis@brouse.com,
  awade@brouse.com
*Admitted pro hac vice*

Donald L. Myles, Jr., 007464 (AZ)
JONES, SKELTON & HOCHULI, P.L.C.
2901 N. Central Ave., Suite 800
Phoenix, Arizona 85012
Telephone: 602-263-1700
Email: dmyles@jshfirm.com

*Attorneys for Defendant/Counterclaimant Midwest Industrial Supply, Inc.*

# UNITED STATES DISTRICT COURT
# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SOILWORKS, LLC, an Arizona corporation,<br><br>Plaintiff / Counterdefendant / Counterclaimant,<br><br>v.<br><br>MIDWEST INDUSTRIAL SUPPLY, INC., an Ohio corporation authorized to do business in Arizona,<br><br>Defendant / Counterclaimant / Counterdefendant. | NO.: 2:06-CV-2141-DGC<br><br>**MIDWEST INDUSTRIAL SUPPLY, INC.'S PRETRIAL MEMORANDUM PER THE COURT'S OCTOBER 16, 2008 ORDER** |

In general, the law has sought to encourage fair and honest competitive practices by deterring and prohibiting unfair competition. The Lanham Act and the patent statutes and regulations protect the reputation, goodwill, and intellectual property of a company from those that seek to profit from it unjustly. In this case, Soilworks has unfairly and unjustly used Midwest's brand, reputation, and ideas to increase its own profits by infringing on Midwest's patents and trademark and by falsely advertising its capabilities.

Midwest devoted considerable time, money, and resources, both technical and legal, in securing its patents for its innovative soil stabilization and dust control products. Soilworks infringed on these patents and then not only reaped the rewards of Midwest's research and development, but cost Midwest substantial sales and profits.

Further, Midwest developed its Soil-Sement® trademark over many years and devoted a significant portion of its advertising budget in creating a reputable brand name for its product. Soilworks willfully, and with full knowledge of Midwest's right to the mark, used the Soil-Sement® mark to divert potential consumers to Soilworks' competing products, including Soiltac and Gorilla-Snot.

Finally, in a market where being a manufacturer of a product is important to product credibility and sales, Soilworks falsely advertised itself as a "manufacturer," despite the fact that it does not mix, blend, or do any other act which would constitute manufacturing. Thus, by falsely representing itself as a manufacturer, Soilworks diverted sales from Midwest to itself.

Soilworks' actions forced Midwest to compete in a market diluted by unfair competition. This is exactly the situation the law seeks to prevent. Through this case,

then, the Court should both deter future unfair competition and compensate Midwest for its ensuing loss. This brief is presented per the Court's October 16, 2008 Order (ECF Docket No. 135) and seeks to clarify the issues noted therein for the Court.

**1. Patent Infringement**

Midwest asserts the following claims are infringed by Soilworks: (a) claims 1, 7, 8, and 9 of U.S. Patent No. 7,074,266 ("the '266 Patent")[1] and (b) claims 1 and 3 of U.S. Patent No. 7,081,270 ("the '270 Patent")[2]. The patent claim elements from these patents at issue in this case are "synthetic isoalkane," "binder," "ester" and "applied neat." The meaning of these claim elements are set forth in Midwest claim charts, attached herein as Exhibits C and D. Typically in a patent case, the construction of a patent's claims is important to the determination of whether the accused party has infringed the patent. A court may construe the patent's claims at various points in the litigation and may revisit and alter its previous interpretations. *Conoco, Inc. v. Energy & Environmental Int'l, L.C.,* 460 F.3d 1349, 1359 (Fed. Cir. 2006).

In this case, however, the construction of the patents' claims is already resolved because Soilworks admits that its product meets the limitations of Midwest's patent claims. If the Court determines despite this that a claim construction is required in this case, the Court should construe Midwest's patent claims based on the ordinary meaning of the words and the testimony and evidence presented at trial before the case is submitted to the jury. As the Court presents its instructions to the jury, the Court should then notify the jury of its construction of the claims.

---

[1] A true and accurate copy of the '266 Patent is attached hereto as Exhibit A.
[2] A true and accurate copy of the '270 patent is attached hereto as Exhibit B.

In proving its claim of patent infringement, Midwest's construction of its patents' claims will be consistent with its claim charts. To further define the scope of Midwest's patents' claims and how they apply to Soilworks' Durasoil product, Midwest expects to present the testimony of four witnesses: (1) Robert Vitale, who, in addition to being Midwest's corporate representative and co-inventor of Midwest's patents, was involved in the invention and patent application for both of Midwest's patents; (2) Todd Hawkins, who, in addition to being a co-inventor of Midwest's patents, was involved in the invention and patent application for both of Midwest's patents; (3) Dan Thompson, the attorney who prosecuted Midwest's patents; and (4) Cheryl Detloff, an employee of Midwest involved in the representation of its invention's capabilities.

To prove patent infringement both literally and under the doctrine of equivalents, the plaintiff must show that the accused device contains each limitation of the patent's claims or its equivalent. *Riles v. Shell Exploration and Production Co.*, 298 F.3d 1302, 1308-09 (Fed. Cir. 2002). In this case, Soilworks' Durasoil product contains each limitation in various claims of the '266 and '270 patents. By Soilworks' own admission, its product Durasoil contains a synthetic isoalkane and an ester, is applied "neat" to the surface soil, is a synthetic or semi-synthetic hydrocarbon, is produced from hydrotreating, hydrocracking, or hydroisomerization, and is an isoalkane or branched iso-paraffin. Thus, Durasoil meets each limitation in Claims 1, 7, 8, and 9 of the '266 Patent and Claims 1 and 3 of the '270 Patent.

Midwest expects to submit substantial evidence that Soilworks admits that its Durasoil product meets these claims, including: (1) publicly available information on

Durasoil; (2) Soilworks' Answers to Midwest's Request for Admissions; (3) Soilworks' advertisements of Durasoil; (4) the Alaskan Department of Transportation required specifications to which Soilworks' distributor submitted a bid for Durasoil; (5) correspondence from Soilworks' Chad Falkenberg to Soilworks' distributor Polar Supply Company; (6) the claims chart submitted by both parties; (7) if required, the deposition testimony of Chad Falkenberg as on cross-examination; and (8) other evidence included in Midwest's Exhibits. Based on this evidence and the testimony elicited at trial, the jury should determine that Soilworks' Durasoil product infringes both of Midwest's patents.

**2. Court Issues and Jury Issues**

a. *False Advertising*

Whether statements constitute false advertising is a question of fact for the jury. *Clorox Co. Puerto Rico v. Proctor & Gamble, Co.*, 228 F.3d 24, 34 (1st Cir. 2000); *Allsup, Inc. v. Advantage 2000 Consultants, Inc.*, 428 F.3d 1135, 1138 (8th Cir. 2005). In addition, for Soilworks' false advertising claim, the jury must also determine whether the statements were made in bad faith because Midwest's statements involved its patent rights. *Zenith Elecs. Corp v. Exzec, Inc.*, 182 F.3d 1340, 1353-54 (Fed. Cir. 1999). Since both parties are limited to injunctive relief on this claim, the jury need not determine damages for this claim.

After the jury determines liability for false advertising, the Court must determine whether either party is entitled to injunctive relief and attorneys' fees for its false advertising claim. To obtain injunctive relief, the Court must determine that the statements were either literally false or were likely to mislead consumers. *Seven-Up, Co.*

*v. Coca-Cola, Co.,* 86 F.3d 1379, 1390 (5th Cir. 1996). Additionally, the Court must also conclude that the accusing party will suffer irreparable harm in the absence of an injunction. *Id.* Further, the Lanham Act provides that a court may award attorneys' fees in exceptional cases to the prevailing party. 15 U.S.C. § 1117(a). An exceptional case is defined as a case where the violative acts are willful, deliberate, fraudulent, or malicious. *Seven-Up, Co.,* 86 F.3d at 1390. This is such a case.

### b. State Law Unfair Competition

The doctrine of unfair competition is based upon principles of equity. *Fairway Construction, Inc. v. Ahern,* 970 P.2d 954, 956 (Ariz. App. 1998). Therefore, the Court, and not the jury, determines whether a party is liable for a state unfair competition claim. In this case, however, Midwest suggests that the Court base its decision on the jury's decisions as to Soilworks' and Midwest's false advertising claims, Midwest's patent infringement claim, and Midwest's unjust enrichment claim as well as the Court's holding on Midwest's trademark infringement claim.

As Soilworks unfair competition claim is based on the same facts as its false advertising claim and Soilworks was unable to provide any proof of monetary damages for its false advertising claim, Soilworks is limited to injunctive relief for this claim. Additionally, the Court must find irreparable harm before awarding injunctive relief. *Seven-Up, Co.,* 86 F.3d at 1390.

### c. Trademark Infringement, False Designation of Origin, and Unfair Competition Under the Lanham Act

This Court has already found Soilworks liable for Midwest's Lanham Act claims for trademark infringement, false designation of origin, and unfair competition with

5

regard to Midwest's Soil-Sement® trademark. The issues remaining under these claims are (1) whether Soilworks infringement of Midwest's trademark was willful; (2) whether Midwest is entitled to monetary damages for its Lanham Act claims; (3) whether Midwest is entitled to injunctive relief; and (4) whether Midwest is entitled to its attorneys' fees. The first issue regarding whether Soilworks willfully infringed Midwest's trademark is a question of fact for the jury. *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1385 (9th Cir. 1987). The Ninth Circuit has held that a finding of willful is proper "where the defendant is 'attempting to gain the value of an established name of another.'" *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993) (quoting *Maier Brewing Co. v. Fleischman Distilling Corp.*, 390 F.2d 117, 123 (9th Cir. 1968)). This includes Soilworks' use of Midwest's registered mark to divert consumers to Soilworks' products. Second, once the jury determines that Soilworks willfully infringed Midwest's trademark, the jury then determines whether Midwest is entitled to monetary damages and the amount of such damages.

During the October 9, 2008 Final Pretrial Conference, the Court raised the issue that it believed that Midwest would not be entitled to any monetary recovery unless it was able to prove the precise damage caused by Soilworks' infringement through lost sales to Midwest. Monetary damages for trademark infringement can include an accounting of Soilworks' profits for the infringing products as well as Midwest's actual damages, which is a separate award under 15 U.S.C. § 1117(a). *National Lead Co. v. Wolfe,* 223 F.2d 195, 205 (9th Cir. 1955); *Lindy Pen Co., Inc.* 982 F.2d at 1406 and 1408. An accounting of profits does not depend on proof of Midwest's lost sales, but, instead,

depends on proving that Soilworks willfully infringed Midwest's trademark. *Lindy Pen Co., Inc.* 982 F.2d at 1405. Further, Midwest is not required to show actual confusion to obtain an accounting of profits. *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000). After Midwest proves Soilworks' gross sales for the infringing products, the burden is upon Soilworks to prove which sales were demonstrably not attributable to the infringing mark. *Nintendo of Am., Inc. v. Dragon Pacific Intern.*, 40 F.3d 1007, 1012 (9th Cir. 1994); *Wolfe v. Nat'l Lead Co.*, 272 F.2d 867, 872 (9th Cir. 1959); *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942).

In the recent case of *Venture Tape Corp. v. McGills Glass Warehouse,* 540 F.3d 56 (1st Cir. 2008), whose facts are almost identical to those at issue in this case, the First Circuit Court of Appeals affirmed an award of the defendant's profits for the use of plaintiff's trademark in the defendant's website's metatags. In addressing the defendant's argument that the plaintiff was not entitled to the defendant's profits because the plaintiff failed to prove which sales of the defendant's product were the result of defendant's infringement, the First Circuit held that, if the parties are direct competitors, the Lanham Act clearly places this burden upon the defendant to show, by documentary evidence, which sales were unrelated and unaided by the defendant's illicit use of the plaintiff's mark in the defendant's website metatags. *Id.* at 64; *see also WMS Gaming, Inc. v. WPC Productions, Ltd.*, 542 F.3d 601, 608 (7th Cir. 2008)(holding that the district court erred in placing the burden on the plaintiff to prove, with a reasonable certainty, that the defendant's profits were a result of the infringement of the plaintiff's mark)[3].

---

[3] Copies of these two recent cases are attached as Exhibit E.

Both Midwest and Soilworks are direct competitors in the dust control and soil stabilization market. Therefore, if Soilworks cannot separate their noninfringing sales from their infringing sales by documentary evidence, Midwest is entitled to all of Soilworks' sales on Soiltac and Gorilla-Snot. *Venture Tape,* 540 F.3d at 64; *Nintendo*, 40 F.3d at 1012; *see also, Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 261-62 (1916).

Midwest's entitlement to an injunction and its attorneys' fees for Soilworks' infringement of its trademark is an issue for the Court to determine. In determining injunctive relief for trademark infringement, the Ninth Circuit has held that a likelihood of confusion is sufficient grounds for an injunction under the Lanham Act. *Pacific Telesis Group v. International Telesis Communications,* 994 F.2d 1364, 1369 (9th Cir. 1993). This Court has already determined that there is a likelihood of confusion between Midwest's registered trademark and Soilworks' mark. Thus, there are sufficient grounds to award Midwest injunctive relief for its trademark infringement claim. As for an award of attorneys' fees, the Lanham Act states that attorneys' fees may be awarded in exceptional cases. 15 U.S.C. § 1117(a). "While the term 'exceptional' is not defined in the statute, attorneys' fees are available in infringement cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1023 (9th Cir. 2002). Again, this is such a case.

*d. Unjust Enrichment*

Unjust enrichment equitably involves a party's retention of benefits belonging to

another party. *Trustmark Ins. Co. v. Bank One, Ariz., N.A.*, 48 P.3d 485, 491 (Ariz. App. 2002). A court must first determine, as a matter of law, whether the plaintiff has a right to recover at all for its unjust enrichment claim. *Synergy Worldwide, Inc. v. Long, Haynes, Carr, Inc.*, 44 F.Supp. 2d 1348, 1358 (N.D. Ga. 1998). The jury then determines what is a fair and reasonable compensation for the unjust enrichment. *Id.*; *Incase, Inc. v. Timex Corp.*, 488 F.3d 46, 54 (1st Cir. 2007).

*e. Patent Infringement*

A claim of patent infringement presents mixed issues of fact and law. A determination of infringement, whether literal or by the doctrine of equivalents, is a question of fact submitted to the jury. *Acco Brands, Inc. v. ABA Locks Manufacturer Co., Ltd.*, 501 F.3d 1307, 1311 (Fed. Cir. 2007). A jury also determines whether the accused party willfully infringed the patent. *Acco Brands, Inc.*, 501 F.3d at 1311. Willful infringement requires a showing that the totality of the circumstances evinces the egregious conduct of the infringing party. *nCube Corp v. SeaChange International, Inc.*, 736 F.3d 1317, 1323-24 (Fed. Cir. 2006). Upon finding infringement, the jury must decide the assessment of damages for patent infringement. *Riles v. Shell Exploration and Production Co.*, 298 F.3d 1302, 1308 (Fed. Cir. 2002).

Issues of law for the Court's determination for a patent infringement claim include (1) claim construction, (2) availability of lost profits, (3) injunctive relief, (4) application of enhanced damages, (5) prejudgment interest, and (6) attorneys' fees.

Before a jury can determine whether a patent has been infringed, a court must construe the claims of the patent. *Conoco, Inc.*, 460 F.3d at 1357; *Ericsson, Inc. v.*

*Harris Corp.*, 352 f.3d 1369, 1373 (Fed. Cir. 2003). Claim construction does not require the use of a *Markman* hearing in every case and courts may construe the claims on the basis of a paper record alone. *Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, Case No. Civ. A. 398CV2996D, 2002 WL 1751381, at *11, fn. 6 (N.D. Tex. April 4, 2002). A court should give the terms of the claim their ordinary meaning and extrinsic evidence should not be relied upon other than to aid an understanding of the technology. *Id.* at * 12. A claim term can be given its correct construction only within the context of "what the inventors actually invented and intended to envelop with the claim." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005). Further, a court may construe the patent's claims at various points in the litigation and may revisit and alter its previous interpretations. *Conoco, Inc.*, 460 F.3d at 1359.

Second, before a jury can award an aggrieved party its lost profits, the Court must first determine whether lost profits are available. *Wechsler v. Macke International Trade, Inc.*, 486 F.3d 1286, 1293 (Fed. Cir. 2007). The Federal Circuit holds it improper to exclude evidence of an infringer's profits on the issue of damages. *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.,* 750 F.2d 1552 (Fed. Cir. 1984).

Third, the Court has the discretion to issue an injunction if the jury determines that Soilworks infringed one or both of Midwest's patent. *Fuji Photo Film, Co., Ltd. v. Jazz Photo Corp.*, 394 F.3d 1368, 1380 (Fed Cir. 2005). Once the jury finds infringement, the Court should issue an injunction unless it has a sound reason for denying Midwest injunctive relief. *Id.*

Fourth, the Court should award Midwest enhanced damages for Soilworks' willful

infringement.  *Riles,* 298 F.3d at 1308.  The jury's determination of willful infringement does not mandate an award of enhanced damages, but rather, it is the egregiousness of the infringer's conduct based on the facts and circumstances is the basis of an enhanced damages award.  *Id.* at 1314.  Here, Soilworks' conduct compels such an award.

It is within the Court's discretion to award prejudgment interest.  *General Motors Corp. v. Devex Corp.*, 461 U.S. 648 (1983); *Kaufman Co., Inc.,* 926 F.2d at 1144.  The addition of prejudgment interest for patent infringement is ordinarily awarded absent evidence of exceptional circumstances that would justify withholding its imposition. *Richardson*, 868 F.2d at 1250.  No such exceptional circumstances exist here.

Finally, a court may award attorney's fees in exceptional cases.  15 U.S.C. § 285; *nCube Corp.,* 436 F.3d at 1325.  An exceptional case includes inequitable conduct before the United States Patent and Trademark Office; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit; or willful infringement. *Forest Labs, Inc. v. Abbot Labs,* 339 F.3d 1324, 1329 (Fed. Cir. 2003).  With willful infringement shown here, this is precisely the type of case mandating an award of attorney's fees.

**3, 4.**   **Jury Verdict Form and Preliminary Jury Instructions**

These are provided separately for the Court.

**5.**   **Injunctive Relief**

Claims for injunctive relief should be determined after the jury issues a verdict in this case.  As stated above, for Soilworks' and Midwest's false advertising and state unfair competition claims, the Court must determine whether the respective parties will suffer

irreparable harm before it issues an injunction for those claims. Injunctive relief for a trademark infringement claim may be premised on a finding of a likelihood of confusion. This Court already determined that there is a likelihood of confusion in Midwest's trademark infringement claim and, thus, the Court should award Midwest injunctive relief on this claim. For patent infringement, injunctive relief should be awarded if the jury determines that Soilworks infringed Midwest's patent, unless the Court has a sound reason not to award injunctive relief to Midwest on this claim. No evidence of such a "sound" reason is in the record. In its Proposed Findings of Fact and Conclusions of Law (ECF Docket No. 112), Midwest included proposed language for each of the possible injunctions, which the Court should respectfully refer to if it decides to award injunctive relief in this case.

**4.  Attorneys' Fees**

As with injunctive relief, attorneys' fees should be determined after the jury issues a verdict in this case. For each of the claims in this case, attorneys' fees may be awarded in exceptional cases. As discussed above, this is just the sort of case where such exceptional circumstances exist as to trademark infringement and patent infringement. While a party's intent is normally a question for the jury, the Court has broad discretion in determining whether a case is exceptional for the purpose of awarding attorneys' fees. 15 U.S.C. § 285 and 15 U.S.C. § 1117(a); *nCube Corp.*, 436 F.3d at 1325; *Rio Props., Inc.*, 284 F.3d at 1023; *Seven-Up, Co.*, 86 F.3d at 1390.

Respectfully Submitted,


By:  /s/ John M. Skeriotis
Craig A. Marvinney, 0004951 (OH)
John M. Skeriotis, 0069263 (OH)
Anastasia J. Wade, 0082797 (OH)
BROUSE MCDOWELL
388 S. Main Street, Suite 500
Akron, Ohio 44311-4407
Telephone: 330-535-5711
Facsimile: 330-253-8601
Email:  cmarvinney@brouse.com,
    jskeriotis@brouse.com,
    awade@brouse.com
*Admitted pro hac vice*

Donald L. Myles, Jr., 007464 (AZ)
JONES, SKELTON & HOCHULI, P.L.C.
2901 N. Central Ave., Suite 800
Phoenix, Arizona 85012
Telephone: 602-263-1700
Facsimile: 602-263-1784
Email: dmyles@jshfirm.com

*Attorneys for Defendant/Counterclaimant Midwest Industrial Supply, Inc.*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **MIDWEST INDUSTRIAL SUPPLY, INC.'S PRETRIAL MEMORANDUM** has been electronically filed on this 9th day of January, 2009. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John M. Skeriotis

735411 v2