E. SCOTT DOSEK #012114
JOHN P. PASSARELLI #16018 (NE)
KUTAK ROCK LLP
Suite 300
8601 North Scottsdale Road
Scottsdale, AZ  85253-2742
(480) 429-5000
Facsimile: (480) 429-5001

*Attorneys for Plaintiff / Counterdefendant / Counterclaimant Soilworks, LLC*

# UNITED STATES DISTRICT COURT
# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SOILWORKS, LLC, an Arizona corporation,<br><br>  Plaintiff / Counterdefendant / Counterclaimant,<br><br>v.<br><br>MIDWEST INDUSTRIAL SUPPLY, INC., an Ohio corporation authorized to do business in Arizona,<br><br>  Defendant / Counterclaimant / Counterdefendant. | NO.: 2:06-CV-2141-DGC<br><br>**SOILWORKS' PRETRIAL MEMORANDUM**<br><br>(Before the Honorable David G. Campbell) |

## 1. **Patent Infringement.**

Specify Patent Claims at Issue:  At the final Pretrial Conference on October 9, 2008, for the first time since this dispute arose and well after the close of discovery, Midwest identified the patent claims that it believes Soilworks' Durasoil product infringes; namely, claim one of both the '266 Patent and '270 Patent.  Even this disclosure at such a late date was vague and inconclusive as to how or why Midwest believes Durasoil infringes those patent claims.  It was not until the parties conducted the mediation, which was ordered by this Court, that Midwest finally disclosed how and why it believes there is patent infringement. Midwest's "hide the ball" tactics have been consistent ever since Soilworks demanded a claims chart in July 2007.  Midwest ignored that demand and numerous subsequent ones.

4820-8833-9203.1

1     <u>Specify the Meaning of Those Claims</u>: Midwest bears the burden of identifying the metes and bounds of its claims. Despite repeated requests by Soilworks and its counsel for definitions of key terms in its claims, Midwest never presented any definition for any of the terms in the Midwest Patents, particularly, the following terms: "Synthetic Isoalkane", "binder", "carboxylic acid", "ester" and "thermoplastic polyelofin." Nowhere in the parties' Joint Proposed Final Pretrial Order or in any of the exhibits which have been identified to be offered into evidence at trial, is there any definition of these terms. Neither is there a witness identified by Midwest who is competent to testify as to the meaning of such terms. Incredibly, Midwest waited until January 8, 2009 (yesterday) to disclose the basis for its claim that Durasoil infringes the '270 patent. (the "process" patent.) <u>TODAY</u> (January 9, 2009), we learn the details from Midwest's Pretrial Memorandum of its infringement claims.

    <u>Evidentiary Problems</u>: At the final Pretrial Conference, the Court ordered the parties to make an effort to resolve the case through mediation. That mediation was held in Phoenix, Arizona on December 4, 2008. At that mediation, for the first time since this dispute began, Midwest disclosed that it is claiming that Durasoil infringes its patents because Durasoil consists of a "synthetic isoalkane" and an "ester" used as a binder. Midwest disclosed on that date that such a chemical composition of Durasoil constitutes an infringement of independent claim #1 of the 266 and 270 patents. Also on December 4, 2008, Midwest pointed, for the very first time, to the evidence it believes proves Durasoil's infringement of the Midwest Patents by a preponderance of the evidence: (i) a letter dated May 4, 2006, [**Defendant's proposed Trial Exhibit #67**] from Soilworks' President, Chad Falkenberg to Polar Supply, stating, among other things, that the Durasoil product would meet the specifications for a RFP, which specifically requested a product which contained a synthetic isoalkane; (ii) the Army's Dust Control Field Manual, published in 2006, stating that Durasoil contained a synthetic isoalkane (this Manual has been objected to as hearsay) [**Defendant's proposed Trial Exhibit #115**] and (iii) Soilworks' production of a claims chart that stated Soilworks' Durasoil product contains an ester.

    Midwest cannot supplement the record at this late stage. Midwest never provided an

infringement analysis in answers to interrogatories, it never produced a single document that would provide evidence of infringement. During Soilworks' 30(b)(6) deposition of Mr. Vitale, Midwest's counsel instructed Mr. Vitale not to answer any questions related to analyses performed on the Durasoil product and whether any conclusions were drawn, on the grounds of attorney-client/work product privilege. In fact the 30(b)(6) witness, the most knowledgeable witness for Midwest, indicated in his sworn deposition testimony that he's not aware of any infringement.

Indeed, when Midwest's counsel was questioned by this Court about whether Midwest had ever provided a claims chart or ever identified or explained to Soilworks how its Durasoil product infringed, Midwest's counsel didn't even understand the question.

> **THE COURT**: That wasn't my question. My question was, that I didn't ask very clearly, have you ever explained to them how you think there's infringement? Do they know today how you think there's infringement?
>
> **MR. SKERIOTIS**: I guess I beg the Court to explain that question.

Pre-Trial Hearing Transcript at 36:6-11. Midwest's counsel went on to erroneously assert that Midwest had produced an infringement chart. Midwest has never provided an infringement chart to Soilworks.

Within a week of learning how it is that Midwest believes Durasoil infringes Midwest's patents, Soilworks caused a chemical analysis of its Durasoil product to be performed by an independent laboratory to address those specific claims asserted by Midwest. That analysis was completed four days later and showed that the Durasoil product revealed no evidence of esters, fats or synthetic isoalkanes. A copy of the Report of Analysis is attached hereto as **Exhibit 1** and Soilworks will seek leave of court to add the report to its list of exhibits and add Neal E. Spingarn, Ph.D., the author of the report as a witness to testify at trial.

Midwest's evidence is insufficient under any standard to prove that the Durasoil product infringes a complex chemical patent. Midwest is a chemical company, with a chemist on staff. Yet, Midwest never performed and/or produced a chemical analysis

showing how the Durasoil product infringes either of the Midwest Patents. Midwest proffered no expert testimony with regard to infringement. Midwest's President, Mr. Vitale, admitted that he is not a chemist or expert in the relevant art to opine on whether Durasoil infringes the Midwest Patents. It is also noteworthy that Soilworks' President, Mr. Falkenberg, is admittedly not an expert in the relevant art. *See Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1368 (Fed. Cir. 2004) (Federal Circuit overturned a trial court's finding of infringement because the plaintiff patent owner did not satisfy its burden of proof because "of relying only on testimony from those who are not admittedly expert in the field").

Notwithstanding its insufficiency, the evidence that allegedly constitutes infringement is a complete surprise to Soilworks. Midwest waited until several months after the close of discovery to present its "evidence" of the Durasoil product's infringement. Midwest has still not produced an infringement chart. Soilworks' inability to defend against Midwest's claims of infringement were compounded by Midwest's complete non-responsiveness to Soilworks interrogatories, requests for production and deposition questions regarding patent infringement. Midwest has unfairly prevented Soilworks from defending against Midwest's claims of infringement.

Patent Infringement Damages

"This is a very uncertain patent trial. We're going into this trial not even knowing what claims are at issue; not knowing exactly what evidence is going to be admissible; not knowing if the jury's going to be able to sort it all out." Pretrial Transcript at 62:7-11. This quote from the Court during the Final Pretrial Conference on October 9, 2008 is, perhaps, even an understatement. There can be no evidence presented at trial which will give the jury any basis for an award of damages for patent infringement. There is nothing in the record to establish a reasonable royalty. There is no one identified as a potential witness in this case who has knowledge or experience regarding the grant of royalties for the products which are at issue. In short, Midwest will not be able to establish patent infringement and if they could establish such a thing, they would not be able to prove a legal basis for an award of damages.

## 2. Court Issues and Jury Issues

<u>Patent Infringement:</u> A determination of patent infringement is a two-step process: The Court must first construe the claims of the Midwest Patents; then the Jury must compare those claims to the Durasoil product to determine whether it infringes. As this Court has already instructed, Midwest bears the burden of ambiguity as to the metes and bounds of the claims and, of course, whether Durasoil infringes. If the Jury makes the threshold finding of liability as to patent infringement, then, while the amount of a prevailing party's damages is a finding of fact on which the patent owner bears the burden of proof, the determination of damages under 35 U.S.C. § 284 is left to the sound discretion of the Court.

<u>Lanham Act Claims:</u>

The Lanham Act claims in this lawsuit contain both legal (damages) and equitable (injunction) remedies. The Jury should determine the factual issues common to both before the Court renders a decision. With regard to remedy, the jury should at first determine whether monetary recovery of damages and/or defendant's profits, if any, is available to Soilworks and/or Midwest. However, any monetary award (either damages or a defendant's profits) assessed by the jury is subject to the "principles of equity"; i.e., the Court has "extremely wide discretion" to either increase or reduce (to $0) the amount of a particular jury award of either damages or defendant's profits. *See Friend v. H.A. Friend & Co.*, 416 F.2d 526 (9th Cir. 1969).

The Court is further empowered to decide that, upon a finding of infringement, an injunction grants complete justice and may refuse to require a defendant to account to the plaintiff. *Highway Cruisers of California, Inc. v. Security Industries, Inc.*, 374 F.2d 875 (9th Cir. 1967) (injunction granted, accounting of profits denied).

## 3. Evidentiary Issues

<u>Lanham Act</u>. Midwest has no evidence showing either the fact or amount of its damage. Assuming without conceding that Midwest could show the fact or amount of damages, it cannot show that any such damage was caused by Soilworks' use of the Soil-Sement. Nor can Midwest show the required "prima facie showing of reasonably forecast

profits" which would entitle it to an accounting of Soilworks' profits. *See Lindy Pen Co. v. Bic Pen Corp.*, 892 F.2d 1400, 1407 (9th Cir. 1993); *See* Midwest 30(b)(6) Depo. at 62:1-9. In addition, Midwest has failed to show any evidence of loss of goodwill arising from Soilworks' conduct. *See Id.* at 63:5-25-64:1-2. Therefore, Midwest is not entitled to an accounting of Soilworks' profits as a measure of Midwest's damages.

Indeed, upon reviewing the record evidence and trial exhibits, this court cautioned that any damages arising from Soilworks' use of Soil-Sement "is going to be very difficult" to prove. *See* October 22, 2008 Pretrial Hearing Transcript ("Pretrial Transcript) at 61:1-20.

**4.** **Injunctive Relief:**

An award of injunctive relief is left within the sound discretion of the Court. Injunctive relief should be granted once the facts supporting such relief have been determined by the Jury.

**5.** **Attorneys Fees**

It is within the sound discretion of the Court to award attorneys fees in this lawsuit if it determines that this case is "exceptional." Under Ninth Circuit law, the "exceptional" standard applies to both a plaintiff's and defendant's recovery of attorneys fees. *See Gracie v. Gracie*, 217 F.3d 1060, 1071 (9th Cir. 2000). A case is exceptional, for purpose of awarding attorney fees to a plaintiff, where the district court finds that the plaintiff has shown by clear and convincing evidence that the defendant acted maliciously, fraudulently, deliberately, or willfully. *See Watec Co., Ltd. v. Liu*, 403 F.3d 645, 656 (9th Cir. 2005); *see also* 15 U.S.C.A. § 1117(a). An exceptional case warranting an award of attorney fees to a defendant under the Lanham Act is found where a defendant has shown by clear and convincing evidence that the plaintiff's case is groundless, unreasonable, vexatious, or pursued in bad faith. 15 U.S.C.A. § 1117(a).

While this Court has already suggested that the likelihood of either party being granted an award of attorneys fees is "low", Soilworks intends to move for Rule 11 sanctions arising from Midwest's counsel failure to satisfy Fed. R. Civ. P. 11 and the Federal Circuit's "reasonable inquiry" requirement prior to filing its counterclaim for patent infringement.

1 | Midwest's counsel's abuses parallel those addressed in both *View Eng'g* and *Network Caching Technology*.

In a patent infringement case such as this, the Federal Circuit has explained that Fed. R. Civ. P. 11 "require[s] that an attorney interpret the pertinent claims of the patent in issue before filing a complaint alleging patent infringement." *Antonious v. Spalding & Evenflo Cos., Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002). This entails, "at a bare minimum, apply[ing] the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted." *View Eng'g Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000).

Reliance upon indirect sources, such as marketing materials, treatise and instruction manuals, "fails to satisfy the pre-filing investigation requirements described both by *View Eng'g* and the court's previous order." *Network Caching Technology, LLC v. Novell, Inc.*, 2003 WL 21699799 at *6 (N.D. Cal. 2003). In the instant case, Midwest did just that. In fact, its lack of a pre-litigation inquiry is set forth in its interrogatory responses (*see Response Nos. 1(15) through 4(18)*) [**Plaintiff's proposed Trial Exhibit #5**], notice of infringement letter, during depositions and at the pretrial hearing. Midwest consistently stated that its patent infringement claim was/is based upon the "publicly available information and marketing materials" prepared by Soilworks. Midwest admits that it did not perform a sufficient pre-litigation inquiry to determine whether the claims of the Midwest Patents read onto the Durasoil product. Midwest's counsel cannot simply interview the client and go forward in reliance on its client's lay opinion. Ninth Circuit case law unequivocally states that claim analysis by counsel is required. *View Eng'g Inc.*, 208 F.3d at 986; *See also S. Bravo Systems, Inc. v. Containment Technologies Corp.*, 96 F.3d 1372, 1375 (Fed. Cir. 1996). No such analysis was performed before filing its counterclaim. Midwest has never performed the required claims analysis.

In fact, in a letter dated August 8, 2006, Midwest sought to shift *its* burden to perform a pre-litigation inquiry onto Soilworks; Midwest asked *Soilworks* to provide an infringement

analysis with regard Midwest's claims of patent infringement. [**Plaintiff's proposed Trial Exhibit #23**]. Midwest further asserted that any silence on the part of Soilworks with regard to Midwest's baseless claims of infringement would only embolden Midwest's hollow belief that Soilworks' Durasoil product did infringe its patents. Midwest could have spent $4 on a sample of the Durasoil product prior to filing this lawsuit. Midwest could have provided the sample to its in-house chemist for testing to determine whether Midwest had a reasonable basis for filing this lawsuit. It did none of this. Instead, Midwest's evidence of infringement is reduced to hearsay and statements from non-experts. This litigation has come at great expense to both Midwest and Soilworks. Midwest's counsel's "shoot first and ask questions later" approach to its infringement counterclaim is an abuse of the court system and is in clear violation of Rule 11 of the Federal Rules of Civil Procedure.

Dated this 9th day of January, 2009.

KUTAK ROCK LLP

By  /s E. Scott Dosek
E. Scott Dosek, Esq.
John P. Passarelli, Esq.
8601 North Scottsdale Road #300
Scottsdale, AZ  85253-2742
*Attorneys for Plaintiff Soilworks, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2009, the foregoing **SOILWORKS' PRETRIAL MEMORANDUM** was filed electronically. Notice of this filing will be sent to all parties by operations of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s Amy S. Fletcher
Amy S. Fletcher